UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| PAULA DISBERRY,<br><br>                             Plaintiff,<br>     v.<br><br>EMPLOYEE RELATIONS COMMITTEE OF THE COLGATE-PALMOLIVE COMPANY, ALIGHT SOLUTIONS, LLC, AND THE BANK OF NEW YORK MELLON CORPORATION,<br><br>                            Defendants. | Case No. 22-CV-5778-CM-OTW<br><br>**Memorandum of Law In Support of Motion to Dismiss** |

**<u>Memorandum of Law In Support of the Employee Relations Committee<br>Of the Colgate-Palmolive Company's Motion to Dismiss</u>**

## **Table of Contents**

Introduction ........................................................................................................................1

Statement of Facts ............................................................................................................2

Argument and Citation of Authority................................................................................3

    I.      Plaintiff has failed to exhaust administrative remedies, and this case should be dismissed or stayed pending a decision on appeal of her administrative claim ...............4

    II.    Plaintiff has failed to plead facts showing that the Committee is liable for fiduciary breach .................................................................................................................................5

         A.    Plaintiff has failed to allege facts that, if proven, would show that the Committee breached a fiduciary duty to Plaintiff...............................................................................5

         B.    Plaintiff has failed to allege facts that, if proven, would show that the Committee caused Plaintiff's alleged loss. ....................................................................................10

Conclusion ......................................................................................................................11

# Table of Authorities

Cases

*Bartnett v. Abbott Laboratories*,
  492 F.Supp.2d 787 (N.D.Ill. 2020) .................................................................................. 7, 10

*Benson v. Tiffany & Co.*,
  No. 20 CIV. 1289 (KPF), 2021 WL 1864035 ........................................................................... 8

*Diamond v. Local 807 Labor Management Pension Fund*,
  595 Fed. Appx 22 (2nd Cir. 2014) ............................................................................................ 4

*Eastern States Health & Welfare Fund v. Philip Morris, Inc.*,
  11 F. Supp. 2d 384 (S.D.N.Y. 1998) ......................................................................................... 8

*Foster v. PPG Industries, Inc.*,
  693 F.3d 1226 (10th Cir. 2012) ............................................................................................ 6, 7

*Gym Door Repairs, Inc. v. Young Equip. Sales, Inc.*,
  206 F. Supp. 3d 869 (S.D.N.Y. 2016) ....................................................................................... 7

*In re Lehman Bros. Sec. & ERISA Litig.*,
  113 F.Supp.3d 745 (S.D.N.Y.2015) .......................................................................................... 6

*Katsaros v. Cody*,
  744 F.2d 270 (2nd Cir. 1984) .................................................................................................... 6

*Laboy v. Bd. of Trustees of Bldg. Service 32 BJ SRSP*,
  513 F. App'x 78 (2d Cir. 2013) ................................................................................................. 5

*Pegram v. Herdrich*,
  530 U.S. 211, 120 S.Ct. 2143, 147 L.Ed.2d 164 (2000) ........................................................... 5

*Pension Benefit Guar. Corp. ex rel. St. Vincent Catholic Med. Ctrs. Ret. Plan v. Morgan Stanley Inv. Mgmt. Inc.*,
  712 F.3d 705 (2d Cir. 2013) ........................................................................................... 5, 6, 7, 9

*Range v. 480-486 Broadway, LLC*,
  810 F.3d 108 (2d Cir. 2015) ...................................................................................................... 5

*Rubinstein v. CIGNA Life Ins. Co.*,
  No. CV11-1750(SJF) (WDW), 2011 WL 13377767 (E.D.N.Y. Sept. 27, 2011) ....................... 8

*Sacerdote v. New York University*,
  9 F.4th 95 (2nd Cir. 2021) ..................................................................................................... 6, 7

*Singer v. Am. Express Centurion Bank*,
  No. 17 CV 2507 (VB), 2018 WL 2138626 (S.D.N.Y. May 9, 2018) ......................................... 2

*Winfield v. Citibank, N.A.*,
  842 F. Supp. 2d 560 (S.D.N.Y. 2012) ........................................................................................ 2

*Zeuner v. Suntrust Bank Inc.*,
  181 F. Supp. 3d 214 (S.D.N.Y. 2016) ........................................................................................ 2

Statutes

29 U.S.C. § 1104(a)(1)(B) ............................................................................................................. 6
29 U.S.C. § 1109(a) ....................................................................................................................... 5

Rules

Fed.R.Civ.P. 12(b)(6) ..................................................................................................................... 1

Other Authorities

85 Fed.Reg. 26353 (May 4, 2020) ................................................................................................. 3

Comes now the Employee Relations Committee of the Colgate-Palmolive Company (the "Committee"), one of the Defendants herein, and submits this Memorandum of Law in support of its Motion to Dismiss Plaintiff's Complaint pursuant to Fed.R.Civ.P. 12(b)(6).

## Introduction

The gist of Plaintiff's Complaint is that Defendants are liable for the alleged theft of her Plan account balance by an unauthorized perpetrator who: (1) knew Plaintiff had an account with the Plan; (2) had her birthdate, address and last four digits of her Social Security number; (3) was able to physically intercept a temporary PIN mailed to her primary residence in South Africa, which had been her address on file since at least 2017; and (4) was able to deposit a physical check made payable to Plaintiff into a U.S. bank account in the name of Paula Disberry. As explained below, the facts alleged, although very unfortunate, do not show a breach of fiduciary duty by the Committee. Rather, they show a complex, international fraud that occurred through no fault of the Committee.

As an initial matter, the Court should dismiss this case without prejudice (or alternatively stay the case) pending Plaintiff's completion of the administrative procedure she has invoked, but not yet completed. Exhausting administrative remedies may moot or limit the scope of this litigation, and would at least provide additional facts, findings or arguments as part of a more complete record. Thus, the interests of judicial economy weigh in favor of requiring exhaustion of administrative remedies. However, if the Court is inclined to proceed with the merits at this juncture, the Complaint should be dismissed as to the Committee because Plaintiff has not plead facts showing that the Committee breached any fiduciary duty, or that any act (or omission) of the Committee caused the harm of which Plaintiff complains.

**Statement of Facts**

Plaintiff is a participant in the Colgate-Palmolive Company Employees Savings and Investment Plan (the "Plan"). (Complaint, ¶ 3.) She alleges that on January 29, 2020 an unauthorized person contacted the Benefits Information Center by telephone, falsely identified herself as Plaintiff and requested to update Plaintiff's contact information on file with the Plan. (*Id*., ¶ 14.) Defendant Alight Solutions, LLC ("Alight") operated the Benefits Information Center and website, both of which provide Plan participants the ability to manage their Plan accounts. (*Id*., ¶ 5.) Upon Alight's request, the caller provided Plaintiff's name, last four digits of her social security number, date of birth and the address that had been on file since at least 2017. (Claim Determination Letter, Exhibit 1, p. 3.)[1] Alight then sent a temporary personal identification number (PIN) by mail to Plaintiff's physical address in South Africa. (*Id*.) Plaintiff alleges an unauthorized person(s) "intercepted Ms. Disberry's mail and stole the temporary PIN." (*Id*.)

On February 24, 2020, the perpetrator again contacted the Benefits Information Center, used the temporary PIN to create a new permanent PIN, and then changed Plaintiff's phone number and added an email address. (*Id*., ¶ 15.) Subsequently, the perpetrator spoke with an Alight representative about how to reset Plaintiff's user ID and password, and then changed

---

[1] On a motion to dismiss, the Court may consider documents "incorporated by reference" in the Complaint on which the Plaintiff relies. *Zeuner v. Suntrust Bank Inc.*, 181 F. Supp. 3d 214, 219 (S.D.N.Y. 2016) (considering the plan documents, claim denial letters and appeal denial letters where "neither party dispute[d] the accuracy or authenticity of those documents."). The Court may also consider documents that "are integral to plaintiff's claims [where] she had notice of that information." *Singer v. Am. Express Centurion Bank*, No. 17 CV 2507 (VB), 2018 WL 2138626, at *2 (S.D.N.Y. May 9, 2018) (considering plaintiff's bank documents on a motion to dismiss); *Winfield v. Citibank, N.A.*, 842 F. Supp. 2d 560, 568 n.3 (S.D.N.Y. 2012) (plan and summary plan description "plainly are integral" to ERISA cases).

Plaintiff's user ID and password. (*Id*., ¶ 16.) On March 17, 2020, the perpetrator requested a complete distribution via the website and changed the address to a location in Las Vegas, Nevada. (*Id*., ¶ 18.) The same day, the perpetrator called the Benefits Information Center and was advised the distribution could not be made by direct deposit. (*Id*., ¶ 19.) She then requested a distribution via paper check. (*Id*.)

A check in the amount of $601,144.42 and made payable to Paula Disberry was mailed to the Las Vegas address. The check was then manually endorsed in the name of Paula Disberry and deposited at a Bank of America branch in Las Vegas into an account in the name of Paula Disberry. (Compl ¶ 14; *see also* Letter from Bank of America, Ex. 2.) Ms. Disberry discovered the fraud on September 14, 2020, she contacted Colgate-Palmolive which, in turn, contacted Alight and then Alight placed a freeze on her account. (*Id*., ¶ 23.) She has reported the matter to law enforcement. (*Id*., ¶ 25.)

On October 6, 2021, Plaintiff submitted a claim for benefits under the Plan. (Compl., ¶ 34.) On April 7, 2022, the Plan's Claims Administrator denied her claim, stating in part, "the Plan had in place reasonable procedures with respect to Plan distribution, [] these procedures were followed … [and] your Plan benefit was paid in accordance with all Plan terms and requirements." (*Id*.; *see also* Determination Letter, Ex. 1.) Ordinarily, Plaintiff would have been required to submit her appeal within 60 days of her receipt of the April 7th letter. (Ex. 1, p. 16-17.) However, due to the Covid pandemic, she is eligible to toll such deadline until the earlier of (A) one year following the date her appeal would ordinarily be due, or (B) 60 days following the announced end of the National Emergency. (*Id*., p. 17; *see also* 85 Fed.Reg. 26353-26354 (May 4, 2020). She has not yet submitted her appeal, but remains within the time limit to do so.

## **Argument and Citation of Authority**

**I.      Plaintiff has failed to exhaust administrative remedies, and this case should be dismissed or stayed pending a decision on appeal of her administrative claim.**

The Plan provides a mandatory administrative process for deciding claims for benefits. (See Summary Plan Description ("SPD") Ex. 3, p. 75-76.)  Plaintiff invoked this process by submitting a claim, which was denied. (Determination Letter, Ex. 1, pp. 16-17.) However, she has a right to appeal that determination, which she has not yet done. (*Id*.) This would include disputing any facts that the Committee considered, providing additional facts/evidence, or plan interpretations.

If the appeal is granted, this litigation will be moot. If the appeal is denied, Plaintiff will likely seek to amend her complaint to add a claim for benefits under the terms of the Plan. In either event, the interests of judicial economy weigh in favor of dismissing without prejudice or staying this litigation pending a decision on Plaintiff's administrative appeal so as to avoid piecemeal or unnecessary litigation.

Further, although several district courts within the Second Circuit have concluded that exhaustion is not required for statutory claims, this case is distinguishable because: (1) Plaintiff has invoked, but not yet completed, the administrative process with her initial claim, and (2) Plaintiff's claim is based, at least in part, on an alleged failure to comply with a procedure allegedly contained in the Plan's SPD. S*ee Diamond v. Local 807 Labor Management Pension Fund*, 595 Fed. Appx 22, 25 (2nd Cir. 2014) ("We need not decide the issue of whether exhaustion is required for statutory ERISA claims because we agree that Diamond is alleging a breach of the terms of the Plan, not a statutory violation of ERISA."); *see also* Compl., ¶ 37.

Plaintiff should not be permitted to simultaneously pursue both an administrative claim and a judicial proceeding to recover the same loss. Plaintiff will not be prejudiced by completing the administrative process she has invoked, and then, if necessary, pursuing this case when ripe for adjudication. Accordingly, if the Court is not inclined to dismiss for failure to exhaust, it should exercise its discretion to stay the case pending resolution of the administrative process Plaintiff has invoked. *Range v. 480-486 Broadway, LLC*, 810 F.3d 108, 113 (2d Cir. 2015) ("the District Court acted within its authority in deciding, based on the circumstances of the case and the interests of the litigants and the Court, that this action should be stayed.").

## II. Plaintiff has failed to plead facts showing that the Committee is liable for fiduciary breach.

"To state a claim for breach of fiduciary duty under ERISA, a plaintiff must allege facts which, if true, would show that the defendant acted as a fiduciary, breached its fiduciary duty, and thereby caused a loss to the plan at issue." *Pension Benefit Guar. Corp. ex rel. St. Vincent Catholic Med. Ctrs. Ret. Plan v. Morgan Stanley Inv. Mgmt. Inc.*, 712 F.3d 705, 730 (2d Cir. 2013) (citing 29 U.S.C. § 1109(a), and *Pegram v. Herdrich*, 530 U.S. 211, 225-26, 120 S.Ct. 2143, 147 L.Ed.2d 164 (2000)); *see also Laboy v. Bd. of Trustees of Bldg. Service 32 BJ SRSP*, 513 F. App'x 78, 79 (2d Cir. 2013) ("To state a claim for breach of a fiduciary duty, a plaintiff must allege that (1) the defendant was acting as a fiduciary of the plan, (2) the defendant breached that duty, and (3) the breach caused harm to the plaintiff."). As discussed below, Plaintiff has failed to plead facts showing: (1) a breach of duty by the Committee, or (2) a causal connection between any act or omission of the Committee and the loss Plaintiff alleges.

### A. Plaintiff has failed to allege facts that, if proven, would show that the Committee breached a fiduciary duty to Plaintiff.

#### 1. The Prudence Standard.

Fiduciaries must "discharge [their] duties ... with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims." 29 U.S.C. § 1104(a)(1)(B). The prudence of a fiduciary "'is measured according to the objective prudent person standard developed in the common law of trusts.'" *Sacerdote v. New York University*, 9 F.4th 95, 107 (2nd Cir. 2021) (quoting *Katsaros v. Cody*, 744 F.2d 270, 279 (2nd Cir. 1984)). A fiduciary's prudence must be assessed "under the circumstances then prevailing," so the Court must "judge a fiduciary's actions based upon information available to the fiduciary at the time … and not from the vantage point of hindsight." *Id*. (quoting *Pension Benefit Guar. Corp. v. Morgan Stanley Inv. Mgmt., Inc*., 712 F.3d 705, 716 (2d Cir.2013)).

This standard "focuses on a fiduciary's conduct in arriving at" a "decision, not on its results, and asks whether a fiduciary employed the appropriate methods to investigate and determine the merits …." *Id*. "ERISA imposes an obligation on fiduciaries to 'act in a prudent manner under the circumstances then prevailing,' a standard that eschews hindsight and focuses instead on the 'extent to which plan fiduciaries at a given point in time reasonably could have predicted the outcome that followed.'" *In re Lehman Bros. Sec. & ERISA Litig*., 113 F.Supp.3d 745, 754 (S.D.N.Y.2015) (quoting *Pension Benefit Guar. Corp.*, 712 F.3d at 716).

#### 2. Plaintiff's allegations of theft are insufficient to show a fiduciary breach on behalf of the Committee.

The fact that a theft occurred is insufficient to show the theft resulted from a breach of fiduciary duty. *Sacerdote*, 9 F.4th at 107 (fiduciary standard "focuses on a fiduciary's conduct"

6

not on "results").  In similar factual circumstances, federal courts have recognized that a theft of a participant's balance from a 401(k) plan is insufficient to show a breach of fiduciary duty.  For example, the Tenth Circuit addressed a situation in which a plan participant's ex-wife fraudulently withdrew his entire account balance.  *Foster v. PPG Industries, Inc.*, 693 F.3d 1226 (10th Cir. 2012).  The Tenth Circuit agreed with the district court that "the mere 'fact that Foster has not received his benefits is insufficient in itself to allow him recovery against the Plan.'"  *Id.*, at 1235 (quoting district court order).  Because they followed their established procedures: "Defendants were entitled to rely on the legitimacy of the electronic request and to treat it as a request from Foster, as the participant."  *Id.* at 1236.  The court concluded:

> As far as Defendants were aware, it was Foster who requested the withdrawals, and it was Foster to whom those withdrawals were issued.  Absent any showing of fault on the part of Defendants, it was neither arbitrary nor capricious for the Plan Administrator to determine that Foster's 'benefits were paid in accordance with all Plan terms and requirements,' Aplt. App. At 537, and that the Plan was not liable to reimburse Foster for his loss.

*Id.* at 1237; *see also Bartnett v. Abbott Laboratories*, 492 F.Supp.2d 787, 796 (N.D.Ill. 2020) (plan administrator and named fiduciary not liable where imposter gained access to participant's email).  The Court should, thus, not assume the loss shows a breach, but rather evaluate whether the Complaint alleges specific facts showing that the Committee acted in an objectively unreasonable manner regarding Plaintiff's distribution.  *Sacerdote*, 9 F.4th at 107 (fiduciary standard focuses on conduct, not results).

### 3. Plaintiff fails to allege facts showing the procedures for handling participant information were objectively unreasonable.

Plaintiff's complaint fails to allege specific facts showing that the Committee violated any process, procedures or norms that would constitute a breach of fiduciary duty.  *Pension Benefit Guar. Corp.*, 712 F.3d at 718 (allegations must permit reasonable inference that process

7

by which plan was managed was flawed); *Gym Door Repairs, Inc. v. Young Equip. Sales, Inc.*, 206 F. Supp. 3d 869, 911 (S.D.N.Y. 2016) ("Conclusory allegations are insufficient to survive a motion to dismiss."). Plaintiff makes the conclusory assertion that "the Plan" did not have reasonable procedures in place and did not follow procedures, but nowhere does Plaintiff allege any facts indicating that the Committee failed to follow any procedure, or was itself responsible for the interactions with the call center and website issues that Plaintiffs contends should have been "red flags". (Compl., ¶ 35.) Plaintiff does not allege that the Committee was aware or should have been aware of these alleged red flags, which all relate to the perpetrator's interactions with Alight. *Id*. Further, Plaintiff does not make these allegations against any Defendant in this case, but rather against "the Plan" itself which is not a party to this case and not capable of being a fiduciary to itself. *See Benson v. Tiffany & Co.*, No. 20 CIV. 1289 (KPF), 2021 WL 1864035, at *14 n. 23 (S.D.N.Y. May 10, 2021) (citing *Eastern States Health & Welfare Fund v. Philip Morris, Inc*., 11 F. Supp. 2d 384, 401 (S.D. N.Y. 1998) ("the definition of 'fiduciary' in ERISA would seem to exclude the possibility of a plan acting as a fiduciary")); *see also Rubinstein v. CIGNA Life Ins. Co.*, No. CV11-1750(SJF) (WDW), 2011 WL 13377767, at *6 (E.D.N.Y. Sept. 27, 2011) ("I agree with the decisions finding that a plan cannot be a fiduciary under the relevant definitions.").

Plaintiff does assert that "Defendants" failed to follow their own procedures by not waiting 14 days after the address change to distribute the money. (Compl., ¶¶ 31, 37.) This assertion is insufficient as it relates to the Committee for at least three reasons. First, the processing of the distribution was, as Plaintiff alleges, Alight's responsibility. (Compl., ¶¶ 5, 14-20.) Second, the 14-day waiting period does not appear in the SPD applicable at the time of the distribution, and thus was not an applicable procedure. The SPD issued January of 2020 does

not contain the language quoted in paragraph 31 of Plaintiff's Complaint. (Compare Compl. ¶ 31 with SPD, Ex. 3.) It is not clear where this language comes from, but it is clear that it is not contained in the SPD in effect in March of 2020 when Plaintiff alleges her account was stolen, and thus the procedure Plaintiff alleges was violated was not then in effect. Third and finally, it would not have mattered. No facts are alleged to suggest that the fraud would have been discovered or otherwise avoided within 14 days. The alleged fraud would simply have happened 14 days later.

Further, there is nothing about Plaintiff's recitation of her interactions with Alight that suggests an objectively unreasonable process. Obviously, there needs to be a way for participants to regain access to their accounts if they forget their login credentials – a common occurrence. It is reasonable to have a call center for this purpose. It is reasonable to ask callers for personally identifying information (such as date of birth, address and social security number). It is reasonable to then take the extra step of physically mailing a temporary PIN to the participant's known mailing address.[2]

Again, the question is not whether some additional protective step can be identified with the benefit of hindsight. *See Pension Benefit Guarantee Corp.*, 712 F.3d at 716 (ERISA's fiduciary duty of care requires prudence, not prescience). Rather, the question is whether the Plan acted in an objectively unreasonable manner by failing to protect against a reasonably foreseeable risk. *PBGC*, 712 F.3d at 716 (court "must consider the extent to which plan

---

[2] Plaintiff criticizes the use of physical, rather than electronic, mail. (Compl., ¶36.) However, as illustrated in the *Barnett* opinion, electronic mail is also subject to compromise. *Bartnett*, 492 F.Supp. at 796. Further, while electronic fraud can be initiated from anywhere in the world, traditional mail requires physical proximity to the theft. Plaintiff has not alleged facts sufficient to indicate the use of physical mail was unreasonable.

fiduciaries at a given point in time reasonably could have predicted the outcome that followed.") Here, it was not reasonably foreseeable that a perpetrator would: (1) know Plaintiff had an account with the Plan; (2) have her personally identifying information (date of birth, social security number and address) sufficient to order a temporary PIN; (3) be in a position to physically intercept her mail in South Africa; and (4) be able to deposit a physical check made payable to Plaintiff in the United States. The facts pled by Plaintiff do not show that the process used in administering the Plan was objectively unreasonable.

### 4. Plaintiff fails to plead facts showing the Committee failed to act prudently.

Further, even if the Court were to conclude that the process used to reset passwords was objectively unreasonable, the facts pled make plain that Alight handled that process, not the Committee. Plaintiff alleges that "Alight operated a telephone customer service center" and a website "both of which provide Plan participants with the ability to manage their Plan accounts, including requesting distributions of benefits." (Compl., ¶ 5.) Plaintiff then alleges that the perpetrator contacted this customer service center by telephone, "falsely identified herself as Ms. Disberry" and then "Alight sent a temporary personal identification number (PIN) by mail to Ms. Disberry's South Africa address." (*Id*., ¶ 14.) The perpetrator then allegedly intercepted the mail, stole the PIN and was able to access Plaintiff's account. *Id*. None of these core factual allegations have anything to do with the Committee. *See, e.g., Bartnett v. Abbott Laboratories*, 492 F.Supp.2d 787, 796 (N.D.Ill. 2020) ("The complaint fails to allege any fiduciary acts taken by Abbott Labs, no less link them to the alleged theft. And while the complaint alleges that the call center and website were used to perpetuate the theft, it also indicates that both are operated by Alight."). None of the sparse factual allegations regarding the Committee show that it did, or failed to do, anything that constituted a breach of fiduciary duty.

### B. Plaintiff has failed to allege facts that, if proven, would show that the Committee caused Plaintiff's alleged loss.

The facts pled make clear that Plaintiff's alleged loss was not caused by the Committee. Rather, the alleged loss is alleged to have resulted from a complex, international scam whereby the perpetrator had access to Plaintiff's personal information, access to her personal physical mail, and used that information to infiltrate her account and request a distribution mailed to an address in the U.S. Then the perpetrator was able to deposit a $600,000 check made payable to Paula Disberry at a physical bank in the U.S.

The Complaint does not allege that the perpetrator gained access to Plaintiff's date of birth, address, social security number or the knowledge that Plaintiff participated in the Plan through any fault of Defendants. Though it is very unfortunate that it happened, it appears that a sophisticated, international fraud was the cause of the alleged loss, not any act or omission of the Committee. Even if the Court concludes that how the distribution was handled was also a contributing cause, again, the Complaint makes clear the distribution, and communications with the perpetrator, were handled by Alight, not the Committee.

Moreover, the error without which the loss would not have occurred is that the Plaintiff's personal physical mail was not sufficiently secure so as to prevent interception of the mailed PIN. Nothing the Committee or Alight could have done would have prevented the theft of physical mail to the Plaintiff. Thus, Plaintiff has failed to plead facts showing the Committee caused her alleged loss.

### Conclusion

For the foregoing reasons, Plaintiff's Complaint should be dismissed. In the alternative, this case should be stayed pending the completion of Plaintiff's administrative claim.

This 15th day of September, 2022.

                          */s/ Patrick C. DiCarlo*
                          Patrick C. DiCarlo (Admitted pro Hac Vice)
                          GROOM LAW GROUP, CHARTERED
                          1701 Pennsylvania Ave., N.W.
                          Washington, D.C. 20006
                          202-861-0172 (phone)
                          202-659-4503 (fax)
                          PDiCarlo@groom.com

## CERTIFICATE OF SERVICE

I certify that on September 15, 2022, I filed in this action the foregoing **MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS PURSUANT TO RULE 12(b)(6)** electronically via the Court's ECF System. Notice of this filing will be sent in this action by operation of the Court's electronic system to all counsel of record in the ECF System.

Respectfully Submitted,

*/s/ Patrick C. DiCarlo*\_\_\_\_\_
Patrick C. DiCarlo (Admitted pro Hac Vice)
GROOM LAW GROUP, CHARTERED
1701 Pennsylvania Ave., N.W.
Washington, D.C. 20006
202-861-0172 (phone)
202-659-4503 (fax)
PDiCarlo@groom.com