# EXHIBIT 1

 COLGATE-PALMOLIVE COMPANY
A Delaware Corporation

300 Park Avenue
New York, NY 10022

April 7, 2022

**PERSONAL AND CONFIDENTIAL**

**Via Secure E-Mail and Federal Express**

Ms. Paula Disberry
c/o Kirsten Scott, Esq.
Renaker Hasselman Scott LLP
505 Montgomery Street, Suite 1125
San Francisco, CA 94111

**RE: Initial Claim under the Colgate-Palmolive Company Employees Savings and Investment Plan**

Dear Ms. Disberry:

I am writing to you in my capacity as the Claims Administrator of the Colgate-Palmolive Company Employees Savings and Investment Plan (the "Plan") regarding your claim, dated November 8, 2021, which the Plan received on November 10, 2021 (the "Claim"). The Claim requests that the Employee Relations Committee ("Committee") confirm that the March 17, 2020 distribution of your account balance under the Plan that you assert was fraudulent (the "Distribution") did not impair or reduce your benefit under the Plan or, in the alternative, that the Committee restore to your Plan account the amount of the Distribution.

As further described below, at the time of the Distribution, the Plan had in place reasonable procedures with respect to Plan distributions, and these procedures were followed, with the result that the Plan distributed your Plan benefit in the form and manner requested by an individual that the Plan reasonably believed to be you. In short, your Plan benefit was paid in accordance with all Plan terms and requirements. While it is unfortunate that your information and Plan benefit may have been stolen from you, the Plan is required to be administered in accordance with its terms and applicable law. Accordingly, the Claim is denied.

## A. RECORDS CONSIDERED IN DECIDING CLAIM

The items listed in Appendix A were considered in connection with the Claim. Copies of these documents shall be provided to you in conjunction with this Claim response.

100% Recycled Fiber



## B. FACTUAL BACKGROUND

### 1. General Background

The Plan utilizes Alight Solutions ("Alight") to provide certain recordkeeping services to the Plan. These services include, but are not limited to, operating the Plan's telephone service centers and facilitating distributions from Plan accounts.

Consistent with the Claim, Plan records indicate that you were employed with Colgate-Palmolive Company (the "Company") from December 27, 1993, through February 6, 2004. You became eligible to participate in the Plan beginning in 1998. As of March 17, 2020, your account balance under the Plan was $751,430.53. On March 17, 2020, the Distribution occurred and your entire account balance was distributed from the Plan through a check made payable to you and mailed to a Las Vegas, Nevada, address. The net amount of this distribution after federal income tax withholding was $601,144.42.[1] The distribution check was cashed at a bank in Las Vegas, Nevada, on March 27, 2020. In the Claim, you assert that the March 17, 2020, Distribution of your Plan account was fraudulent.

You have informed us that you reside at (the "Hove Road Address"). It is our understanding from you that you have been domiciled at the Hove Road Address at all times relevant to the Claim. You advised that, for at least the last five years, only you and your housekeeper have used your Hove Road Address for mailing purposes.[2]

You have been receiving mail from the Company and the Plan at the Hove Road Address since at least 2017 when Alight Solutions ("Alight") became the Plan's recordkeeper.[3] In email correspondence dated October 23, 2018, your financial advisor, Netto Invest, confirmed that you receive mail from the Company. As of that date in 2018, the address on file with the Plan was your Hove Road Address. The Plan has no record of you advising the Plan at any time prior to the Distribution that you believed mail is not a secure form of communication in South Africa. Further, the Plan has no record of you advising the Plan that you were having difficulty receiving mail at your Hove Road Address subsequent to your financial advisor advising the Plan that you were receiving mail from the Company. Additionally, the Plan's records indicate you did not have an email address on file with the Plan prior to February 28, 2020, when the alleged bad actors added an email address to your Plan account.

You indicated that bad actors – potentially the same bad actors that initiated the Distribution from your Plan account – have attempted to fraudulently access certain of your other investments. Specifically, you advised that bad actors successfully changed your personal

---

1 The tax withholding amount is currently being held by the Plan in a suspense account pending disposition of this matter.

2 The Company conducted a separate investigation into the Distribution that revealed two businesses registered to, or using, your Hove Road Address. Specifically, a business, VALORTRADE 202, is registered to your Hove Road Address. In addition, a website for Cape Touring, a local touring business in Cape Town, South Africa, indicates that the business is operated out of your Hove Road Address. It is reasonable to conclude that the owners of these businesses may also have had access to your mail at the Hove Road Address.

3 At the time of the engagement, Alight was known as Hewitt Associates, LLC.

100% Recycled Fiber



information for an investment account held by in Gibraltar but did not receive a distribution of these funds. In addition, it is understood that bad actors attempted to access your separate pension benefit with the Colgate-Palmolive Company Employees' Retirement Income Plan (the "Colgate Pension Plan") but were unsuccessful. These attempts prompted you to distribute a "Notification of Identity Theft and Potential Future Fraud Attempts," dated December 21, 2020, explaining that "I have been the victim of identity theft" and that the bad actors "remain in operation and continue to make attempts to defraud me." It also prompted you to report the alleged theft to the relevant authorities.[4]

2. Facts Relating to the Distribution

Based on the Claim and the information described in a report prepared by Alight on the Distribution dated September 18, 2020 (the "Alight Report"), which Alight issued after reviewing the activity associated with your Plan account, the following events occurred with respect to the Distribution:

- On January 29, 2020, an individual purporting to be you ("Caller") contacted the Alight Customer Care Center. After a discussion, the Caller requested that a temporary Personal Identification Number ("PIN") be mailed to the Hove Road Address. Upon request, the Caller provided your name, the last four digits of your social security number, your date of birth, and the current address that was on file with the Plan. After receiving this information, Alight mailed a temporary PIN to your Hove Road Address, which had been your address on file since at least 2017 when Alight became the Plan's recordkeeper.
    - In the Claim, you allege that the Caller impersonated you and that the Caller or another bad actor "intercepted the temporary PIN" after the Plan mailed it to your Hove Road Address but before it arrived at your Hove Road Address. Specifically, you allege that the temporary PIN was intercepted at the post office in Johannesburg, South Africa.
- On February 24, 2020, the Caller used the temporary PIN to reset your permanent PIN. The Caller then changed the telephone number on file and attempted to add an email address to your account. The Caller then requested clarification regarding the website, which Alight provided. The Caller then advised that she had forgotten her log-in ID and password and requested that Alight provide that information. Alight declined to provide that information and advised that the Caller could retrieve this information through the website.
    - The telephone number on file was changed but, notwithstanding the Caller's request, no email address was added to your account.
    - An Access Information Change Notice was mailed to your Hove Road Address on the same day (February 24, 2020). The Plan has no evidence that this Access Information Change Notice was returned as undeliverable.

[4] It is understood that you advised a number of authorities of the purported theft, including the South African police, the United States Secret Service, and the Federal Trade Commission. It is further understood that the investigations initiated by these authorities are ongoing.





- On February 28, 2020, an individual accessed the Alight website and attempted to access your account. The user chose the forgot the password option and entered the last four digits of your social security number and your date of birth. The individual was then "challenged" and chose to receive a one-time code by text. The individual did not successfully complete the challenge and did not access your account at this time.
- Later on February 28, 2020, a Caller contacted the Alight Customer Care Center. Using the permanent PIN, the Caller added an email address ι) to your account.
    - No personal email address was on file for your account prior to February 28, 2020.
    - On February 28, 2020, a Contact Information Change Confirmation email was sent to the new email address that had been added to your account .
    - An Access Information Change Notice was mailed to your Hove Road Address on the same day (February 28, 2020). The Plan has no evidence that this Access Information Change Notice was returned as undeliverable.
- Also later on February 28, 2020, an individual made two efforts to access your account through the Alight website. In each instance, the individual chose the "forgot password option" and, using the last four digits of your social security number and your date of birth, requested a one-time code by email. The individual did not successfully complete the challenge in each instance and requested a password reset by email. However, your account was not accessed.
- Later still on February 28, 2020, an individual used the last four digits of your social security number, your date of birth, and a temporary password that was sent to the new email address on file to access your account online. The individual chose a User ID, Password, and Security Questions/Answers. The individual also viewed certain documents relating to the Plan and your account.
    - A Password Reset Confirmation Notice was mailed to your Hove Road Address on February 28, 2020. The Plan has no evidence that this Password Reset Confirmation Notice was returned as undeliverable.
    - An Access Information Change Notice was mailed to your Hove Road Address and sent by email to the email address on file ) on the same day (February 28, 2020). The Plan has no evidence that the Access Information Change Notice was returned as undeliverable.
- On March 9, 2020, an individual used the online credentials to add direct deposit information and to model a distribution. Later that day (March 9, 2020), the Caller contacted Alight's Customer Care Center and, after discussion, requested that a distribution be made to the direct deposit information on file. An Alight representative

100% Recycled Fiber



advised the Caller that a direct deposit could be made to the account on file but only after a seven-day waiting period.[5]

- A Contact Information Change Confirmation was sent by email on March 9, 2020, to the email address on file .

- Later that day on March 9, 2020, a Caller to Alight's Customer Care Center used your PIN to discuss your account with a representative. As part of the call, the Caller requested help with making a withdrawal and was walked through the steps to take a distribution. The Caller was advised that a distribution was only available by check.
- On March 16, 2020, an individual used the online credentials to log into your account. The individual viewed certain documents relating to the Plan and your account, but no changes were made, nor actions taken.
- On March 17, 2020, an individual used the online credentials to log into your account. The individual requested a distribution online, triggering stepped-up authentication. The individual elected to receive a one-time code to the email address on file and, while the code was entered correctly, the distribution was not completed. During the same online session, the individual then requested that your mailing address be changed to a mailing address in Las Vegas, Nevada. No other changes occurred. Later that same day, an additional login to your account occurred and access was granted using a one-time code that was sent to the email address on file . No changes were made to your account.
  - A Contact Information Change Confirmation was sent by email to the email address on file .
- Later that day on March 17, 2020, a Caller contacted the Alight Customer Service Center. Using the permanent PIN, the Caller requested a complete distribution of your account balance ($751,430.53) to be sent by check made payable to you to the Las Vegas address. In response to a request, the Caller provided your full name. When asked to provide the address on file, the Caller provided your Hove Road Address. Following notification that the address was an address in the United States, the Caller provided the Las Vegas address. After being provided options for the withdrawal, the Caller elected a complete cash distribution of your account.
  - In reviewing the calls and preparing the Alight Report, Alight determined that the caller who requested the distribution on March 17, 2020 "sounded like the previous callers."
  - A Confirmation of Payment Notice was sent by mail to the Las Vegas, Nevada, address and another notice was sent to the email address on file
- On March 27, 2020, a check made payable to you in the amount of $601,144.42, representing your full account balance, net of tax withholding, was cashed at a bank located in Las Vegas.

---

[5] This was incorrect; distributions could not be paid by direct deposit at the time, and the 7-day waiting period for a distribution was not in place at the time.





- The endorsement on the check indicates "Sahara West BC NV1 122."
- The Plan's trustee has subsequently indicated that the check was endorsed at a Bank of America branch.

- Additional callers contacted the Alight Customer Care Center regarding your account on May 8, 2020, May 15, 2020, May 18, 2020, May 19, 2020, June 4, 2020, June 8, 2020, and July 28, 2020. During each of these calls, the callers were not able to properly secure the call (meaning they were not able to provide the permanent PIN or to provide a one-time access code) and, therefore, were not able to obtain any account information or access your account.
  - In reviewing the calls and preparing the Alight Report, Alight determined that these callers "did not sound like the previous callers" who contacted Alight between January 29, 2020, and March 17, 2020.

3. Facts Leading up to the Claim

On September 14, 2020, you sent an email to a former colleague at the Company after being unable to access your account on the Colgate Pension Plan benefits website.[6] When conveying the difficulty, you asserted that the postal service in South Africa had "effectively collapsed," that you had not "had mail from [Colgate-Palmolive] for nearly two years" and that you had "decided to take early retirement and understanding [your] pension status is clearly critical."

Your email was forwarded to to, Associate Director, US Retirement & Employee Engagement on September 14, 2020. She advised you by email that same day that there were inconsistencies between your comments and your Colgate Pension Plan records. also advised you that a payment of your Colgate Pension Plan benefit had been requested on August 13. In response, you informed that you had not requested this distribution, that at age 52 you were "far from retirement age, so would not be claiming pension benefits," and that you believed your identity had been stolen. This interaction regarding your Colgate Pension Plan benefit prompted to also review your Plan account activity. Given your statement regarding identity theft, determined that the Distribution warranted additional investigation.

Later on September 14, 2020, the Company advised Alight by email of the potentially fraudulent distribution of your Plan benefit. On September 16, 2020, advised you that Alight was compiling information on your Plan account and recommended that you take action to protect your financial accounts and to notify your insurance carriers and law enforcement in the United States and in South Africa of the possible fraud and identity theft.

Alight reviewed the activity associated with your Plan account and issued the Alight Report, which stated that "there is sufficient evidence to conclude [Ms. Disberry] appears to have been the victim of identity theft and theft of 401k funds."[7] However, Alight further concluded that

---

6 While the Company became aware of the potential theft on September 14, 2020, you contacted the Plan benefit center in August 2020 and individuals at the Company in early September 2020. In these communications, you did not allege that your Plan account had been stolen, but instead explained that you were having difficulty accessing the Colgate Pension Plan website.

7 Alight Report at 1.





"[t]here does not appear to have been any failure in any Alight technical process or protocols which led to the" Distribution.[8]

You completed a notarized Fraud Claim Identification Affidavit, which you executed on October 2, 2020. You faxed a copy of the signed and notarized affidavit to Alight on the same day and provided photographs of the signed and notarized affidavit to the Company by email.

Since becoming aware of the Distribution, you and various representatives of the Company and of Alight have communicated with one another. Additionally, the Company and you have both worked with law enforcement – including but not limited to local law enforcement in South Africa, the FBI, and the United States Secret Service – to investigate the alleged theft. These law enforcement investigations remain ongoing.

4. The Claim and Subsequent Correspondence

On November 10, 2021, you submitted the Claim and certain additional information regarding the claim. By email dated November 19, 2021, the Plan acknowledged receiving your formal claim for benefits.

The Claim asserts the following, based on your belief and recollection:

> "I was employed by Colgate in the UK in 1993 and was moved to New York in 1997. I worked in the New York and Mexico City offices for 7 years, making contributions to my 401(K) savings plan throughout. In August 2020, after being unable to access the benefits website, I contacted HR in New York and on Sept 14th was called by Associate Director, US Retirement & Employee engagement. She informed me that 'bad actors' had impersonated me to the Colgate Benefits Centre, changed my personal details (address, email and telephone number), and fraudulently taken distribution of my 401(K) savings. A gross amount of $751,430 was issued to an individual with a Las Vegas address. The final amount paid out, after Federal Withholding Tax was $601,144. Alight Solutions informed me that the fraudsters contacted the Benefits Centre first on Jan 29th, requesting to update the address on file. A temporary personal identification number (PIN) addressed to my physical address ) was sent by regular mail. The fraudsters intercepted the temporary PIN in the Johannesburg post office, and were able to set up a permanent PIN via the automated call centre system. They proceeded to change my email and cellphone to alternate South African ones, and changed my physical address to one in Las Vegas. The IP address used to make the fraudulent changes was in South Africa. Notifications of these changes to my personal details were sent to the new, fraudulent email and postal addresses, none to the original ones.[9] On March 17th a disbursement of my 401(K) plan was requested via the Benefits Centre, and a cheque was issued in my name and cashed on March 27th, 2020 at the Las Vegas Sahara West Bank. I was unable to register the crime in the US as a non-resident, and was advised by Colgate to report the

[8] *Id.* at 8.

[9] Notwithstanding this assertion, the Alight Report indicates that a number of notices regarding these changes were mailed to your Hove Road Address. The Plan has no evidence that any of these notices were returned as undeliverable.





crime to the US Secret Service in South Africa, and to the SA Police Service. No official feedback on progress has been given to date."

The Claim requests that the Committee clarify that the Distribution did not impair or reduce your benefit under the Plan. Alternatively, you request that your Plan account balance be "reinstated so as not to reflect any purported depletion through the fraud perpetrated in March 2020."

To support the Claim, you assert that "the facts show" that you never received your benefit from the Plan. Further, you assert that the Plan's procedures are imprudent and unreasonable insofar as these procedures allow for a temporary PIN to be mailed "by regular mail" to a residence in South Africa, which "no plan or financial services company in South Africa" would do. You also contend that the Plan's procedures are imprudent and unreasonable insofar as these procedures "reflect[] a lack care [sic], skill, prudence and diligence that a plan fiduciary should show in safeguarding the plan assets." You further allege that "no confirmation of change of PIN or personal details was sent to the original email[10] or cellphone of record" and that "[h]ad this been done the fraud would never have happened."

You conclude by arguing that these insufficient procedures allowed the bad actors to perpetrate a fraud against the Plan and that the purported theft could not have been a fraud against you because you never received the distribution. Alternatively, you argue that even if it was a fraud against you, the Plan's fiduciaries breached their fiduciary duties by having insufficient security procedures that enabled a third-party to obtain control of your account and, therefore, the Plan's fiduciaries are liable to you for an amount equal to the amount of your stolen benefit under the Plan.

On December 20, 2021, the Plan sent you a questionnaire requesting additional information regarding the Claim. You provided responses to the questionnaire on December 21, 2021. In the questionnaire:

- You were asked to describe all actions that you had taken to report the incident to law enforcement in South Africa and the United States and to provide copies of all reports and statements that you filed as well as responses received.
    - You summarized the steps that you have taken involving the United States Secret Service and the South Africa police and their responses.
    - You noted that you scanned "the 401(k) plan update that is mailed bi-annually as proof of [your] savings," and provided a copy to South African police.
    - The Plan's records show that you were regularly mailed quarterly benefit statements to your Hove Road Address (including throughout 2018 and 2019). The Plan has no record of these statements being returned as undeliverable.

[10] Notwithstanding this assertion, the Alight Report indicates that you did not have an email address on file prior to one being added by the alleged fraudsters. Further, the Alight Report indicates that multiple notices were sent by mail to your Hove Road Address regarding the changes being made to your account information.

100% Recycled Fiber



- You were asked to provide a list of all persons who lived at your Hove Road Address or who may have used your Hove Road Address for office or mail purposes within the past five years. You also were asked to provide a list of all businesses registered to your Hove Road Address during this period.
    - You advised that the only other person who used your Hove Road Address for mailing purposes during the last five years was your housekeeper.
    - You also advised that your Hove Road Address had not been used as a business address by anyone since it was purchased by you in 2008.
        - This appears to be inconsistent with the results of the Company's investigation, which identified one business (VALORTRADE 202) registered to your Hove Road Address and another business (Cape Touring) that used your Hove Road Address as their contact address.
- You were asked if you were the exclusive owner of your Hove Road Address.
    - You advised that you are the exclusive owner and have been since February 2008.
- You were asked if you had traveled to the United States at any time during the last five years.
    - You advised that you were in Long Beach, CA during the period of March 24, 2016, through April 1, 2016, and that you were in Long Beach, CA and San Diego, CA during the period of August 18, 2018, through August 28, 2018.
- You were asked whether, during the last five years, you had any ownership or leasehold interest in real estate located in the United States.
    - You indicated that you have had no property interest in the United States since leaving in 2004.
- You were asked whether, during the last five years, you had any bank and/or brokerage accounts within the United States.
    - You identified a Citibank account that you used during this period, but further indicated that the account "has been inactive since 2019."
- You were asked to disclose the information upon which you based your belief that the temporary PIN was intercepted at the Johannesburg, South Africa post office.
    - You stated that you were informed by Alight on October 8, 2020, that "the temporary PIN was intercepted in the mail at some point."
    - You further stated that the forensic investigators that you hired provided the following statement by email: "Note that we have picked up a few more cases with possible similar modus operandi as yours, with mail coming into SA from

100% Recycled Fiber



offshore financial institutes intercepted in JHB, account details changed and repurchases made."

- You also stated that the United States Secret Service advised the forensic investigators that the United States Secret Service has recruited informants to work at the post office in JHB in order to extract information on a Congolese crime syndicate.

- You were asked to provide any other information or materials that you believed are relevant and/or helpful in the determination of your claim for benefits.
  - You advised that bad actors had successfully accessed your account with in Gibraltar but that the distribution process was interrupted before a fraudulent distribution was made.
  - You also advised that bad actors had attempted to access your account with the Colgate Pension Plan, but that the distribution process was interrupted before a fraudulent distribution was made.

You separately agreed by email dated December 21, 2021, to toll the Plan's deadline for responding to the Claim until April 9, 2022.

## C. RELEVANT PLAN TERMS

In reviewing the Claim, I considered the entirety of the Plan document in effect on the date of the Distribution. In my review of the Plan document, I have determined that the following provisions are particularly relevant to your Claim:

- Plan Section 10.4(a), which provides that the Employee Relations Committee ("Committee") has "[t]he exclusive right to construe and interpret (i) the terms or provisions of the Plan or of any contract or contracts with any insurance company or of any trust agreement or trust agreements entered into by the Company for the purpose of the Plan, or (ii) the applicability of any of the terms or provisions of the foregoing in a particular situation, or (iii) all questions of eligibility and determine the amount, manner and time of payment of any benefits hereunder; to exercise discretion where necessary or appropriate in the interpretation and administration of the Plan; and to decide any and all matters arising thereunder, with any decisions as to the interpretation of the Plan or any disputed question of fact to be considered conclusive and final to the extent permitted by applicable law;"
- Plan Section 10.4(b), which provides that the Committee has the power to "[t]o prescribe procedures to be followed by Participants or Beneficiaries filing applications for benefits;"
- Plan Section 10.4(d), which provides that the Committee has the power to "[t]o receive from the Company and from Participants such information as shall be necessary for the proper administration of the Plan;"

100% Recycled Fiber



- Plan Section 10.4(g), which provides that the Committee has the power to "[t]o appoint or employ individuals to assist in the administration of the Plan and any other agents deemed advisable, including legal counsel;"
- Plan Section 10.5, which provides in pertinent part that the Committee "... may [] adopt such rules ... as are deemed necessary, desirable, or appropriate... When making a determination or calculation, the [Committee] shall be entitled to rely upon information furnished by a Participant or Beneficiary ... [or] the Plan's recordkeeper ...;" and
- Plan Section 10.9, which provides that the Committee "may require a Participant to complete and file with the [Committee] an application for benefits and all other forms approved by the [Committee] and to furnish all pertinent information requested by the [Committee]. The [Committee] may rely upon all such information so furnished, including the Participant's current mailing address."

## D. DISCUSSION OF THE CLAIM

You demand that the Plan either clarify that the Distribution of your benefit did not "impair[] or reduce[]" your benefit under the Plan or, in the alternative, restore to your Plan account the amount of the Distribution is denied. The terms of the Plan, applicable law, and substantial evidence show that the Plan had in place reasonable procedures for verifying your identity prior to processing a distribution and that these procedures were followed when the Plan processed the Distribution. These points are described in additional detail below.

### 1. The Plan Distributed Your Benefit in Accordance with the Terms of the Plan Document and the Plan's Reasonable Procedures

Your benefit was distributed in accordance with the terms of the Plan document in effect on the date of the Distribution. The Plan document permits the Committee – the Plan Administrator for the Plan – "to prescribe procedures to be followed by Participants or Beneficiaries filing applications for benefits." *See* 2016 Plan Document at Section 10.4(b). Further, the Plan document empowers the Committee to "appoint or employ individuals to assist in the administration of the Plan and any other agents deemed advisable" and makes clear that, when making a benefit determination, the Committee "shall be entitled to rely upon information furnished by a Participant or Beneficiary ... [or] the Plan's recordkeeper ..." *Id.* at Sections 10.4(g), 10.5. Additionally, the Plan document provides expressly that the Committee "may require a Participant to complete and file with the [Committee] an application for benefits and all other forms approved by the [Committee] and to furnish all pertinent information requested by the [Committee]. The [Committee] may rely upon all such information so furnished, including the Participant's current mailing address." *Id.* at Section 10.9.

The Committee retained Alight to provide recordkeeping services to the Plan, including certain plan administration functions such as maintaining reasonable practices to safeguard against unauthorized access and theft. Further, Alight is responsible for processing withdrawals from the Plan, which was clearly communicated in the Plan's Summary Plan Description in effect on the date of the Distribution (the "SPD"). *See* SPD, "Plan Recordkeeper" at 79.

100% Recycled Fiber



Alight, formerly Aon Hewitt, is a well-known recordkeeper in the retirement plan marketplace that services many large retirement plans. Alight established reasonable procedures for confirming the identity of a Plan participant prior to distributing benefits to the participant. These procedures require the Plan participant to provide a unique personal identification number (PIN) before Alight will process a withdrawal from a participant's account. In the event the purported Plan participant has forgotten their PIN, these procedures require the participant to provide significant personal information – including the participant's name, date of birth, current mailing address, and the last 4 digits of the participant's social security number – before a temporary PIN will be mailed to the participant's residence on file. As a factual matter, I have determined that these procedures are reasonable insofar as they require significant personal identifying information and access to the participant's mail in order to facilitate a distribution from the Plan.

You assert that the procedures are unreasonable and otherwise "lack [the] care, skill, prudence and diligence that a plan fiduciary should show in safeguarding the plan assets" insofar as the procedures permit the temporary PIN to be mailed to a foreign country after an individual provides the participant's personal information to Alight. As a factual matter, I disagree. Your assertion fails for a number of reasons:

- First, as described above, Alight's procedures require that an individual provide significant personal information, information that should not be easy to obtain from anyone other than the individual whose account is at issue, in order to request a mailing of the temporary PIN, and the procedures further require that the temporary PIN be mailed to the address then on file.

- Second, you did not have a communication preference on file and did not register an email address with the Plan prior to February 28, 2020, when the purported bad actors updated your account with Alight to include an allegedly fraudulent email address. As no delivery preference or email address was on file, mail to your Hove Road Address appears to have been the most appropriate method—if not the only reasonable method—to provide the temporary PIN.

- Third, in late 2018, your                      financial advisors specifically confirmed that you were receiving mail from the Company. I am aware of no record indicating that you or your financial advisors subsequently informed the Company or the Plan prior to the Distribution that you were having difficulty receiving mail at your Hove Road Address.

- Fourth, you were at all times permitted to contact Alight and provide notice that you believed communication by mail in South Africa – or at least communication by mail to your Hove Road Address – was no longer reliable. If the postal service in South Africa had "effectively collapsed" as you alleged and you had not "had any mail from [Company] for nearly two years," you could have notified Alight or the Company of this fact. I am aware of no record indicating that you advised Alight or the Company that you were having issues receiving mail at your Hove Road Address. Moreover, you could have at least taken steps (such as registering an email with the Plan) to ensure that essential Plan mailings (such as the multiple notices provided by mail and email in

100% Recycled Fiber



conjunction with the changes to your account information and the Distribution) would be received by you electronically.

As discussed in the Alight Report, Alight followed its established procedures when authorizing the distribution of your benefit. *See* Alight Report at 8. Accordingly, your benefit was distributed in accordance with all Plan terms and the reasonable procedures established by Alight for Plan distributions. Where a participant's benefits are paid in accordance with the terms of the plan document and consistent with the plan's established procedures for payment, the plan is not required to reimburse the participant for the alleged theft of the participant's benefits. *See Foster v. PPG Indus.*, 693 F.3d 1226, 1236-37 (10th Cir. 2012)

2. <u>The Alleged Theft was Perpetrated Against You and Not the Plan</u>

You assert that the alleged theft as perpetrated against the Plan, not you. As a factual matter, I disagree.

The purported bad actors were able to access your personal identifying information and provide it to Alight representatives. You have provided no evidence to show that this information was stolen from Alight or the Plan, and I am aware of no other evidence to this affect. Instead, it appears likely that this information was stolen from you through a source other than the Plan and then used to access your Plan account. This would be consistent with the approach taken to access your account with located in Gibraltar and the attempt used to access your account with the Colgate Pension Plan.

Section 10.9 of the Plan document specifically provides that the Plan is permitted to rely on the mailing address provided by a participant. You provided your Hove Road Address to the Plan and the Plan relied on this address when it mailed the temporary PIN to your Hove Road Address. This is consistent with the express terms of the Plan document.

You allege that the purported bad actors were able to access your physical mail, but the Plan is not responsible—and cannot be responsible—for securing your mail. Furthermore, at no point after your financial advisors confirmed that you were receiving mail from the Company and prior to the Distribution did you advise the Plan that communicating with you by mail at your Hove Road Address was unsecure or otherwise unreasonable. To this point, you had not even registered an email address with the Plan or established a communication preference prior to the Distribution. Having failed to take any proactive steps to ensure that you would continue to receive communications from the Plan, and despite your alleged belief that South African mail was not secure, you now assert that providing the PIN by mail was not a secure arrangement and that "no plan or financial services company in South Africa [] would send a change of PIN by regular mail."

As discussed above, pursuant to Section 10.9 of the Plan document, the Plan was entitled to rely upon the address on record. This practice is reasonable insofar as an individual Plan participant – not the Plan or its service providers – is in the best position to know whether his or her address is a secure and reliable means of receiving Plan communications. Accordingly, whether other plans or financial services companies in South Africa might send a PIN by mail is not relevant to the Plan's entitlement to rely on the address on file. Rather, I believe the relevant question is

100% Recycled Fiber

whether it is reasonable to require individual Plan participants to provide mailing addresses where communications (including the PIN) will be sent and to expect participants to provide notice if a mailing address is no longer reliable or secure. As a factual matter, I have determined that this is a reasonable practice and you have submitted no evidence demonstrating that it differs from industry practice.

Additionally, I note that you have provided no evidence to support your assertion that your PIN and the subsequent mailings regarding changes to your Plan account were stolen from the Plan rather than from you (be it at your Hove Road Address by an individual with access to your mail, in route to your Hove Road Address, or at the Johannesburg Post Office). Accordingly, I find that your assertion that the theft was a theft from the Plan and not from you is factually unsupported. Instead, the evidence demonstrates that these written communications were properly mailed to your Hove Road Address, which you provided to the Plan and upon which the Plan is entitled to rely. Consistent with applicable law, the Plan is entitled to treat these properly mailed written communications as received by you at your Hove Road Address. *Faciane v. Sun Life Assurance Co. of Canada*, 931 F.3d 412, 420 (5th Cir. 2019) (under mailbox rule proof that a letter properly directed was placed in the U.S. mail creates a presumption that it was actually received by the person to whom it was addressed); *Anania v. McDonough*, 1 F.4th 2019, 1025 (Fed. Cir. 2021) (same).

It is also notable that bad actors have accessed, or attempted to access, certain of your non-Plan accounts. For example, you advised the Plan that bad actors had successfully accessed your account with            in Gibraltar and changed your personal information but were interrupted prior to receiving a distribution.

Similarly, you advised that bad actors had attempted to update your information and receive a distribution from the separate Colgate Pension Plan. These attempts of defrauding your other accounts were significant enough that you prepared a "Notification of Identity Theft and Potential Future Fraud Attempts" explaining that "I have been the victim of identity theft" and that the bad actors "remain in operation and continue to make attempts to defraud me." Based on the foregoing, I believe it is reasonable to interpret these other attempts to fraudulently access your accounts as evidence that you may have been the target of identity theft. Further, to the extent your Plan benefit was stolen by a bad actor, I believe that it is reasonable to interpret these other attempts to fraudulently access your accounts to support the conclusion that a bad actor has, through no fault of the Plan, acquired your personally identifiable information and accessed mail sent to your Hove Road Address.

Finally, your argument that the theft must have occurred from the Plan because you never received the Distribution is unpersuasive. Bad actors allegedly: obtained your personally identifying information (from a source other than the Plan); intercepted multiple mailings to you specific to the Plan over the course of months (or potentially years); accessed your account with            in Gibraltar, changing your personal information with            ; and attempted a distribution of your Colgate Pension Plan benefit. Based on these facts, and for the reasons summarized above, I believe that there is substantial evidence to conclude that any theft of your Plan benefits was a theft from you rather than a theft from the Plan.





3. You were on Notice of the Plan's Practices for Permitting Distributions Online or through the Alight Call Center

The Plan's procedures for permitting distribution by mail or online are described in the SPD. The SPD clearly provides that Alight "is responsible for such plan administration functions as . . . withdrawals" and further explains that participants "may request a final payout election online ... or by calling the Benefits Information Center." SPD, "Plan Recordkeeper" at 79; *Id.*, "Making a Payout Election" at 65. Similarly, the SPD explains that participants "may also speak to a customer service representative to ... request account transactions" but that "[f]or security purposes, access to information about [the participant's] S&I Plan account requires [the participant] to enter user information." *Id.*, "Accessing Your Account," at 67.

You were informed of the possibility that distributions could be requested over the phone or online using your personal information and, as such, you should have taken steps to secure the means through which your Plan account could be accessed by a bad actor. However, despite your allegations that the mail system in South Africa had "effectively collapsed," you failed to take available steps to protect your Plan account. For example, you could have registered an email address with the Plan, established a preferred communication delivery method, advised the Plan that you were no longer receiving mail from the Plan, or advised the Plan that you believed that communication by mail to the Hove Road Address was no longer secure. You took none of these steps. In short, notwithstanding the fact that you were aware that distributions could be requested by phone or online using your personal information, it appears that you took no proactive steps to secure your personal information or Plan account. Additionally, it bears repeating that there is no evidence to suggest that the Plan or its vendors were the source of the plan data used to access your Plan account. Accordingly, I find that the loss was caused, at least in part, by your failure to take these proactive steps, rather than any deficiency in the Plan's procedures.

4. There is Nothing to Indicate that the Plan's Fiduciaries Breached their Fiduciary Duties in Permitting this Distribution

You assert that the Committee breached its fiduciary duties insofar as the Plan allowed for an individual to access your account through procedures that are not secure and which a careful, skillful, prudent and diligent fiduciary would not have allowed. I disagree; the facts do not support a conclusion that there was a breach of fiduciary duty.

The Plan's procedures, established in conjunction with a one of the largest retirement plan recordkeepers in the United States, were reasonable and required that the individual accessing your account have access to both a significant amount of your personal information and your mail. Further, you have provided no evidence that these procedures were inconsistent with industry practice at the time of the Distribution. Accordingly, I conclude that the Plan's procedures were reasonable.

Your primary allegation appears to be that it is a breach of the Committee's fiduciary duty to have permitted Alight to mail the temporary PIN to South Africa. As discussed above, the Plan document clearly permits the Plan to hire service providers to render services to the Plan and to rely on the determinations made by these service providers. *See* 2016 Plan Document at Sections





10.4(g); 10.5. Further, the SPD expressly provides that Alight is responsible "for such plan administration functions as . . . withdrawals." SPD, "Plan Recordkeeper" at 79. Alight's decision to mail the PIN to your Hove Road Address is supported by the terms of the Plan document and the SPD.

Further, you have failed to show that Alight's decision that it was appropriate to mail the PIN to your Hove Road Address was a fiduciary, as opposed to ministerial, act. As such, Alight's act of mailing the PIN is not sufficient to support a claim for breach of fiduciary duty.

5. The Plan is Not Otherwise Required to Reimburse You for the Distribution

The Plan is not otherwise required to reimburse you for the amount of the Distribution. Absent a showing that the Distribution was in violation of the Plan's terms, that the Plan's established procedures were unreasonable, or that the Plan failed to follow its established procedures, the Plan is not required to make you whole for the Distribution, and there is no basis for doing so under the terms of the Plan. As has been explained, "[t]here is no indication that Congress intended to impose upon plans the obligations of an insurer against any and all wrongful actions by third parties. Thus, the fact that [the participant] has not received his benefits [due to a fraudulent distribution] is insufficient in itself to allow him recovery against the Plan." *Foster v. PPG Indus.*, 2010 U.S. Dist. LEXIS 90516, 10 (N.D. Okla. 2010). Moreover, in the absence of a breach of fiduciary duty, reimbursing you for the alleged theft may be inconsistent with the Committee's fiduciary duties. *See Foster v. PPG Indus.*, 693, F.3d 1226, 1238-39 (10th Cir. 2012) (noting that "the Plan Administrator's decision [not to reimburse the participant for the fraudulent distribution] was consistent with its fiduciary obligation to safeguard [p]lan assets for the benefit of all participants, not just the [participant]. The [p]lan had paid out benefits in full in [the participant's] name once; to do so again would have depleted [p]lan assets to the detriment of other participants"). As there is no basis in the Plan document for making you whole with respect to the Distribution, and as the Plan followed its established procedures in making the Distribution, the Plan is not required to reimburse you for the Distribution.

## E. CONCLUSION

Your demand that the Plan confirm that the Distribution did not "impair[] or reduce[]" your benefit under the Plan or, in the alternative, restore to your Plan account the amount of the Distribution is hereby denied. Consistent with the terms of the Plan and applicable law, the Plan and its third-party recordkeeper established reasonable procedures for determining the identity of the individual requesting a distribution and these procedures were followed when your Plan account was distributed on March 17, 2020. For the reasons discussed above, your arguments that the procedures were unreasonable, that the theft was a theft against the Plan (as opposed to against you), that the Plan's fiduciaries breached their fiduciary duties in permitting the distribution, and that the Plan is otherwise required to make you whole for the alleged theft are unsupported by the facts and pertinent Plan provisions.

## F. YOUR APPEAL RIGHTS

You have the right to appeal this decision by submitting a written appeal to the Appeals Administrator. Generally, this appeal must be filed within 60 days of your receipt of this





decision. However, due to the COVID-19 pandemic, you are eligible to toll this deadline until the earlier of (A) one year following the date that your appeal would ordinarily be due or (B) 60 days following the announced end of the National Emergency.

In your appeal, you can submit written comments, documents, records and other information relating to the Claim. You will also have access to all documents, records and other information relevant to your benefit claim, and copies of this information will be provided to you free of charge upon your request. Additional material or information necessary for you to perfect your claim on appeal include evidence that the Plan did not maintain or follow reasonable procedures to prevent unauthorized access to participant accounts and that such failure caused you harm. Such evidence is necessary to support your claim. You should submit with any appeal, any evidence or argument that you believe supports your claim or contradicts any of the findings set forth in this letter.

Upon receipt of your appeal, the Appeals Administrator (or its delegate) will conduct a full and fair review of your appeal. This plan fiduciary will have had no role in the initial claim denial and the review will be an independent one that does not give the original denial any special consideration.

Within 60 days after your written appeal is received by the Appeals Administrator, you will be given a notice of the decision with respect to your appeal based on the facts and the pertinent Plan provisions. If special circumstances require an extension of time for reviewing the appeal, the Appeals Administrator will provide you with written or electronic notice of the extension prior to the end of the initial 60-day period. The extension notice will indicate the special circumstances requiring an extension of time and the date by which the Plan expects to make its decision. This extension may be up to an additional 60 days, meaning that the Appeals Administrator may take up to 120 days from the date your appeal was received to make its decision regarding your appeal.

The Appeals Administrator for claims under the Plan is the Colgate-Palmolive Company Employee Relations Committee. The Appeals Administrator has the final authority in deciding all claims and appeals, and may be contacted in writing at: Colgate-Palmolive Company, Global Benefits Department, Attn: Employee Relations Committee, 300 Park Avenue, New York, NY 10022.

## G.    CIVIL ACTION

Because the Plan is subject to ERISA, an adverse final decision by the Appeals Administrator is required before you can bring a civil action in court under ERISA Section 502(a). This requires that you exhaust the Plan's internal appeals process before filing a lawsuit or taking other legal action of any kind against the Plan regarding your benefit claim. However, no lawsuit or legal action of any kind related to a benefit decision may be filed by you in a court of law or in any other forum, unless it is filed within the earliest of the following dates: (1) 180 days after the date of the Appeals Administrator's final decision on your appeal of a denied claim; (2) three years after the date specified in the application for the benefit distribution at issue in the court proceeding; or (3) the statutory deadline for filing a claim or lawsuit for the benefit at issue in the court proceeding, as determined by applying the most analogous statute of limitations for the state

100% Recycled Fiber

of New York. Please note that any such lawsuit is required to be filed in a court of competent jurisdiction in New York, New York.

Sincerely,

Marty Collins,
Vice President, Global Total Rewards & HR Operations



100% Recycled Fiber