**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| PAULA DISBERRY<br><br>     Plaintiff,<br><br> v.<br><br>EMPLOYEE RELATIONS COMMITTEE OF THE COLGATE-PALMOLIVE COMPANY, ALIGHT SOLUTIONS, LLC, AND THE BANK OF NEW YORK MELLON CORPORATION,<br><br>     Defendants. | Case No. 22-cv-05778-CM-OTW |

**THE BANK OF NEW YORK MELLON'S MEMORANDUM OF LAW IN SUPPORT OF
ITS MOTION TO DISMISS PLAINTIFF'S COMPLAINT**

## **TABLE OF CONTENTS**

**Page**

INTRODUCTION ............................................................................................................................ 1

BACKGROUND .............................................................................................................................. 2

    I.     The Defendants' Respective Roles Under The Plan .............................................. 2

    II.    The Alleged Fraudulent Scheme ............................................................................ 3

    III.   Procedural History ................................................................................................. 5

LEGAL STANDARD ...................................................................................................................... 5

ARGUMENT .................................................................................................................................... 7

    I.     MS. DISBERRY FAILS TO STATE A SECTION 502(A)(2) CLAIM AGAINST BNY MELLON BECAUSE BNY MELLON IS NOT A FIDUCIARY WITH RESPECT TO THE CHALLENGED CONDUCT IN THIS ACTION ...................................................................................................... 7

CONCLUSION ............................................................................................................................... 11

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ................................................................................................................. 5

*Bartnett v. Abbott Labs.*,
   492 F. Supp. 3d 787 (N.D. Ill. 2020) ................................................................................ 10, 11

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) ................................................................................................................. 5

*Blatt v. Marshall & Lassman*,
   812 F.2d 810 (2d Cir. 1987) .................................................................................................... 7

*Coulter v. Morgan Stanley & Co.*,
   753 F.3d 361 (2d Cir. 2014) .................................................................................................... 8

*In re DeRogatis*,
   904 F.3d 174 (2d Cir. 2018) .................................................................................................... 7

*DiFolco v. MSNBC Cable L.L.C.*,
   622 F.3d 104 (2d Cir. 2010) .................................................................................................... 6

*Fifth Third Bancorp v. Dudenhoeffer*,
   573 U.S. 409 (2014) ................................................................................................................. 6

*Harley v. Bank of New York Mellon*,
   2017 WL 78901 (S.D.N.Y. Jan. 9, 2017) .............................................................................. 10

*Lotes Co. v. Hon Hai Precision Indus. Co.*,
   753 F.3d 395 (2d Cir. 2014) .................................................................................................... 2

*Massaro v. Palladino*,
   19 F.4th 197 (2d Cir. 2021) .................................................................................................... 7

*Masten v. Metro. Life Ins. Co.*,
   543 F. Supp. 3d 25 (S.D.N.Y. 2021) ....................................................................................... 6

*Pegram v. Herdrich*,
   530 U.S. 211 (2000) ................................................................................................................. 7

*Pension Ben. Guar. Corp. ex rel. St. Vincent Catholic Med. Ctrs. Ret. Plan v.
   Morgan Stanley Inv. Mgmt. Inc.*,
   712 F.3d 705 (2d Cir. 2013) ................................................................................................. 5, 6

*TufAmerica, Inc. v. Diamond*,
    968 F. Supp. 2d 588 (S.D.N.Y. 2013) .......................................................................................8

**Statutes**

29 U.S.C. § 1002 ................................................................................................................... 7, 8

29 U.S.C. § 1103 ........................................................................................................................10

29 U.S.C. § 1109 ..........................................................................................................................7

29 U.S.C. § 1132 ..........................................................................................................................7

Pursuant to Federal Rule of Civil Procedure 12(b)(6), Defendant The Bank of New York Mellon ("BNY Mellon") (incorrectly named in the Complaint as The Bank of New York Mellon Corporation), by and through its attorneys, moves this Court to dismiss the claims against it.

## INTRODUCTION

Plaintiff Paula Disberry alleges that she was the victim of a fraudster who hacked into her Colgate-Palmolive Company Employees Savings and Investment Plan ("Plan") account, changed her personal account information, and stole over $600,000 of her retirement savings. Ms. Disberry's frustration over the theft is understandable, but BNY Mellon is not to blame. BNY Mellon, as directed trustee, did not interact with the fraudster, never possessed and had no role in managing Ms. Disberry's personal information, and was not privy to the changes the fraudster made to Ms. Disberry's personal information before the requested benefits distribution. BNY Mellon's only role in the events at issue in this lawsuit was the ministerial task of cutting a check pursuant to instructions provided by the Plan's recordkeeper, Alight Solutions, LLC ("Alight"). Ms. Disberry's own allegations and the terms of the governing Master Trust Agreement bear this out.

Ms. Disberry brings this single-count ERISA breach of fiduciary duty lawsuit against the Plan's named fiduciary, the Employee Relations Committee of the Colgate-Palmolive Company (the "Committee"), Alight, and BNY Mellon. But because Ms. Disberry does not allege any facts that would support a breach of fiduciary duty claim against BNY Mellon—and because BNY Mellon had no fiduciary responsibilities for the conduct being challenged in this lawsuit—the Court should dismiss her breach of fiduciary duty claim against BNY Mellon.

1

**BACKGROUND**

I.  **The Defendants' Respective Roles Under The Plan**

Ms. Disberry is a former employee of Colgate-Palmolive. (Compl. ¶ 8.)[1] As an employee, she participated in the Plan, which is a combination of several "programs," including defined contribution, profit sharing, and employee stock ownership plan features, and is governed by the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 *et seq.* (*Id.* ¶¶ 7, 9.)

Each of the defendants has a well-defined role with respect to the Plan: the Committee is the Plan's Administrator and named fiduciary; Alight is the Plan's recordkeeper; and BNY Mellon is the Plan's directed trustee. (*See* Compl. ¶¶ 4-6; *see also* Ex. A, Amended and Restated Defined Contribution Plan Master Trust Agreement ("Master Trust Agreement").)[2] Alight operates the Plan's telephone customer service center and the website where Plan participants can manage their online Plan accounts. (Compl. ¶ 5.) Alight also facilitates, directs, and processes distributions from participants' accounts. (Compl. ¶ 5; Ex. A at § 2.8.) BNY Mellon is the custodian of the Plan's assets and, when directed by an authorized person, makes payments from the Plan's funds according to the instructions provided by the authorized person. (Compl. ¶ 6; Ex. A at § 1.7.) BNY Mellon is not involved—and is not alleged to be involved—in collecting, maintaining, or modifying participants' personal account information or interacting with participants. (Compl. ¶ 6.) Nor does BNY Mellon receive distribution requests directly from participants or have responsibility for verifying distribution requests relayed by Alight. (*See* Compl. ¶ 6; Ex. A at §§ 1.9, 7.6.)

---

[1] For purposes of this Motion only, BNY Mellon "accept[s] all factual claims in the complaint as true." *See Lotes Co. v. Hon Hai Precision Indus. Co.*, 753 F.3d 395, 403 (2d Cir. 2014).
[2] The Master Trust Agreement is incorporated into the Complaint (*see* p.7 *infra*) and sets forth BNY Mellon's obligations as trustee.

As relevant here, under the Master Trust Agreement, BNY Mellon is responsible for "distribution services," which is limited to cutting and furnishing checks *only when directed by* the Named Fiduciary or its designee, constituting an "Authorized Person." (*See* Ex. A at §§ 1.7, 2.8 ("[t]he Named Fiduciary directs [BNY Mellon] and [BNY Mellon] shall, as part of its services under this Agreement, provide benefit payment disbursement services for the Company's Plans," including creating and furnishing "checks, direct deposits, or wire transfers for participant benefit distributions as *instructed by the Plans' recordkeeper(s) . . . .*") (emphasis added); *see also* Compl. ¶ 30.) The Master Trust Agreement further explains that distributions are to be made only "pursuant to Authorized Instructions"; that the Authorized Person is responsible "for determining that the Authorized Instructions are in accordance with the terms of a Plan and applicable law"; and that BNY Mellon is entitled to "conclusively presume" that instructions it receives and reasonably believes to be from an "Authorized Person" are authentic." (Ex. A at §§ 1.7, 1.9.) The Master Trust Agreement also specifically states that BNY Mellon is not responsible for establishing or maintaining "a record or account in the name of any individual participant . . . ." (Ex. A at § 7.6.)

## II.     The Alleged Fraudulent Scheme

Since 2008, Ms. Disberry has lived in South Africa. (Compl. ¶ 10.) In January 2020, a fraudster called the Plan's customer service center (which is not operated by BNY Mellon), falsely identified herself as Ms. Disberry, and requested to update Ms. Disberry's contact information in connection with her Plan account. (*Id.* ¶ 14.) In response, the customer service center sent a temporary personal identification number (PIN) by mail to Ms. Disberry's South Africa address, which the fraudster intercepted. (*Id.*) In February 2020, the fraudster called the Plan's customer service center again and used the temporary PIN to change Ms. Disberry's phone number and

3

email address on file with the Plan. (*Id.* ¶ 15.) The fraudster was also able to reset Ms. Disberry's online user ID and password and access her online Plan account. (*Id.* ¶ 16.)

On March 9, 2020, the fraudster accessed Ms. Disberry's online Plan account and added information for direct deposit to an account in Bank of America's Las Vegas branch. (*Id.* ¶ 17.) At that time, Ms. Disberry's Plan account balance was approximately $750,000. (*Id.* ¶ 9.) Eight days later, on March 17, 2020, the fraudster accessed Ms. Disberry's online Plan account once again, changed Ms. Disberry's mailing address to a location in Las Vegas, and requested distribution of the entire account balance via direct deposit to the Bank of America account. (*Id.* ¶ 18.) The fraudster then called the Plan's customer service center to confirm her request. (*Id.* ¶ 19.) The customer service center told the fraudster that the Plan did not conduct distributions by direct deposit, so the fraudster requested a check to be sent to the Las Vegas address that the fraudster had added to Ms. Disberry's online Plan account earlier that day. (*Id.*) The customer service center then "conducted the distribution transaction online" during the phone call. (*Id.*) Three days later, on March 20, 2020, "the distribution was processed" and a "BNY Mellon check" for approximately $600,000 (the entire account balance less tax withholdings) "was sent to the fraudster" in Las Vegas. (*Id.* ¶ 20.) The fraudster cashed or deposited the check at the Bank of America's Las Vegas branch on March 27, 2020. (*Id.*)

Following failed attempts to access her online Plan account in August 2020, Ms. Disberry contacted Colgate-Palmolive and the Plan's customer service center to request information about her account. (*Id.* ¶ 12.) On September 14, 2020, Ms. Disberry was informed that her entire account balance had been distributed. (*Id.* ¶ 13.)

### III. Procedural History

Ms. Disberry brings a single claim for breach of fiduciary duty pursuant to ERISA §§ 409 and 502(a)(2), 29 U.S.C. §§ 1109 and 1132(a)(2), against the Committee, Alight, and BNY Mellon, collectively, claiming that the Defendants breached their fiduciary duties of loyalty and prudence by "causing or allowing the Plan to make unauthorized distributions of Plan assets; failing to identify and investigate suspicious activities and red flags; failing to identify and halt suspicious distribution requests; failing to confirm authorization for distributions with the Plan participant before making distributions; failing to provide timely notice of a request for distributions to the Plan participant by telephone or email; failing to establish distribution processes to safeguard Plan assets against unauthorized withdrawals; failing to monitor other fiduciaries' distribution processes, protocols, and activities; and related acts and omissions." (Compl. ¶ 43.)

### LEGAL STANDARD

To survive a Rule 12(b)(6) motion to dismiss for failure to state a claim, a complaint must allege "a plausible entitlement to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 559 (2007). Although the Court must take the allegations in a plaintiff's pleadings as true and make all reasonable inferences in favor of the plaintiff, "formulaic recitation[s] of the elements of a cause of action will not do." *Id.* at 555. Rather, a complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks and citation omitted).

Courts must take "particular care" in applying these standards to ERISA claims. *Pension Ben. Guar. Corp. ex rel. St. Vincent Catholic Med. Ctrs. Ret. Plan v. Morgan Stanley Inv. Mgmt.*

*Inc.*, 712 F.3d 705, 718 (2d Cir. 2013). That is because "a suit claiming breach of fiduciary duty . . . elevates the possibility that a plaintiff with a largely groundless claim [will] simply take up the time of a number of other people, with the right to do so representing an *in terrorem* increment of the settlement value." *Id.* at 719 (internal quotation marks omitted). Reinforcing this concern, the Supreme Court has identified motions to dismiss as an "important mechanism for weeding out meritless [ERISA] claims." *Fifth Third Bancorp v. Dudenhoeffer*, 573 U.S. 409, 425 (2014).

On a motion to dismiss, "[t]he Court may consider any written instrument attached to the complaint as an exhibit, any statements or documents incorporated in it by reference, and any integral document on which the plaintiff relied in drafting the complaint." *Masten v. Metro. Life Ins. Co.*, 543 F. Supp. 3d 25, 32 (S.D.N.Y. 2021). "Where a document is not incorporated by reference, the court may [nevertheless] consider it where the complaint relies heavily upon its terms and effect, thereby rendering the document integral to the complaint." *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010) (internal quotation marks omitted). Here, the Court may rely upon the Master Trust Agreement in deciding BNY Mellon's Motion because the Master Trust Agreement is incorporated by reference into the Complaint, and even if it is not, the Complaint relies upon BNY Mellon's alleged fiduciary duties stemming from the Master Trust Agreement, rendering it integral to the Complaint. (*See* Compl. ¶ 6 (discussing the Plan's Master Trust Agreement and alleging that "[p]ursuant to the Master Trust Agreement, [BNY Mellon] [] agreed to discharge its duties with the care and skill required under ERISA and to otherwise exercise the standard of care of a professional custodian").)

6

**ARGUMENT**

I.   **MS. DISBERRY FAILS TO STATE A SECTION 502(A)(2) CLAIM AGAINST BNY MELLON BECAUSE BNY MELLON IS NOT A FIDUCIARY WITH RESPECT TO THE CHALLENGED CONDUCT IN THIS ACTION.**

In her single-count Complaint, Ms. Disberry asserts a breach of fiduciary duty claim against BNY Mellon under ERISA § 502(a)(2), which allows a plan participant to bring an action "for appropriate relief" under ERISA § 409. *See* 29 U.S.C. § 1132(a)(2). ERISA § 409 provides that a "person who is a fiduciary with respect to a plan" who breaches "the responsibilities, obligations, or duties imposed upon fiduciaries by this subchapter" shall be liable "to make good to such plan any losses to the plan" resulting from the breach. *See* 29 U.S.C. § 1109(a).

In every case charging breach of ERISA fiduciary duty, "the threshold question is not whether the actions of some person employed to provide services under a plan adversely affected a plan beneficiary's interest, but whether that person *was acting as a fiduciary (that is, was performing a fiduciary function) when taking the action subject to complaint.*" *Massaro v. Palladino*, 19 F.4th 197, 211 (2d Cir. 2021) (citing *Pegram v. Herdrich*, 530 U.S. 211, 226 (2000)) (emphasis added).

"Fiduciary" is defined in the statute as:

[A] person is a fiduciary with respect to a plan to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, (ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan.

29 U.S.C. § 1002(21)(A). The Second Circuit employs a functional approach to determine which individuals and entities are ERISA fiduciaries "by focusing on the function performed, rather than on the title held." *In re DeRogatis*, 904 F.3d 174, 191 (2d Cir. 2018) (quoting *Blatt v. Marshall &*

*Lassman*, 812 F.2d 810, 812 (2d Cir. 1987)). Indeed, "a person may be an ERISA fiduciary with respect to certain matters but not others." *Coulter v. Morgan Stanley & Co.*, 753 F.3d 361, 366 (2d Cir. 2014).

The Complaint alleges BNY Mellon "served as a Plan Trustee, provided investment management services to the Plan, served as custodian of the Plan's assets, and made Plan payments from the Plan's trust fund." (Compl. ¶ 6.) The Complaint then merely parrots the definition of a fiduciary, stating BNY Mellon was a fiduciary "in that it exercised authority or control respecting management or disposition of the Plan's assets, it exercised discretionary authority or discretionary control respecting management of the Plan, it had discretionary authority or discretionary responsibility in the administration of the Plan, and/or it provided investment advice for a fee or other compensation from the Plan." (*Id.* (quoting 29 U.S.C. § 1002(21)(A).) But these conclusory and formulaic allegations are contrary to the Master Trust Agreement, which establishes that BNY Mellon *did not* have discretionary authority to administer the Plan or manage the Plan's assets, nor did it provide investment advice for a fee. (*See* Ex. A at B-1 ("In its role as a directed trustee, [BNY Mellon] does not have discretionary investment management authority, render investment advice for a fee or have discretionary authority or responsibility in the administration of the covered plan(s).").) The Court should thus disregard Ms. Disberry's allegations claiming BNY Mellon is a fiduciary for purposes of this Action. *See TufAmerica, Inc. v. Diamond*, 968 F. Supp. 2d 588, 592 (S.D.N.Y. 2013) ("If a document relied on in the complaint contradicts allegations in the complaint, the document, not the allegations, control, and the court need not accept the allegations in the complaint as true.").

Ms. Disberry's formulaic allegations characterizing BNY Mellon as a fiduciary are also insufficient to link BNY Mellon's limited role as directed trustee to the acts that resulted in the

8

loss alleged in the Complaint. None of Ms. Disberry's factual allegations concerns responsibilities of BNY Mellon. She alleges that Alight, *not BNY Mellon*, ran the Plan's telephone customer service center and the website where Plan participants access their online Plan accounts. (Compl. ¶ 5.) She also alleges it is Alight who "exercised control over Plan assets by facilitating, directing, and processing . . . the unauthorized distribution in this case." (*Id.*) There is no allegation that BNY Mellon was involved in these activities whatsoever.

Ms. Disberry also alleges that "Defendants" ignored "significant red flags"—all related to the fraudster's repeated communications with the telephone customer service center and online account activity for which BNY Mellon had no responsibilities or involvement—that she claims should have prompted further action to "confirm the legitimacy of the distribution request," and that the failure to "notice any of these suspicious actions" lead "to the loss of Plan assets." (Compl. ¶ 35.) Specifically, she alleges the following "red flags": (1) "[t]he fact that within the span of less than two months, a person claiming to be a Plan participant changed the participant's phone number, email address, mailing address, and bank account information, and then requested an immediate cash distribution of the participant's entire $750,000 Plan account"; (2) "[t]he fact that a person claiming to be a Plan participant changed the participant's contact information such that the phone number and email address were from one country and the mailing address was in a different country"; (3) "[t]he fact that a person claiming to be a Plan participant requested an immediate cash distribution instead of a tax-protected roll-over distribution; that they were doing so prior to age 59 ½, subjecting them to an additional 10% tax penalty; and that they failed to contact the International Benefits Department prior to requesting a distribution while residing in a foreign country, despite the Summary Plan Description's strong recommendation to do so"; and (4) "[t]he fact that a flurry of attempts to access a Plan account via telephone and online occurred

within a short time span, many of which were unsuccessful." (*Id.*) But Ms. Disberry does not allege that BNY Mellon had any role or responsibilities in connection with these actions, nor could she given the explicit responsibilities of BNY Mellon in the Master Trust Agreement. (*See* Ex. A at §§ 2.8, 7.6.) And whatever the merits of these "red flags," they are irrelevant to BNY Mellon, which does not operate the customer service center, does not interact with Plan participants (much less track how often participants contact customer service), does not maintain or modify participants' account information, does not initiate distributions, and does not advise participants about tax implications of disbursements. (*See* p.3–4 *supra*.)

Indeed, it is telling that, other than boilerplate allegations about BNY Mellon's duties (*id.* ¶ 6), the only factual allegations relating to BNY Mellon relate to the issuance of the check (*id.* ¶ 20), and Ms. Disberry does not allege any irregularities in the issuance itself.[3] *See Harley v. Bank of New York Mellon*, 2017 WL 78901, at *20-21 (S.D.N.Y. Jan. 9, 2017) (recognizing that the fiduciary duties of a directed trustee are "extremely narrow"). Accordingly, Ms. Disberry's breach of fiduciary duty claim against BNY Mellon should be dismissed.

---

[3] Moreover, the Master Trust Agreement confirms that BNY Mellon was *required* to follow the directions as to benefit distributions from an Authorized Person and that Authorized Person is responsible for determining that those directions are in accordance with the terms of the Plan and applicable law. (*See* Ex. A at §§ 1.9, 2.8; *see also* Compl. ¶ 30.)

ERISA § 403(a), 29 U.S.C. § 1103(a), the directed trustee provision, states in pertinent part:

> [A]ll assets of an employee benefit plan shall be held in trust by one or more trustees.... [T]he trustee ... shall have exclusive authority and discretion to manage and control the assets of the plan, except to the extent that—
>
> (1) the plan expressly provides that the trustee ... [is] subject to the direction of a named fiduciary who is not a trustee, in which case *the trustees shall be subject to proper directions* of such fiduciary which are made in accordance with the terms of the plan and *which are not contrary to this chapter*.

29 U.S.C. § 1103(a) (emphasis added).

In *Bartnett v. Abbott Laboratories*, 492 F. Supp. 3d 787 (N.D. Ill. 2020), a district court addressed a similar situation—*i.e.*, a fraudster accessing the plaintiff's retirement plan account and transferring funds through calls with a telephone customer service center operated by a plan recordkeeper—and dismissed breach of fiduciary duty claims against defendants who were not responsible for the alleged misconduct. *Id.* at 793–95 (dismissing claims against the employer, the plan sponsor, and the plan administrator). The court explained that a plaintiff must "sufficiently allege that [a defendant] meets the statutory definition of fiduciary and that it acted in its capacity as a fiduciary when it took the actions subject to the complaint." *Id.* at 796. Because the complaint (1) failed to allege "any fiduciary acts" taken by defendants other than Alight, and (2) failed to "link them to the alleged theft," the breach of fiduciary claim against those defendants failed. *Id.* The court also rejected the plaintiff's argument that all defendants were functional fiduciaries "because [they] failed to take necessary steps to protect plan assets," explaining that "alleging what all defendants failed to do does not establish whether any individual defendant is a fiduciary under the statute." *Id.*

Just as the *Bartnett* court dismissed breach of fiduciary duty claims against defendants who were not responsible for the alleged misconduct at issue in that case, the Court should dismiss the breach of fiduciary duty claim against BNY Mellon here.

## **CONCLUSION**

For the foregoing reasons, the Court should dismiss Ms. Disberry's claim against BNY Mellon.

Dated: New York, New York
       September 15, 2022

        /s/ Anjanique M. Watt
        Anjanique M. Watt
        MAYER BROWN LLP

11

        1221 Avenue of the Americas  
        New York, New York 10020  
        (212) 506-2500

        Nancy Ross*  
        Megan Troy*  
        MAYER BROWN LLP  
        71 S. Wacker Drive  
        Chicago, Illinois 60606  
        (312) 782-0600  
        * *pro hac vice application pending*

        *Counsel for Defendant The Bank of New York Mellon*