**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| PAULA DISBERRY,<br><br>                    Plaintiff,<br><br>          v.<br><br>EMPLOYEE RELATIONS COMMITTEE<br>OF THE COLGATE-PALMOLIVE<br>COMPANY, ALIGHT SOLUTIONS LLC,<br>AND BANK OF NEW YORK MELLON<br>CORPORATION,<br><br>                    Defendants. | Case No. 22-CV-5778-CM-OTW<br><br>**PLAINTIFF'S MEMORANDUM OF<br>LAW IN OPPOSITION TO DEFENDANT<br>ALIGHT SOLUTIONS LLC'S MOTION<br>TO DISMISS PLAINTIFF'S<br>COMPLAINT** |

## TABLE OF CONTENTS

I.     INTRODUCTION ............................................................................................................ 1

II.    STATEMENT OF FACTS ............................................................................................... 3

III.   ARGUMENT .................................................................................................................... 6

     A.    Legal Standard Under Rule 12(b)(6). ................................................................... 6

     B.    Plaintiff Has Adequately Pled Alight's Fiduciary Status To State A Claim For Breach Of Fiduciary Duty ..................................................................................... 6

     C.    Alight Cites Multiple Documents That Are Improper For Consideration On A Motion To Dismiss. ........................................................................................ 16

         1.    The Court Should Not Consider The Service Agreement In Ruling On The Motion To Dismiss. ............................................................... 17

         2.    The Court Also Should Not Consider Alight's Report Of Investigation In Deciding The Motion To Dismiss. ...................................... 19

IV.   CONCLUSION ............................................................................................................... 20

# TABLE OF AUTHORITIES

**Cases**

*Allen v. Bank of America Corporation*,
    No. 15 Civ. 4285 (LGS), 2016 WL 4446373 (S.D.N.Y. Aug. 23, 2016) ........................ 16

*Allen v. Credit Suisse Sec. (USA) LLC*,
    895 F.3d 214 (2d Cir. 2018) .................................................................................... 7, 15

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ....................................................................................................... 6

*Bartnett v. Abbott Lab'ys*,
    492 F. Supp. 3d 787 (N.D. Ill. 2020) ............................................................ 9, 10, 13, 20

*Bd. of Trustees of Bricklayers & Allied Craftsmen Loc. 6 of New Jersey Welfare Fund v.*
    *Wettlin Assocs., Inc.*, 237 F.3d 270  (3d Cir. 2001) ................................................... 2, 11

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) ....................................................................................................... 6

*Chambers v. Time Warner, Inc.*,
    282 F.3d 147 (2d Cir. 2002) ................................................................................... 16, 17

*DeRogatis v. Bd. of Trs. of the Cent. Pension Fund of the Int'l Union of Operating Eng'rs*
    *& Participating Emp'rs*, No. 13 Civ. 8788 (CM), 2016 WL 5805283 (S.D.N.Y.
    Sept. 19, 2016) ......................................................................................................... 14, 15

*Durnack v. Ret. Plan Comm. of Talen Energy Corp.*,
    No. CV 20-5975, 2021 WL 4149145 (E.D. Pa. Sept. 13, 2021) ................................... 17

*Easter v. Cayuga Med. Ctr. at Ithaca Prepaid Health Plan*,
    217 F. Supp. 3d 608 (N.D.N.Y. 2016) ..................................................................... 12, 13

*Farm King Supply, Inc. Integrated Profit Sharing Plan & Tr. V. Edward D. Jones & Co.*,
    884 F.2d 288 (7th Cir. 1989) ........................................................................................ 15

*Frommert v. Conkright*,
    433 F.3d 254 (2d Cir. 2006) ........................................................................................... 6

*Haley v. Teachers Ins. & Annuity Assoc. of America*,
    No. 17-CV-855 (JPO), 2018 WL 1585673 (S.D.N.Y. Mar. 28, 2018) ........................... 13

*In re DeRogatis*,
    904 F.3d 174 (2d Cir. 2018).................................................................................... 14, 15

*Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.*,
    62 F.3d 69 (2d Cir. 1995) ............................................................................................ 16

*IT Corp. v. Gen. Am. Life Ins. Co.*,
    107 F.3d 1415 (9th Cir. 1997) ............................................................................... 11, 19

*Jaghory v. N.Y. State Dep't of Educ.*,
    131 F.3d 326 (2d Cir. 1997)........................................................................................ 6

*Leventhal v. MandMarblestone Group, LLC*,
    No. 18-cv-2727, 2019 WL 1953247 (E.D. Pa. May 2, 2019) .................................... passim

*Levi v. McGladry LLP*,
    No. 12-cv-8787 (ER), 2016 WL 1322442 (S.D.N.Y. Mar. 31, 2016)) ...................... 14, 15

*LoPresti v. Terwilliger*,
    126 F.3d 34 (2d Cir. 1997)......................................................................................... 7

*Mertens v. Hewitt Assocs.*,
    508 U.S. 248 (1993)................................................................................................... 7

*Pension Benefit Guar. Corp. ex rel. St. Vincent Catholic Med. Ctrs. Ret. Plan v. Morgan
    Stanley Inv. Mgmt. Inc.*, 712 F.3d 705 (2d Cir. 2013) ........................................... 2, 6

*Rodriguez v. Farm Stores Grocery, Inc.*,
    518 F.3d 1268 (11th Cir. 2008) ................................................................................ 13

*Slupinski v. First Unum Life Ins. Co.*,
    554 F.3d 38 (2d Cir. 2009)......................................................................................... 2

*U.S. v. King*,
    No. 10 CR. 122 JGK, 2011 WL 1630676 (S.D.N.Y. Apr. 27, 2011) .......................... 11

*United States ex rel. Foreman v. AECOM*,
    19 F.4th 85 (2d Cir. 2021), *cert. denied*, 142 S. Ct. 2679 (2022).............................. 17, 19

/ /

/ /

**Statutes**

ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A) ................................................................. 7, 9, 11, 18

ERISA § 409(a), 29 U.S.C. § 1109(a) ........................................................................... 2, 6

ERISA § 410(a), 29 U.S.C. § 1110(a) ............................................................................. 19

**Other Authorities**

Dept. of Labor Interpretive Bulletin, 29 C.F.R. § 2509.75-8 ....................................... 13

**Rules**

Fed. R. Civ. P. 15(a)(2) ................................................................................................. 20

Fed. R. Civ. P. 12(b)(6) .............................................................................................. 6, 16

Fed. R. Civ. P. 12(d). .................................................................................................... 16

## I.    INTRODUCTION

As a third-party service provider to the Colgate-Palmolive Company Employees Savings and Investment Plan (the "Plan"), Alight Solutions LLC ("Alight") provides important services to the Plan, including operating a telephone customer service center and a website for Plan participants to manage their Plan accounts and to request the distribution of Plan benefits. In this role, Alight facilitates, directs and processes distributions from participants' accounts, including the unauthorized distribution of Plaintiff's entire retirement account, totaling over $750,000. As alleged in the Complaint, Alight's multiple failures – including inadequate security procedures and failure to heed or even notice multiple warning signs – allowed thieves to drain Plaintiff's Plan account. In contrast, the parties administering two other retirement accounts of Plaintiff's instituted more robust procedures and protections for those plans, and were successful in preventing the theft of those accounts.

Despite its multiple and egregious failures, Alight attempts to skirt any liability by saying that it was the thieves that were the "bad actors," and that Alight cannot be blamed because its involvement with the Plan was merely "ministerial," such that it is not an fiduciary of the Plan under the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001 et seq. ("ERISA"). However, all of Alight's arguments fall flat. First, Plaintiff has adequately stated a claim for ERISA breach of fiduciary duty by Alight because its role in facilitating, directing and processing distributions from participants' accounts, including by operating the Plan's customer support phone line and website, render it a functional fiduciary. Second, Alight misstates the law in suggesting that where at issue is the handling of plan assets, a plaintiff must demonstrate that

the defendant exercised *discretion* in its authority or control. Instead, "[t]he word 'discretionary' is conspicuously absent when the text refers to [plan] assets," and in fact, "[a]ny control over disposition of plan money makes the person who had the control a fiduciary." *Leventhal v. MandMarblestone Group, LLC*, No. 18-cv-2727, 2019 WL 1953247, at *5 (E.D. Pa. May 2, 2019) (quoting *Bd. of Trustees of Bricklayers & Allied Craftsmen Local 6 of New Jersey Welfare Fund v. Wettlin Assocs., Inc.*, 237 F.3d 270, 272–73 (3d Cir. 2001)). Third, Alight fails to mention multiple cases that are virtually identical to this case in terms of the Complaint's allegations regarding Alight's role in the unauthorized distribution of Plan assets, where the courts have found plaintiffs adequately alleged Alight's fiduciary status under ERISA. Alight instead focuses on inapposite and unpersuasive cases.

As the Second Circuit has recognized, ERISA's central purpose is "to protect beneficiaries of employee benefit plans," including by imposing fiduciary duties of prudence and loyalty on plan fiduciaries such as Alight. *See Slupinski v. First Unum Life Ins. Co.,* 554 F.3d 38, 47 (2d Cir. 2009). At the pleading stage, to state a claim for ERISA breach of fiduciary duty, a plan participant must plausibly allege that the defendant (1) was a fiduciary, (2) breached its fiduciary duty, and (3) thereby caused a loss to the plan at issue. *Pension Benefit Guar. Corp. ex rel. St. Vincent Catholic Med. Ctrs. Ret. Plan v. Morgan Stanley Inv. Mgmt. Inc.*, 712 F.3d 705, 730 (2d Cir. 2013) (citing ERISA § 409(a), 29 U.S.C. § 1109(a)). Importantly, Alight does not dispute that Plaintiff adequately pleads the second and third elements of the claim: that there was a breach and that it caused a loss. Because Plaintiff has adequately pled facts demonstrating that Alight acted as a functional fiduciary, Plaintiff has plausibly stated a claim for ERISA breach of fiduciary duty against Alight, and the Court should deny Alight's motion to dismiss.

Alight asks that the Court consider multiple documents that are improper for consideration on a motion to dismiss. Moreover, if the Court does consider these documents, they further support Plaintiff's claim that Alight served as a functional fiduciary of the Plan.

## II.   STATEMENT OF FACTS

Plaintiff is a participant in the Plan based on her employment with Colgate-Palmolive Company (the "Company") between 1993 and 2004. ¶¶ 3, 8.[1] During the relevant time period, Alight provided plan administration services to the Plan, including operating the Plan's Benefits Information Center and website, both of which provide Plan participants the ability to manage their Plan accounts and request distributions. ¶ 5.

Plaintiff has lived in South Africa at all times since 2008. ¶ 10. Upon moving there, she updated her contact information with the Plan. *Id.* In 2016, she again submitted to the Plan an update of her contact information, including her mailing address, email address, and cell phone number. *Id.* Her contact information has remained the same since that time. *Id.*

As of early 2020, Plaintiff was 52 years of age. *Id.* Her Plan account represented a significant portion of her retirement savings. *Id.* She periodically reviewed her Plan balance, but her intention was and always has been to leave her Plan account alone until she was ready to retire at approximately age 65. *Id.* She has never requested or received any distribution from her Plan account. *Id.*

---

[1] All references to "¶" are to the paragraphs of the Complaint, Dkt No. 1.

However, in mid-2020, when Plaintiff attempted to access her Plan account online to review her Plan balance, her attempts to access her account were blocked, and the website said she was entering an incorrect username ID and password. ¶ 12. Plaintiff then contacted the Company and the Benefits Information Center, and in September 2020, Plaintiff was informed that the entire balance of her Plan account had been distributed from the Plan in a single taxable lump sum, on a check issued by The Bank of New York Mellon Corporation ("BNY Mellon"), even though at no point had she authorized any such distribution. ¶¶ 10, 20. Plaintiff immediately contacted the Company to report the fraud, which Defendants apparently were wholly unaware of. ¶ 23. Alight placed a freeze on her account, but of course this was useless because there were no longer any funds in it. *Id.*

Since that time, Plaintiff has learned that earlier in 2020, within the span of less than two months, a person claiming to be her changed her phone number, email address, mailing address, PIN number, online user ID and password, and bank account information, and then requested an immediate cash distribution of her entire Plan account. ¶¶ 14-19, 35. These should have been red flags that triggered further action by Alight (and the other Defendants) to confirm that the requested distribution had come from the Plan participant, but none of the Defendants noticed this suspicious activity. ¶ 35. In changing her contact information, the person claiming to be Plaintiff changed her contact information such that the phone number and email address were in one country, and the mailing address was in another, which should have been another a red flag that triggered some further action to confirm the legitimacy of the request. ¶¶ 14-15, 35. Again, Alight did not notice anything suspicious (and neither did the other Defendants). ¶ 35. Furthermore, no one ever contacted Plaintiff via her previously-provided phone number or email

PLAINTIFF'S OPP. TO ALIGHT'S MOTION TO DISMISS                                    4

address to notify her of the requested change in contact information, the change of PIN number, or the requested change in online user ID or password, and no one sought to confirm that she had in fact authorized these changes. ¶¶ 14-16, 35.

In addition, the fact that a person claiming to be Plaintiff requested an immediate cash distribution instead of a tax-protected roll-over distribution; that they were doing so prior to age 59 ½, subjecting them to an additional 10% tax penalty; and that they failed to contact the International Benefits Department prior to requesting a distribution while residing in a foreign country, despite the Summary Plan Description's strong recommendation to do so, all should have been red flags that triggered further action by Alight (and/or the other Defendants) to confirm the legitimacy of the distribution request. ¶ 35. Again, however, Defendants did not heed to these warning signs. *Id.* In addition, they failed to notice that the flurry of attempts to access Plaintiff's Plan account via telephone and online within a short time span, many of which were unsuccessful. *Id.* Defendants did not have reasonable procedures in place to safeguard against cybersecurity threats and theft of Plan assets, and the procedures it did have were not in fact followed by Alight (or the other Defendants). *Id.* This includes a lack of reasonable procedures by Alight, the Employee Relations Committee of the Colgate-Palmolive Company, or BNY Mellon to safeguard against cybersecurity threats and theft of Plan assets, in terms of their own security protocols and procedures, and/or monitoring of the others' security protocols and procedures. *See* ¶¶ 35, 43. As a result, the entirety of Plaintiff's retirement account in the Plan was stolen. ¶¶ 13, 44.

/ /

/ /

## III.   ARGUMENT

### A.   Legal Standard Under Rule 12(b)(6).

Rule 12(b)(6) authorizes a motion to dismiss for failure to state a claim. In reviewing such a motion, well-pled factual allegations are accepted as true. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id*. (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* A court "may not dismiss a complaint unless it appears beyond doubt, even when the complaint is liberally construed, that the plaintiff can prove no set of facts which would entitle him to relief." *Jaghory v. N.Y. State Dep't of Educ.,* 131 F.3d 326, 329 (2d Cir. 1997) (internal quotation marks omitted); *see also Frommert v. Conkright*, 433 F.3d 254, 262 (2d Cir. 2006).

### B.   Plaintiff Has Adequately Pled Alight's Fiduciary Status To State A Claim For Breach Of Fiduciary Duty.

Plaintiff has adequately stated an ERISA breach of fiduciary duty claim against Alight. To state a claim for breach of fiduciary duty under ERISA, a plan participant must plausibly allege that the defendant (1) was a fiduciary, (2) breached its fiduciary duty, and (3) thereby caused a loss to the plan at issue. *Pension Benefit Guar. Corp*., 712 F.3d at 730 (citing ERISA § 409(a), 29 U.S.C. § 1109(a)). Here, Alight *only* challenges the first prong: whether Plaintiff adequately alleges fiduciary status with respect to Alight. Alight does not dispute that, if the Court finds Plaintiff adequately pled its fiduciary status, Plaintiff has plausibly alleged that

Alight breached its fiduciary duties and caused a loss to the Plan.

Plaintiff has adequately pled Alight's fiduciary status. Under ERISA, fiduciary status is not limited to those individuals and entities designated as fiduciaries by the plan terms. *See LoPresti v. Terwilliger*, 126 F.3d 34, 40 (2d Cir. 1997) ("Unlike the common law definition under which fiduciary status is determined by virtue of the position a person holds, ERISA's definition is functional.") (internal quotation marks omitted). Thus, ERISA defines fiduciaries "in *functional* terms of control and authority over the plan." *Mertens v. Hewitt Assocs.,* 508 U.S. 248, 262 (1993) (emphasis in original). The statute provides that any individual or entity is a fiduciary to the extent that it "exercises any authority or control respecting management or disposition of its assets," or to the extent that it "exercises any discretionary authority or discretionary control respecting management of such plan" or "has any discretionary authority or discretionary responsibility in the administration of such plan." ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A). This definition of ERISA fiduciary is "to be broadly construed." *LoPresti,* 126 F.3d at 40 (internal quotation marks omitted); *see also Allen v. Credit Suisse Sec. (USA) LLC*, 895 F.3d 214, 223 (2d Cir. 2018) ("Mindful that Congress intended that ERISA function as a comprehensive remedial statute, we construe this definition liberally.") (internal quotations omitted).

Alight first argues that Plaintiff fails state an ERISA breach of fiduciary duty claim because Alight is not a named fiduciary. Dkt No. 52, p. 6. But this argument is of no value, as it amounts to nothing more than Alight raising a claim that Plaintiff never made, and then shooting it down. Plaintiff alleges that Alight is an ERISA fiduciary because it is a *functional* fiduciary, not because it is a named fiduciary. ¶ 5.

PLAINTIFF'S OPP. TO ALIGHT'S MOTION TO DISMISS                                              7

Alight next argues that Plaintiff's claim of functional fiduciary status is a mere "formulaic recitation of the elements" of ERISA's definition of functional fiduciary, and that it "does not explain *how* Alight acted in a fiduciary capacity." Dkt No. 52, pp. 7-8. However, Plaintiff alleges that Alight operated a telephone customer service center, referred to as the "Benefits Information Center" or the "Customer Care Center," and a website at www.colgatebenefits.com, both of which provide Plan participants with the ability to manage their Plan accounts, including requesting distribution of benefits. ¶ 5. Alight exercised control over Plan assets by facilitating, directing and processing distributions from participants' accounts, including the unauthorized distributions in this case. *Id.* Alight's control over distributions is sufficient to show that Alight functioned as a fiduciary. Moreover, Alight authorized the distribution after an individual pretending to be Plaintiff contacted Alight on multiple occasions via Alight's customer service phone line and utilizing the website, to change Plaintiff's contact information, online website login and password, PIN number, and bank account information. ¶¶ 14-22. Alight permitted all of these unauthorized changes. *Id.* Collectively, these facts further demonstrate that Alight exercised control or authority respecting management or disposition of the Plan assets, and also that it had discretionary authority and responsibility in administering the Plan – either of which is sufficient to plead fiduciary status.

Next, Alight contends that the facts Plaintiff alleges in the Complaint merely show that Alight performed "ministerial tasks" of "operat[ing] a telephone customer service center…and a website," which it contends "fall outside the construction of the term 'fiduciary'." Dkt No. 52, p. 8 (citations omitted). However, this argument is equally unavailing, and conveniently skips over the details alleged in the Complaint that demonstrate that Alight's role in operating the telephone

customer service center and website included facilitating, directing and processing distributions from participants' Plan accounts. ¶¶ 5, 14-21, 43. These acts fit squarely within the functional fiduciary's role of "exercis[ing] any authority or control respecting management or disposition of its assets." *See* ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A).

In *Bartnett v. Abbott Laboratories*, 492 F. Supp. 3d 787 (N.D. Ill. 2020), the court found allegations that Alight performed virtually identical functions as are at issue in this case were sufficient to plead Alight's fiduciary status as a functional fiduciary. *Id.* at 798-99. In *Bartnett*, as in this case, Alight was hired to perform services for a pension plan, including operating the customer service call center and website for the plan, both of which allowed plan participants to manage their accounts and request distributions of plan assets. *Id.* at 798. Also as in this case, the assets allocated to the *Bartnett* participant's account were stolen, and the plaintiff similarly alleged that Alight breached its ERISA fiduciary duties by failing to heed suspicious warning signs of the fraud and by causing an unauthorized distribution of the participant's retirement funds. *Id.* at 792-93, 795-99. In *Bartnett*, on a motion to dismiss, Alight similarly argued that the complaint set forth mere legal conclusions of functional fiduciary status, and that Alight performed merely ministerial functions on behalf of the plan, which it contended are not fiduciary in nature. *Id.* at 798. The court rejected both arguments, finding that "[t]he complaint alleges far more than legal conclusions concerning Alight," such as Alight taking "repeated actions" related to the plan and its assets, including causing the plan to disburse plan assets. *Id.* The court concluded that these were "sufficient allegations on the face of the complaint to infer that Alight acted as a fiduciary by exercising discretionary control or authority over the plan's

assets." *Id.* at 798-99.[2] The court further noted that even though Alight argued its actions were purely ministerial, the complaint challenged that assertion, and "[s]ince competing factual allegations and any reasonable inferences drawn from them must be resolved in favor of the nonmoving party at the pleading stage, Alight's factual assertions do not provide a proper basis to dismiss" the claim. *Id.* at 799 (internal quotation marks omitted). Here, just as in *Bartnett*, Plaintiff adequately alleges that Alight acted as a functional fiduciary, as demonstrated by the repeated actions it took related to the Plan and its assets, such as facilitating, directing and processing distribution requests, including the unauthorized distribution of Plaintiff's account. *See* ¶¶ 5, 14-22.

Likewise, *Leventhal* also involved the theft of pension plan assets and ERISA breach of fiduciary duty claims, including against a third-party service provider, Nationwide. 2019 WL 1953247, at *1. Just as Alight argued in *Bartnett* and is again arguing in this case, in *Leventhal*, Nationwide argued the plaintiffs failed to allege facts demonstrating it was a functional fiduciary under ERISA because it was a mere "custodian." *Id.* at *3. The *Leventhal* court also rejected this argument, concluding the plaintiffs had sufficiently alleged that Nationwide was a functional fiduciary because it had "actual control of the [p]lan assets . . . so as to distribute and dispose of the [p]lan funds," in addition to having the ability to take "other acts necessary for the proper administration" of the plan. *Id.* at *5. The exact same analysis and conclusion applies to Alight's arguments in the present case: as in *Leventhal*, Plaintiff has adequately alleged that Alight is a

---

[2] Although the *Bartnett* court slightly misstated the standard in including the word "discretionary" – an individual or entity that controls plan assets is a fiduciary regardless of whether its control is discretionary – the point is clear: the functions that Alight was alleged to have performed in *Bartnett* were sufficient to make it a fiduciary.

functional fiduciary because it controlled the disposition of Plan assets, including its role in facilitating, directing and processing the distribution of assets allocated to Plan accounts. ¶¶ 5, 14-22. In addition, Plaintiff has alleged that Alight had discretionary authority to take, and did take, a variety of acts necessary to administer the Plan. *Id.*

Alight's suggestion that Plaintiff must plead that Alight had and/or exercised discretion is false. In fact, the court in *Leventhal* squarely addressed, and rejected, this argument, explaining that this "conflates the statutory requirement." 2019 WL 1953247, at * 5. ERISA's functional fiduciary definition "'differentiates between those who manage the plan in general, and those who manage the plan assets.'" *Id.* (quoting *Bd. of Trustees of Bricklayers & Allied Craftsmen*, 237 F.3d at 272-73). "While a person can be a fiduciary for exercising discretionary authority or control by managing the plan, a person can also be a fiduciary for exercising 'any authority or control respecting management or disposition of [the plan's] assets.'" *Id.* (quoting 29 U.S.C. § 1002(21)(A)). The *Leventhal* court noted that "[t]he word 'discretionary' is conspicuously absent when the text refers to assets," and in fact, "'[a]ny control over disposition of plan money makes the person who had the control a fiduciary.'" *Id.* (quoting *Bd. of Trustees of Bricklayers & Allied Craftsmen*, 237 F.3d at 274 (quoting *IT Corp. v. Gen. Am. Life Ins. Co.*, 107 F.3d 1415, 1421 (9th Cir. 1997))). "The words of the ERISA statute, and its purpose of assuring that people who have practical control over an ERISA plan's money have fiduciary responsibility to the plan's beneficiaries, require that a person with authority to direct payment of a plan's money be deemed a fiduciary." *IT Corp.*, 107 F.3d at 1422; *accord, U.S. v. King*, No. 10 CR. 122 JGK, 2011 WL 1630676, at *2 (S.D.N.Y. Apr. 27, 2011).

Thus, just as in *Leventhal*, in the case at hand Plaintiff has adequately alleged an ERISA breach of fiduciary claim against Alight by pleading that Alight controlled the disposition of Plan assets. These allegations are sufficient without pleading any claims regarding discretion. But in any event, Plaintiff also has pled facts demonstrating that Alight had discretionary authority or control in managing the Plan. *See, e.g.*, ¶¶ 5, 14-19 (discussing Alight's operation of the telephone customer service center and website, and the extensive interactions included therein relevant to the ultimate unauthorized disposition of Plaintiff's Plan account).

Alight focuses on cases that do not involve the disposition of plan assets, and that only addressed the discretionary part of ERISA's functional fiduciary definition. Furthermore, the cases that Alight relies on are readily distinguishable on the facts. For example, *Easter v. Cayuga Med. Ctr. at Ithaca Prepaid Health Plan*, 217 F. Supp. 3d 608 (N.D.N.Y. 2016), "involved no disposition of the Plan's assets." *Id.* at 638. Rather, the *Easter* plaintiffs alleged, in relevant part, that a plan's third-party administrator breached fiduciary duties by "misinforming Plaintiffs about how to file claims" for medical benefits and "failing to maintain a reasonable claims procedure." *Id.* at 616, 635. The court granted summary judgment for the defendant, holding that the third-party administrator's actions in requesting additional information about the plaintiffs' claims, as it was required to do by the plan terms, and in not notifying the plaintiffs of the availability of an administrative appeal were not discretionary in nature, and therefore were not fiduciary functions. *Id.* at 638-39. Here, because Alight controlled the disposition of Plan assets, it does not matter whether it also exercised discretion. In any event, as discussed above, Alight did have discretionary authority to take a variety of acts necessary to administer the Plan, including but not limited to operating the Plan's customer service phone line and website, communicating with Plan participants about

their accounts, facilitating changes to participants' Plan-related information, and facilitating and processing Plan distributions. ¶¶ 5, 14-22. Additionally, the *Easter* court ruled on fiduciary status on a motion for summary judgment, only after a factual record was developed, further rendering the decision inapposite. 217 F. Supp. 3d at 638-39.

Likewise, in *Haley v. Teachers Insurance and Annuity Association of America*, No. 17-CV-855 (JPO), 2018 WL 1585673 (S.D.N.Y. Mar. 28, 2018), the plaintiff challenged the plan's participant loan process, which allegedly allowed its outside service provider to set its own compensation for administering loans. *Id.* at *1, *8. The court dismissed the plaintiff's claim for breach of fiduciary duty on the basis that the plaintiff had not alleged any connection between the alleged breach and the alleged control of plan assets. *Id.* at *8. Here, in contrast, Plaintiff has alleged that Alight breached its fiduciary duty by causing the Plan assets allocated to her account to be distributed to fraudsters.

Alight's reliance on an Interpretive Bulletin issued by the Department of Labor in 1975 is also unpersuasive.[3] In its Interpretive Bulletin, the Department of Labor opines that an individual who performs *only* "ministerial functions" such as the types described therein is not a functional fiduciary *if* the person does not exercise any discretionary authority or discretionary control in doing so *and* "does not exercise any authority or control respecting management or disposition of the assets of the plan." 29 C.F.R. § 2509.75-8. Thus, the Interpretive Bulletin squares with the findings in the *Bartnett* and *Leventhal* cases, including that a plaintiff can plead an ERISA

---

[3] Alight mistakenly calls the Interpretive Bulletin "Department of Labor regulations." Dkt No. 52, p. 8. An Interpretive Bulletin is not a regulation. **Error! Main Document Only.***Rodriguez v. Farm Stores Grocery, Inc.*, 518 F.3d 1259, 1268 n.5 (11th Cir. 2008) (explaining that a DOL Interpretive Bulletin is not a regulation and is not entitled to *Chevron* deference).

breach of fiduciary duty claim against a third-party service provider if the facts in the complaint allege that the service provider either had authority or control regarding the management or disposition of plan assets, or if the facts allege that its administration of the plan involved discretionary authority or discretionary control. As discussed above, although either would be sufficient at the pleading stage, Plaintiff has pled both.

Likewise, Alight's citations to one of the district court decisions preceding the Second Circuit's decision of *In re DeRogatis*, 904 F.3d 174 (2d Cir. 2018) ("*DeRogatis II*"), and to *Levi v. McGladrey*, are also unpersuasive. *See* Dkt No. 52, p. 8 (citing *DeRogatis v. Bd. of Trs. of the Cent. Pension Fund of the Int'l Union of Operating Eng'rs & Participating Emp'rs*, No. 13 Civ. 8788 (CM), 2016 WL 5805283 (S.D.N.Y. Sept. 19, 2016) ("*DeRogatis I*"), and *Levi v. McGladry LLP*, No. 12-cv-8787 (ER), 2016 WL 1322442 (S.D.N.Y. Mar. 31, 2016)). Neither *DeRogatis I* nor *Levi* addresses fiduciary status by reason of authority or control respecting the disposition of plan assets. Rather, in *Levi*, the district court simply held that "garden variety employment actions taken by an employer" do not implicate fiduciary responsibilities under ERISA. *Levi*, 2016 WL 1322442, at \*5. That holding has nothing to do with this case. *DeRogatis I* held that "misrepresentations made to plan participants by non-fiduciary, 'ministerial' employees" could not result in liability of a plan's trustees, but the Second Circuit disagreed on this point. *DeRogatis II*, 904 F.3d at 179. Accordingly, *DeRogatis I* is not good law for the point on which Alight cites it.[4]

---

[4] Not only does Alight fail to acknowledge the subsequent history of *DeRogatis I*, it also selectively quotes from the decision in a misleading manner. Alight claims that *DeRogatis I* stands for the proposition that certain "ministerial tasks" "fall outside the construction of the

Likewise, Alight's reliance on the district court decision preceding *Allen v. Credit Suisse Securities (USA) LLC*, 895 F.3d 214 (2d Cir. 2018) is also misplaced. *See* Dkt No. 52, p. 10 (citing *Allen v. Bank of America Corporation*, No. 15 Civ. 4285 (LGS), 2016 WL 4446373 (S.D.N.Y. Aug. 23, 2016)). In *Allen*, the Second Circuit held that the plaintiffs had not plausibly alleged that certain banks that conducted foreign currency exchange transactions for the plaintiffs' ERISA plans thereby controlled plan assets so as to attain fiduciary status. *Allen*, 895 F.3d at 217-18. Specifically, the plaintiffs argued that the banks manipulated benchmark rates to maximize the banks' profits from each transaction, thereby exercising control over the assets of the plans involved in the transactions. *Id.* at 224. The Second Circuit rejected this argument on the basis that the plans' investment managers, not the banks, initiated the transactions: "the relationship here was 'salesmanship,' with defendants 'matching the customer's desires' – as conveyed by their investment managers – 'with available inventory,' but lacking 'authority to exercise control unilaterally over a portion of a plan's assets.'" *Id.* (quoting *Farm King Supply, Inc. Integrated Profit Sharing Plan & Tr. V. Edward D. Jones & Co.*, 884 F.2d 288, 292 (7th Cir. 1989)). The court also noted that it was the plans' trustees and/or investment managers that decided to enter into the transactions with the banks; the plaintiffs did not allege that the banks controlled the trustees' or investment advisors' decisions to enter into the transactions. *Id.* at 225. Here, in contrast, Plaintiff alleges that Alight had the power to process distribution requests – both fraudulent, as in this case, and legitimate. ¶¶ 5, 35, 43.

---

term 'fiduciary' as limited by Congress." Dkt No. 52, p. 8. In fact, *DeRogatis I* says that "plan employees" who perform those ministerial tasks "fall outside" the definition of fiduciary. 2016 WL 5805283, at *5. Alight cannot claim to be a "plan employee," as in *DeRogatis*, or an employer performing "garden variety" employment actions, as in *Levi*.

Finally, Alight makes the absurd argument that it cannot be a Plan fiduciary because it was the Plan participants – and not Alight – that directed and controlled the distributions from their Plan accounts. Dkt No. 52, p. 10. Not so. The Complaint does not allege that Plan participants had the ability to directly cause the Plan to distribute benefits. Instead, the Complaint alleges that participants must request distributions from Alight. ¶ 5. Alight then processes the requests – but a participant's request would not be, or at least should be, effective under certain circumstances, such as if the participant has made a change to her address or financial institution within the preceding 14 days. ¶¶ 5, 30, 31. Ultimately it is Alight, and not participants, that has the power to cause the Plan to distribute assets.

### C.   Alight Cites Multiple Documents That Are Improper For Consideration On A Motion To Dismiss.

Alight cites to multiple documents that are improper for consideration on a motion to dismiss, including the service agreement between Alight and the Company for Alight to provide services to the Plan (Dkt Nos. 54-1, 54-2) ("Service Agreement"), and Alight's Report of Investigation (Dkt No. 54-3). On a Rule 12(b)(6) motion, a court cannot consider matters outside the pleadings without converting the motion to one for summary judgment. Fed. R. Civ. P. 12(d). For this purpose, a complaint is "deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference." *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002). And "[e]ven where a document is not incorporated by reference, the court may nevertheless consider it where the complaint 'relies heavily upon its terms and effect,' which renders the document 'integral' to the complaint." *Id.* at 153 (quoting *Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.*, 62 F.3d 69, 72 (2d Cir. 1995)).

"[A] plaintiff's *reliance* on the terms and effect of a document in drafting the complaint is a necessary prerequisite to the court's consideration of the document on a dismissal motion; mere notice or possession is not enough." *Chambers*, 282 F.3d at 153 (emphasis in original); *see United States ex rel. Foreman v. AECOM*, 19 F.4th 85, 107 (2d Cir. 2021), *cert. denied*, 142 S. Ct. 2679 (2022) ("[A] document may be considered 'integral' to the complaint in a narrow set of circumstances, where the plaintiff relies heavily on the document's terms and effect in pleading his claims."); *Durnack v. Ret. Plan Comm. of Talen Energy Corp.*, No. CV 20-5975, 2021 WL 4149145, at *2 (E.D. Pa. Sept. 13, 2021) (in ERISA breach of fiduciary duty case, court refused to consider documents on motion to dismiss because complaint made only "fleeting, minor" references to them and plaintiffs did not rely on or attach the documents to the complaint).

      1.    <u>The Court Should Not Consider The Service Agreement In Ruling On The Motion To Dismiss.</u>

Plaintiff's Complaint does not refer to, attach, or rely on the Service Agreement sufficient to render it appropriate to consider on a motion to dismiss. In support of its assertion that the Court should consider the Service Agreement, Alight says only that the agreement "is central to Plaintiff's claims," and points to paragraph five of the Complaint. Dkt No. 52, p. 2, n.2. However, the only relevant statement in paragraph five of the Complaint is that "Alight provided contract administration, record-keeping, and information management services to the Plan." ¶ 5. But there is no reference to the actual Service Agreement, and Plaintiff does not rely on this agreement at all in the allegations in her Complaint. If anything, this case is akin to *Durnack*, and is only a "fleeting, minor" reference to the contract that is not sufficient to support considering the contract on Alight's motion. *See* 2021 WL 4149145, at *2. Thus, the Court should not

consider the Service Agreement in deciding Alight's motion to dismiss.

But if the Court disagrees and considers the Service Agreement for purposes of this motion, the contract language that Alight cites (Dkt No. 52, p. 2) bolsters Plaintiff's argument. Alight points to a provision in the contract that states that "[A]light does not have any *discretionary control* respecting management of any Colgate Plan or management or management or disposition of any Colgate Plan assets. [Alight] does not have any *discretionary authority or discretionary responsibility* in the administration of the Colgate Plans and [Alight] should act at all times as a ministerial administrative service provider." Dkt No. 52, p. 2 (citing Service Agreement, at Dkt Nos. 54-1 and 54-2, § 16(D)). Alight contends that these "limits placed on Alight's actions" render Plaintiff's allegations of Alight's fiduciary status particularly implausible. Dkt No. 52, p. 10. However, as discussed above, this wholly ignores the portion of ERISA's functional fiduciary definition applicable when plan assets are at issue. As the court in *Leventhal* explained, "[t]he word 'discretionary' is conspicuously absent when the text refers to assets," and in fact, "any control over disposition of plan money makes the person who had the control a fiduciary." 2019 WL 1953247 at * 5 (internal quotations omitted). Instead, the Services Agreement confirms that Alight did in fact have authority or control respecting management or disposition of Plan assets. *See* ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A). The Service Agreement specifically states that the service provider will "Instruct disbursement agent daily for loans, withdrawals, dividend payouts, installments and final distribution payments." Dkt No. 54-2, p. ALIGHT 91. This provision shows that Alight, not participants, had the power to cause the Plan to distribute assets. Furthermore, in the section of the agreement devoted to "Distributions," it specifies that Alight will "[p]rocess all distributions in accordance with plan rules," "[p]rocess

paperless distributions," "[p]rocess lump sum distributions," and so forth. *Id*. at ALIGHT 107.

In addition, "[t]he issue is not just how the duties are characterized, but what they are." *IT Corp*., 107 F.3d at 1419. Putting magic words into a contract does not and cannot avoid fiduciary responsibility, if the characterization is not correct. *Id.* "[A]ny provision in an agreement or instrument which purports to relieve a fiduciary from responsibility or liability for any responsibility, obligation, or duty under [the section governing ERISA fiduciaries] shall be void as against public policy." ERISA § 410(a), 29 U.S.C. § 1110(a). Thus, the terms of the Service Agreement are not what govern the inquiry regarding its fiduciary status – instead, Alight's conduct is – and Alight's attempt to rely on the contract terms to evade fiduciary liability is unsupported by the law.

> 2.     The Court Also Should Not Consider Alight's Report Of Investigation In Deciding The Motion To Dismiss.

Likewise, as with the Service Agreement, Plaintiff's Complaint does not sufficiently refer to, attach, or rely on Alight's Report of Investigation to render it proper for consideration on a motion to dismiss. Alight points to one sentence in the Complaint that references this document. *See* Dkt No. 52, p. 2, n.3 (citing ¶ 22). But again, one reference is insufficient to render it appropriate for consideration in a motion to dismiss, because the document is not "integral" to the Complaint, and Plaintiff does not "rel[y] heavily on the document's terms and effect" in pleading her claim. *See Foreman*, 19 F.4th at 107.

Nevertheless, if the Court disagrees and does consider Alight's Report of Investigation, it also confirms Alight's extensive role in administration of the Plan and the control over disposition of Plan assets, including the unauthorized distribution of Plaintiff's account under the

Plan.

In addition, Alight contends that according to the Alight Report of Investigation, there was no personal email address for Plaintiff on file with Alight. Dkt No. 52, p. 3, n.4. However, the fact that, as alleged, Plaintiff submitted her personal email address, and yet Alight purports to not have it, further suggests that Alight improperly performed its duties to the Plan.

## IV.    CONCLUSION

For the foregoing reasons, Alight's motion to dismiss should be denied. However, if the Court is inclined to grant Alight's motion, Plaintiff respectfully requests leave to amend. Fed. R. Civ. P. 15(a)(2) ("The court should freely give leave [to amend] when justice so requires."); *Bartnett*, 492 F. Supp. at 802 (providing leave for plaintiff to file an amended complaint if she believes she can cure the deficiencies in the complaint as discussed in the court's order).

Respectfully submitted,

RENAKER SCOTT LLP

Dated: New York, New York
      September 29, 2022             _____*/s/ Kirsten G. Scott*_____

Kirsten G. Scott, *admitted pro hac vice*
Teresa S. Renaker, *pro hac vice applic. pending*
RENAKER SCOTT LLP
505 Montgomery Street, Suite 1125
San Francisco, CA 94111
Tel.: (415) 653-1733
Fax: (415) 752-5079
kirsten@renakerscott.com
teresa@renakerscott.com

Evan Brustein, Esq.
Brustein Law PLLC

PLAINTIFF'S OPP. TO ALIGHT'S MOTION TO DISMISS            20

299 Broadway, 17th Floor
New York, New York 10007
(212) 233-3900
evan@brusteinlaw.com


*Attorneys for Plaintiff*