**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| PAULA DISBERRY, | |
|                    Plaintiff, | |
|        v. | Case No. 22-CV-5778-CM-OTW |
| EMPLOYEE RELATIONS COMMITTEE OF THE COLGATE-PALMOLIVE COMPANY, ALIGHT SOLUTIONS LLC, AND BANK OF NEW YORK MELLON CORPORATION, | **PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT EMPLOYEE RELATIONS COMMITTEE OF THE COLGATE-PALMOLIVE COMPANY'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT** |
|              Defendants. | |

## **TABLE OF CONTENTS**

I.      INTRODUCTION ............................................................................................. 1

II.     STATEMENT OF FACTS ................................................................................ 2

III.    ARGUMENT .................................................................................................... 3

      A.      Legal Standard Under Rule 12(b)(6). .................................................. 3

      B.      Plaintiff Is Not Required To Exhaust Administrative Remedies To Pursue In Court Her ERISA Breach Of Fiduciary Duty Claim. ............................................. 3

      C.      Plaintiff States A Claim For Relief For Breach Of Fiduciary Duty. ..................... 8

      D.      Plaintiff Has Adequately Pled Causation Of Loss As Against The Committee... 16

IV.     CONCLUSION.................................................................................................. 17

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)..................................................................................................... 3

*Bartnett v. Abbott Lab'ys*,
  492 F. Supp. 3d 787 (N.D. Ill. 2020) ........................................................ 13, 15, 17

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007)..................................................................................................... 3

*Berman v. Estee Lauder Inc.*,
  No. 4:19-cv-06489 (N.D. Cal., filed Nov. 9, 2019) .................................................. 13

*Braden v. Wal–Mart Stores, Inc.*,
  588 F.3d 585 (8th Cir.2009) ...................................................................................... 12

*Diamond v. Local 807 Labor Management Pension Fund*,
  595 Fed. App'x 22 (2d Cir. 2014)........................................................................... 5, 7

*Foster v. PPG Industries, Inc.*,
  693 F.3d 1226 (10th Cir. 2012) ................................................................................ 14

*Frommert v. Conkright*,
  433 F.3d 254 (2d Cir. 2006)........................................................................................ 3

*Henry v. Champlain Enters., Inc.*,
  288 F. Supp. 2d 202 (N.D.N.Y. 2003) ...................................................................... 16

*Hitchcock v. Cumberland Univ. 403(b) DC Plan*,
  851 F.3d 552 (6th Cir. 2017) ...................................................................................... 4

*In re Coca–Cola Ents. Inc., ERISA Litig.*,
  No. 06–CV–953, 2007 WL 1810211 (N.D. Ga. June 20, 2007) ................................ 16

*In re Lehman Bros. Sec. & ERISA Litig.*,
  113 F. Supp. 3d 745 (S.D.N.Y. 2015)......................................................................... 9

*In re Morgan Stanley ERISA Litig.*,
  696 F. Supp. 2d 345 (S.D.N.Y. 2009)........................................................................ 16

*Jacobs v. Verizon Commc'ns, Inc.*,
    No. 16 CIV. 1082 (PGG), 2017 WL 8809714 (S.D.N.Y. Sept. 28, 2017) ........................ 9

*Jaghory v. N.Y. State Dep't of Educ.*,
    131 F.3d 326 (2d Cir.1997)................................................................................................. 3

*Kuper v. Iovenko*,
    66 F.3d 1447 (6th Cir.1995) ............................................................................................. 16

*LaRue v. DeWolff, Boberg & Assocs., Inc.*,
    552 U.S. 248 (2008).................................................................................................... 3, 5, 6

*Leventhal v. MandMarblestone Group LLC*,
    No. 18-cv-2727, 2019 WL 1953247 (E.D. Pa. May 2, 2019)........................................... 15

*McCulloch v. Bd. of Trustees of SEIU Affiliates Officers & Emps. Pension Plan*,
    No. 14 Civ. 9348 (PGG), 2016 WL 9022578 (S.D.N.Y. Mar. 31, 2016), *aff'd*,
    686 F. App'x 68 (2d Cir. 2017). ....................................................................................... 4

*Nechis v. Oxford Health Plans, Inc.*,
    421 F.3d 96 (2d Cir. 2005).............................................................................................. 4, 5

*Pension Benefit Guar. Corp. ex rel. St. Vincent Catholic Med. Ctrs. Ret. Plan v.*
    *Morgan Stanley Inv. Mgmt. Inc.*, 712 F.3d 705 (2d Cir. 2013) ............................... 8, 9, 12

*Range v. 480-486 Broadway, LLC*,
    810 F.3d 108 (2d Cir. 2015)............................................................................................. 7

*Sacerdote v. New York University*,
    9 F.4th 95 (2d Cir. 2021) ................................................................................................. 9

*Savage v. Sutherland Glob. Servs., Inc.*,
    521 F. Supp. 3d 308 (W.D.N.Y. 2021) ............................................................................. 5

*Silverman v. Mut. Benefit Life Ins.*,
    138 F.3d 98 (2d Cir. 1998).............................................................................................. 16

*Slupinski v. First Unum Life Ins. Co.*,
    554 F.3d 38 (2d Cir. 2009)............................................................................................ 1, 8

*Sullivan-Mestecky v. Verizon Comm'ns Inc.*,
    961 F.3d 91 (2d Cir. 2020)........................................................................................ 11, 12

*Walsh v. Alight Sols. LLC*,
  44 F.4th 716 (7th Cir. 2022) ............................................................................ 13

*Zeuner v. Suntrust Bank Inc.*,
  181 F. Supp. 3d 214 (S.D.N.Y. 2016)................................................................ 11

**Statutes**

ERISA § 3(16)(a)(i), 29 U.S.C. § 1002(16)(a)(i). ..................................................... 2

ERISA § 402(a)(1), 29 U.S.C. § 1102(a)(1)........................................................ 2, 11

ERISA § 404(a)(1)(B), U.S.C. § 1104(a)(1)(B) ...................................................... 1, 8

ERISA § 409, 29 U.S.C. § 1109 ........................................................................ 3, 6, 8

ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B) .......................................... 4, 6, 7, 14

ERISA § 502(a)(2), 29 U.S.C. § 1132(a)(2) ...................................................... 3, 4, 6

ERISA § 503, 29 U.S.C. § 1133 ............................................................................ 5

**Other Authorities**

Alex Smith, "Hole in the Bottle…Protecting Against 401(k) Cybersecurity Leakage,"
  Holland & Hart Sept. 21, 2022, available at
  https://www.employeebenefitslawblog.com/hole-in-the-bottle-protecting-against-
  401k-cybersecurity-leakage/ ............................................................................ 13

Dept. of Labor Cybersecurity Guidance, "Tips for Hiring a Service Provider," *available at*
  https://www.dol.gov/agencies/ebsa/key-topics/retirement-benefits/cybersecurity........... 13

**Rules**

Fed. R. Civ. P. 12(b)(6)..................................................................................... 3

Fed. R. Civ. P. 15(a)(2)..................................................................................... 17

I.    **INTRODUCTION**

Based on years of working for her former employer, the Colgate-Palmolive Company, Plaintiff Paula Disberry was able to save approximately $750,000 in retirement funds in her participant account in the Colgate-Palmolive Company Employees Savings and Investment Plan (the "Plan"). Her intention has always been to leave the account alone until she reaches age 65. However, due to the vast failings of the Employee Relations Committee of the Colgate-Palmolive Company (the "Committee") and the other Defendants in safeguarding the Plan and participant accounts, a person pretending to be Plaintiff was able to access and drain the entirety of her account.

As the Second Circuit has recognized, ERISA's central purpose is "to protect beneficiaries of employee benefit plans." *Slupinski v. First Unum Life Ins. Co.,* 554 F.3d 38, 47 (2d Cir. 2009). The statute does so by imposing fiduciary duties of prudence and loyalty on plan fiduciaries. ERISA's duty of prudence requires that plan fiduciaries act "with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims." ERISA § 404(a)(1)(B), 29 U.S.C. § 1104(a)(1)(B). Likewise, the duty of loyalty under ERISA requires fiduciaries to act "solely in the interest" of plan participants and beneficiaries. ERISA § 404(a)(1), 29 U.S.C. § 1104(a)(1). These duties of prudence and loyalty require plan fiduciaries to safeguard plan assets against cybersecurity threats and unauthorized withdrawals, and to monitor other fiduciaries' distribution processes, protocols, and activities.

Although the Committee is the named plan administrator and therefore the named ERISA fiduciary of the Plan, in its motion to dismiss it attempts to place the blame for the Plan's loss of Plaintiff's account on everyone else, and escape any liability itself. However, Plaintiff has adequately pled a claim for breach of fiduciary duty as against the Committee. In addition, there is no legal support for the Committee's contention that Plaintiff should be required to exhaust the Plan's administrative remedies to pursue an ERISA breach of fiduciary duty claim on behalf of the Plan. For all of these reasons, the Court should deny the Committee's motion to dismiss.

## II.     STATEMENT OF FACTS

To avoid repetition, Plaintiff respectfully refers the Court to the Statement of Facts set forth in her opposition to the motion to dismiss by the Defendant Alight Solutions LLC, Dkt No. 61. Additional facts responding to the Committee's memorandum are set forth here.

Defendant Committee is designated as the Plan Administrator in the Plan document, and therefore is the Plan Administrator within the meaning of ERISA § 3(16)(a)(i), 29 U.S.C. § 1002(16)(a)(i). ¶ 4.[1] The Committee is the named fiduciary of the Plan by reason of being the Plan Administrator (*id.*), and thereby possesses the "authority to control and manage the operation and administration of the Plan." ERISA § 402(a)(1), 29 U.S.C. § 1102(a)(1).

/ /

/ /

/ /

---

[1] All references to "¶" are to the paragraphs of the Complaint, Dkt No. 1.

## III.    ARGUMENT

### A.    Legal Standard Under Rule 12(b)(6).

Rule 12(b)(6) authorizes a motion to dismiss for failure to state a claim. In reviewing

such a motion, well-pled factual allegations are accepted as true. *Ashcroft v. Iqbal*, 556 U.S. 662,

678 (2009). A complaint "must contain sufficient factual matter, accepted as true, to 'state a

claim to relief that is plausible on its face.'" *Id*. (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S.

544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that

allows the court to draw the reasonable inference that the defendant is liable for the misconduct

alleged." *Id.* A court "may not dismiss a complaint unless it appears beyond doubt, even when

the complaint is liberally construed, that the plaintiff can prove no set of facts which would

entitle him to relief." *Jaghory v. N.Y. State Dep't of Educ.,* 131 F.3d 326, 329 (2d Cir. 1997)

(internal quotation marks omitted); *see also Frommert v. Conkright*, 433 F.3d 254, 262 (2d Cir.

2006).

### B.    Plaintiff Is Not Required To Exhaust Administrative Remedies To Pursue In Court Her ERISA Breach Of Fiduciary Duty Claim.

In this case, Plaintiff asserts a single cause of action, under ERISA § 502(a)(2), to remedy

Defendants' breaches of fiduciary duties of loyalty and prudence. 29 U.S.C. § 1132(a)(2).[2] In its

Motion to Dismiss, the Committee contends that Plaintiff must exhaust an administrative appeal

---

[2] ERISA § 502(a)(2) permits a plan participant, among others, to pursue a claim for the relief authorized by ERISA § 409, 29 U.S.C. § 1109. Section 409(a), in turn, provides that a fiduciary who breaches any of the fiduciary responsibilities, obligations, or duties imposed by ERISA shall be personally liable to make good to the plan any losses to the plan that result from the breach. 29 U.S.C. § 1109(a). A reduction in the value of a single participant's account is a loss to the plan remediable under Section 502(a)(2). *LaRue v. DeWolff, Boberg & Assocs., Inc.*, 552 U.S. 248, 256 (2008).

process in order to pursue her Section 502(a)(2) claim on behalf of the Plan. This argument is without merit.

In deciding whether a plan participant should be required to exhaust administrative remedies before filing suit, most courts have distinguished between claims for benefits under the terms of the plan, *see* ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B), and claims for violations of the statute itself, such as claims under ERISA § 502(a)(2), 29 U.S.C. § 1132(a)(2), and have held that only the former require exhaustion. *See, e.g., Hitchcock v. Cumberland Univ. 403(b) DC Plan*, 851 F.3d 552, 564 (6th Cir. 2017) (collecting cases and holding that "there is no exhaustion requirement for ERISA claims alleging statutory, rather than plan-based, violations"). The Second Circuit has not decided this question, but has stated that it was "dubious" that a breach of fiduciary duty claim could be dismissed for failure to exhaust, because such claims "are equitable in nature and do not involve interpretation of the terms of [the] plan." *Nechis v. Oxford Health Plans, Inc.*, 421 F.3d 96, 100, 102 (2d Cir. 2005); *see also McCulloch v. Bd. of Trustees of SEIU Affiliates Officers & Emps. Pension Plan*, No. 14 Civ. 9348 (PGG), 2016 WL 9022578, at *6 (S.D.N.Y. Mar. 31, 2016) ("This Court agrees that exempting statutory claims from the exhaustion requirement best serves ERISA's purposes."), *aff'd*, 686 F. App'x 68 (2d Cir. 2017). As such, "[d]istrict courts in the Second Circuit have routinely dispensed with the exhaustion prerequisite where plaintiffs allege a statutory ERISA violation," such as an ERISA breach of fiduciary duty claim. *Nechis*, 421 F.3d at 102 (internal citation omitted). While a plan administrator may have particular familiarity with interpreting the terms of its own plan, rendering an administrative claims process appropriate for Section 502(a)(1)(B) claims, ERISA "statutory interpretation is the province of the judiciary," and thus administrative exhaustion is

not warranted. *Savage v. Sutherland Glob. Servs., Inc.*, 521 F. Supp. 3d 308, 314 (W.D.N.Y. 2021). Moreover, ERISA § 503, which establishes the requirement for a pre-litigation claim process, only refers to claims for benefits. *Nechis*, 421 F.3d at 101 n.2.

Here, Plaintiff's claim does not challenge any Plan interpretation, but rather challenges Defendants' failure to fulfill their statutory duties of loyalty and prudence, which resulted in losses to the Plan. Accordingly, exhaustion is not required. The Committee relies on *Diamond v. Local 807 Labor Management Pension Fund*, 595 Fed. App'x 22 (2d Cir. 2014) (summary order), but *Diamond* underscores the distinction between a claim seeking payment of a benefit and a claim seeking restoration of Plan losses. In *Diamond*, the plaintiff alleged that the defendants had "violated the express terms and conditions of" the plan in suspending his pension benefit. *Id.* at 25. Though he also alleged that the defendants' "misreading of the Pension Plan Rules was so improper" that it rose to the level of a breach of fiduciary duty, the Second Circuit determined that the essence of his claim was that he was entitled to a benefit under the plan terms, not that defendants had violated the statute, and therefore the plaintiff should be required to exhaust administrative remedies. *Id.* Here, in contrast, Plaintiff seeks to remedy a loss that the Plan suffered due to Defendants' failure to loyally and prudently safeguard the Plan's assets against unauthorized withdrawals. ¶¶ 40-44. Plaintiff is seeking restoration of losses to the Plan, not payment of a benefit to her. *See LaRue*, 552 U.S. at 251, 256 (holding that plaintiff who alleged that fiduciary breached its duties by failing to act on investment instructions that he gave, causing his account to lose value, properly sought relief flowing to the plan). In *LaRue*, the plan participant stated that he "'d[id] not wish for the court to award him any money, but . . . simply want[ed] the plan to properly reflect that which would be his interest in the plan, but for the

breach of fiduciary duty.'" *Id.* at 251 (alterations by court). Exactly the same is true here. The Complaint makes absolutely clear that Plaintiff does *not* seek a distribution of benefits from the Plan through this lawsuit – she wants the Plan's loss restored. ¶¶ 11, 44, 45.

That Plaintiff, before filing her suit, gave the Committee an opportunity to make her account whole without litigation is not a basis to require her to exhaust administrative remedies on a claim that is not one for benefits under the Plan. Indeed, to hold that a plaintiff who communicates about her breach of fiduciary duty claim before litigation is thereby bound to complete the plan's claim process would only discourage efforts to resolve claims without litigation. Furthermore, although the Committee makes vague references to "plan interpretations," there is no Plan interpretation at stake here. Only the Defendants' conduct in failing to safeguard the Plan assets entrusted to them, and in making an unauthorized distribution from the Plan, is at issue. The Committee misunderstands Sections 409 and 502(a)(2) when it speculates that if Plaintiff submitted an appeal and received another self-serving decision attempting to justify the Committee's breaches, she would then "likely seek to amend her complaint to add a claim for benefits under the terms of the Plan." Dkt No. 39, p. 4. The relief to the Plan afforded by Sections 409 and 502(a)(2) is not available via a Section 502(a)(1)(B) claim for benefits. That Plaintiff alleges that Defendants failed to follow the most elementary security protocol referred to in the Plan's summary plan description – requiring a 14-day hold on distributions following a change of address – does not convert her claim to one for benefits under the Plan terms. Put simply, Plaintiff is not seeking a distribution of benefits.

As the Committee concedes, the Plan in this case also includes a mandatory administrative process only for deciding claims for benefits under the Plan terms. Dkt No. 39, p.

4. But unlike in *Diamond*, here, Plaintiff does not seek benefits under the Plan terms. Instead, she seeks to remedy Defendants' statutory breaches of fiduciary duties, including their duties of loyalty and prudence, by, *e.g.*, causing or allowing the Plan to make unauthorized distributions of Plan assets; failing to identify and investigate suspicious activities and red flags; failing to establish distribution processes to safeguard Plan assets against unauthorized withdrawals; and failing to monitor other fiduciaries' distribution processes, protocols and activities. Complaint at ¶ 43. Thus, the Committee's argument that Plaintiff's claim is not "ripe for adjudication" (Dkt No. 39, p. 5) is wholly without merit.

Finally, it is telling that in support of its request that the Court stay the case pending resolution of an administrative appeal process that it contends Plaintiff is required to pursue, the Committee cites only one case – *Range v. 480-486 Broadway, LLC*, 810 F.3d 108, 113 (2d Cir. 2015) – which is not an ERISA case and is wholly inapposite. *See* Dkt No. 39, p. 5. At issue in *Range* was a claim that the defendant's premises was not wheelchair accessible as required by the Americans with Disabilities Act. 810 F.3d at 113. The plaintiff sought injunctive relief requiring the defendant to fix the access issues. *Id.* The defendant admitted to the access issues, demonstrated that compliance had been delayed only because of complex permitting issues because the premise was owned by the government, but the fixes were now underway. *Id.* Based on these facts, the court stayed the case for a period of time to allow for the fixes to be made. *Id.* This case has nothing to do with ERISA claims, and provides no support for the Committee's assertion that the Court should not only stay Plaintiff's ERISA breach of fiduciary duty claim but also require her to pursue a different claim, under 502(a)(1)(B), utilizing the Plan's administrative process.

**C.      Plaintiff States A Claim For Relief For Breach Of Fiduciary Duty.**

Plaintiff's claim for relief plausibly alleges that the Committee breached its fiduciary duty under ERISA by failing to implement adequate protocols and procedures to safeguard the Plan's assets from cybersecurity threats and theft, by failing to heed multiple warning signs, and by failing to adequately monitor the acts of other Plan fiduciaries. To state a claim for breach of fiduciary duty under ERISA, a plan participant must plausibly allege that the defendant (1) was a fiduciary, (2) breached its fiduciary duty, and (3) thereby caused a loss to the plan at issue. *Pension Benefit Guar. Corp. ex rel. St. Vincent Catholic Med. Ctrs. Ret. Plan v. Morgan Stanley Inv. Mgmt. Inc.*, 712 F.3d 705, 730 (2d Cir. 2013) (citing 29 U.S.C. § 1109(a)).

The central purpose of ERISA is "to protect beneficiaries of employee benefit plans." *Slupinski*, 554 F.3d at 47. To further this purpose, ERISA imposes on fiduciaries entrusted with the administration of these plans the duty to use "the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims." *Pension Benefit Guar. Corp.*, 712 F.3d at 716 (quoting ERISA § 404(a)(1)(B), U.S.C. § 1104(a)(1)(B)).

Here, the Committee does not dispute that Plaintiff has plausibly alleged the first prong, that is, that the Committee is a fiduciary and therefore owes fiduciary duties to Plaintiff, as a Plan participant, including duties of loyalty and prudence. Instead, the Committee disputes that Plaintiff has plausibly alleged that it breached its fiduciary duties, or that the Committee's acts (or failure to act) caused a loss to the Plan.

In support of its arguments, the Committee heavily relies on cases alleging breaches of fiduciary duties due to imprudent investments in pension plans, wherein courts have found that the decline in value of a securities *alone* may not be sufficient to state a claim that the fiduciary breached its duties by allowing the plan to invest in the securities. *See* Dkt No. 39, p. 6 (citing *Pension Benefit Guar. Corp.*, 712 F.3d at 716; *Sacerdote v. New York University*, 9 F.4th 95, 107 (2d Cir. 2021); *In re Lehman Bros. Sec. & ERISA Litig.*, 113 F. Supp. 3d 745, 754 (S.D.N.Y. 2015)). However, the Committee overstates this proposition, focusing only on a portion of these court orders. For example, the Committee fails to acknowledge that in *Pension Benefit Guarantee Corporation*, the Second Circuit recognized that "[o]f course, in some cases, it would be reasonable to infer from a decline in the price of a security, *combined with other facts*, that the security no longer was a sound investment." 712 F.3d at 722; *see also Jacobs v. Verizon Commc'ns, Inc.*, No. 16 CIV. 1082 (PGG), 2017 WL 8809714, at *8-9 (S.D.N.Y. Sept. 28, 2017) (quoting same).

Here, contrary to the Committee's assertion, Plaintiff does not contend that the theft of Plaintiff's Plan account *alone* demonstrates that the Committee (and the other Defendants) breached their fiduciary duties. Instead, Plaintiff alleges numerous additional facts that adequately allege breach. For example, Plaintiff alleges that "[t]he fact that within the span of less than two months, a person claiming to be a Plan participant changed the participant's phone number, email address, mailing address, and bank account information, and then requested an immediate cash distribution of the participant's entire $750,000 Plan account, should have been red flags that triggered further action to confirm that the requested distribution had come from the Plan participant." ¶ 35. In addition, "[t]he fact that a person claiming to be a Plan participant

changed the participant's contact information such that the phone number and email address were from one country and the mailing address was in a different country should have been a red flag that triggered some further action to confirm the legitimacy of the request." *Id.* Likewise, "[t]he fact that a person claiming to be a Plan participant requested an immediate cash distribution instead of a tax-protected roll-over distribution; that they were doing so prior to age 59 ½, subjecting them to an additional 10% tax penalty; and that they failed to contact the International Benefits Department prior to requesting a distribution while residing in a foreign country, despite the Summary Plan Description's strong recommendation to do so, all should have been red flags that triggered further action to confirm the legitimacy of the distribution request." *Id.* In addition, "[t]he fact that a flurry of attempts to access a Plan account via telephone and online occurred within a short time span, many of which were unsuccessful, should have been a red flag prompting further action. However, Defendants failed to heed or even notice any of these suspicious actions, thereby leading to the loss of Plan assets." *Id.; see also* ¶ 22. Plaintiff further alleges that the Committee (and the other Defendants) "failed to implement reasonable procedures to detect and prevent fraud and theft of Plan assets." ¶ 38. Thus, Plaintiff has set forth numerous facts sufficient to plausibly state a claim for breach of fiduciary duty, and is plainly *not* asserting that the theft of her account alone demonstrates a breach.

The Committee repeatedly points the finger at Alight, attempting to disclaim any liability for Alight's failures, and arguing that Plaintiff does not allege that the Committee was aware of the alleged red flags discussed above. *See, e.g.*, Dkt No. 39, p. 8. However, the Committee does not and cannot dispute that it is the Plan Administrator and Named Fiduciary of the Plan, which,

by statute, means that it possesses the "authority to control and manage the operation and administration of the Plan." ERISA § 402(a)(1), 29 U.S.C. § 1102(a)(1). Furthermore, the Plan document provides the Committee with broad authority, including but not limited to overseeing other Plan service providers and fiduciaries appointed to carry out plan administration responsibilities. *See* Plan document, Exhibit 1 to Declaration of Kirsten Scott, at pp. 111-19.[3] It is also undisputed that Alight was a service provider engaged to carry out certain plan administration duties for the Plan. Plaintiff's claim that the Committee breached its fiduciary duties includes the allegation that the Committee "fail[ed] to monitor other fiduciaries' distribution processes, protocols, and activities," thereby causing or allowing the Plan to make unauthorized distribution of Plan assets. ¶ 43. The Second Circuit rejected an argument similar to the Committee's in *Sullivan-Mestecky v. Verizon Comm'ns Inc.*, 961 F.3d 91 (2d Cir. 2020). There, a plan administrator had delegated certain participant communications duties to an outside agent, which gave a plan participant incorrect information about the amount of the participant's plan benefit. *Id.* at 96-97. The plan administrator argued that it could not be liable for breach of fiduciary duty because the agent, not the plan administrator itself, had made the misrepresentations. *Id.* at 104. The Second Circuit held that when the plan administrator arranged for the agent to communicate with the participant, the plan administrator "was performing a fiduciary function and was bound by its fiduciary duty to properly administer the plan." *Id.* In short, the plan administrator could not "hide behind [the agent]'s actions to evade liability for the

---

[3] The Court may consider the Plan document on Defendants' motion to dismiss, because the Plan is "incorporated by reference" in the Complaint. *Zeuner v. Suntrust Bank Inc.*, 181 F. Supp. 3d 214, 219 (S.D.N.Y. 2016) (considering the plan documents on a motion to dismiss); *see also* ¶¶ 28-32.

fiduciary breach." *Id.* The same is true here. The Committee cannot point the finger at Alight and then escape all fault itself. Plaintiff has adequately pled a breach claim as against the Committee.

Plaintiff has alleged that all of the Defendants – including the Committee – failed to institute reasonable procedures to safeguard the Plan against cyber fraud, theft, and unauthorized distributions. ¶ 35. The Committee takes issue with Plaintiff not parsing out the details of the procedures for handling participant information, or exactly what acts and failures are attributable to which Defendant. However, for the reasons discussed above, Plaintiff has adequately alleged a breach of fiduciary duty claim against the Committee. Furthermore, the Second Circuit has recognized that "details about a fiduciary's methods and actual knowledge tend to be in the sole possession of that fiduciary." *Pension Ben. Guar. Corp.*, 712 F.3d at 719. In addition, "[e]ven when the alleged facts do not 'directly address[ ] the process by which the Plan was managed,' a claim alleging a breach of fiduciary duty may still survive a motion to dismiss if the court, based on circumstantial factual allegations, may reasonably 'infer from what is alleged that the process was flawed.'" *Id.* at 718 (quoting *Braden v. Wal–Mart Stores, Inc.,* 588 F.3d 585, 596 (8th Cir.2009)). This is because "ERISA plaintiffs generally lack the inside information necessary to make out their claims in detail unless and until discovery commences." *Id.* (quoting *Braden*, 588 F.3d at 598).

In ERISA breach of fiduciary duty cases alleging imprudent investments in a retirement plan, a plaintiff may be able to glean information from plan disclosures required by ERISA. *Id.* However, for cases involving cybersecurity and theft of plan assets, currently there are no required plan disclosures that are publicly available. Thus, it is not surprising that Plaintiff does not yet know all of the details regarding the Committee's oversight (or lack of oversight) over

Alight's cybersecurity protocols and protections against unauthorized distributions. However, it is widely recognized in the industry that there are multiple steps that a plan fiduciary can and should take to protect a retirement plan from experiencing cybersecurity-related losses. *See, e.g.*, Dept. of Labor Cybersecurity Guidance, "Tips for Hiring a Service Provider," *available at* https://www.dol.gov/agencies/ebsa/key-topics/retirement-benefits/cybersecurity; Alex Smith, "Hole in the Bottle…Protecting Against 401(k) Cybersecurity Leakage," Holland & Hart Sept. 21, 2022, available at https://www.employeebenefitslawblog.com/hole-in-the-bottle-protecting-against-401k-cybersecurity-leakage/.

In addition, based on the rise in pension plan cybersecurity incidents during the last five to ten years, and the high number of cybersecurity breaches and improper distributions of pension plan assets in which Alight was the plan recordkeeper, the Committee certainly had reason to know that instituting reasonable procedures to safeguard Plan assets – and requiring that Alight and other service providers do the same – was imperative. *See, e.g.*, *Bartnett v. Abbott Lab'ys*, 492 F. Supp. 3d 787, 792 (N.D. Ill. 2020) (involving theft of pension plan assets where Alight operated the Plan's benefits center and website, and was responsible for interfacing with participants and handling distribution requests); *Berman v. Estee Lauder Inc.*, No. 4:19-cv-06489 (N.D. Cal., filed Nov. 9, 2019) (also involving theft of pension plan assets where Alight interfaced with participants and handled distribution requests for the plan), attached as Exhibit 2 to Declaration of Kirsten Scott; *Walsh v. Alight Sols. LLC*, 44 F.4th 716, 720 (7th Cir. 2022) (discussing the Dept. of Labor's investigation of Alight since 2019, "prompted by a discovery that Alight processed unauthorized distributions of plan benefits due to cybersecurity breaches in its ERISA plan clients' accounts"). In fact, Colgate-Palmolive has another pension plan, in which

Plaintiff is also a participant, and from which the fraudsters also attempted to steal; however, due to security protocols followed by the plan, the fraudsters were unable to access it. ¶ 27.

The Committee emphasizes that Plaintiff cited a provision in the Summary Plan Description ("SPD") providing for a 14-day waiting period between a participant changing her address and being able to receive a distribution of Plan funds – saying that this could not have been violated because the provision was in the 2022 but not in the 2020 version of the Plan's SPD. Dkt No. 39, pp. 8-9. However, this argument does not help the Committee. Either the waiting period was a security provision that was in existence in 2020 but just not included in the SPD at that time, which would mean Defendants failed to follow this rule; or the Plan, Plan fiduciaries and Plan service providers had no such waiting period provision in 2020, which supports an inference that, consistent with the other facts alleged, Defendants did not have reasonable procedures in place to safeguard against cybersecurity threats and the theft of Plan assets. *See* ¶ 35.

The Committee also contends that "[i]n similar factual circumstances, federal courts have recognized that a theft of a participant's balance from a 401(k) plan is insufficient to show a breach of fiduciary duty." Dkt No. 39, p. 7. However, it then cites to *Foster v. PPG Industries, Inc.*, 693 F.3d 1226 (10th Cir. 2012), a case that did *not* include a breach of fiduciary duty claim, or any analysis of whether a breach had occurred. *Id.* Instead, at issue in that case was solely an ERISA § 502(a)(1)(B) claim, which was subject to the deferential arbitrary and capricious standard of review. *Id.* Furthermore, in analyzing whether the district court's decision was sound, the Tenth Circuit discussed the district court's ruling on the merits of the claim, and not whether a claim was sufficiently pled for purposes of a motion to dismiss. *Id.*

PLAINTIFF'S OPP. TO THE COMMITTEE'S MOTION TO DISMISS                    14

The Committee's reliance on *Bartnett*, 492 F. Supp. 3d 787, is also misplaced. *See* Dkt

No. 39, p. 7. In *Bartnett*, the court granted the benefit committee's motion to dismiss a breach of

fiduciary duty claim; however, this was based on the fact that the complaint did not allege that

the benefit committee was a named fiduciary, and based on a finding that the complaint

inadequately pled functional fiduciary status. *Id.* at 795. Furthermore, the court granted the

motion to dismiss without prejudice, but the case settled shortly thereafter. *See id.* Here, in

contrast, there is no question that the Committee is a fiduciary of the Plan, and that it owes

fiduciary duties of loyalty and prudence to Plaintiff and other Plan participants.

More on point is *Leventhal v. MandMarblestone Group LLC*, No. 18-cv-2727, 2019 WL

1953247 (E.D. Pa. May 2, 2019). In that case, which also involved the theft of pension plan

assets and an ERISA breach of fiduciary duty claim, MandMarblestone Group was the named

fiduciary of the plan, and a third-party service provider interfaced with the plan participants and

handled distribution requests. *Id.* at *1. The court recognized that whether a fiduciary has

violated a fiduciary duty is a "fact intensive issue" (*id*. at *6), but that at the motion to dismiss

stage, the plaintiff had adequately pled a breach of fiduciary duty claim against the named

fiduciary where the plaintiff claimed that MandMarblestone and the third-party service provider

failed to act with the requisite prudence and diligence, the defendants allegedly failed to

adequately verify the request for distribution, and they allegedly failed to implement sufficient

procedures and safeguards to protect against the theft of plan assets. *Id.* at *5-6.

For all of these reasons, Plaintiff has adequately pled facts to support her breach of

fiduciary duty claim against the Committee, and the Committee's motion to dismiss should be

denied.

**D.      Plaintiff Has Adequately Pled Causation Of Loss As Against The Committee.**

The Committee asserts that the Complaint does not adequately show that the Committee caused Plaintiff's loss. Dkt No. 39, p. 11. The Committee asserts that the Complaint is inadequate because the loss really occurred from a "complex, international scam." *Id.* This argument misses the point: at the pleading stage, Plaintiff sufficiently alleges that the failures of the Defendants – including the Committee – in instituting and utilizing adequate safeguard measures, and heeding suspicious activity and red flags, allowed a fraudster to ultimately succeed in accessing Plaintiff's account, causing a loss to the Plan. ¶¶ 26-27, 35-38. And Plaintiff pleads that the scheme was *not* so complex or sophisticated that no reasonable safeguards could have protected the Plan; rather, Plaintiff pleads that other plans in which Plaintiff participated – including one also sponsored by the Company – had security mechanisms that thwarted the scheme. ¶¶ 26-27.

Furthermore, "[i]n ERISA cases, generally loss causation is an issue of fact and is thus not properly considered at this early stage in the proceeding" on a motion to dismiss. *In re Morgan Stanley ERISA Litig.*, 696 F. Supp. 2d 345, 363 (S.D.N.Y. 2009) (quoting *In re Coca–Cola Ents. Inc., ERISA Litig.,* No. 06–CV–953, 2007 WL 1810211, *8 (N.D. Ga. June 20, 2007)); *see also Silverman v. Mut. Benefit Life Ins.,* 138 F.3d 98, 104 (2d Cir. 1998) (assessing evidence of a causal link at summary judgment); *Kuper v. Iovenko,* 66 F.3d 1447, 1460 (6th Cir.1995) (same); *Henry v. Champlain Enters., Inc.,* 288 F. Supp. 2d 202, 230 (N.D.N.Y. 2003) (same). Thus, Plaintiff has adequately pled causation.

/ /

/ /

IV.     **CONCLUSION**

For all of the foregoing reasons, the Committee's motion to dismiss should be denied. However, if the Court is inclined to grant the Committee's motion, Plaintiff respectfully requests leave to amend. Fed. R. Civ. P. 15(a)(2) (The court should freely give leave [to amend] when justice so requires); *Bartnett*, 492 F. Supp. at 802 (providing leave for plaintiff to file an amended complaint if she believes she can cure the deficiencies in the complaint as discussed in the court's order).

Respectfully submitted,

RENAKER SCOTT LLP

Dated: New York, New York
       September 29, 2022                    ____/s/ Kirsten G. Scott_____

Kirsten G. Scott, *admitted pro hac vice*
Teresa S. Renaker, *pro hac vice applic. pending*
RENAKER SCOTT LLP
505 Montgomery Street, Suite 1125
San Francisco, CA 94111
Tel.: (415) 653-1733
Fax: (415) 752-5079
kirsten@renakerscott.com
teresa@renakerscott.com

Evan Brustein, Esq.
Brustein Law PLLC
299 Broadway, 17th Floor
New York, New York 10007
(212) 233-3900
evan@brusteinlaw.com

*Attorneys for Plaintiff*