**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

PAULA DISBERRY,

                          Plaintiff,

        v.

EMPLOYEE RELATIONS COMMITTEE
OF THE COLGATE-PALMOLIVE
COMPANY, ALIGHT SOLUTIONS, LLC,
AND THE BANK OF NEW YORK
MELLON CORPORATION,

                    Defendants.

Case No. 22-CV-5778-CM-OTW

**Reply Memorandum of Law In Support of Motion to Dismiss**

### Reply Memorandum of Law In Support of the Employee Relations Committee Of the Colgate-Palmolive Company's Motion to Dismiss

## **<u>Table of Contents</u>**

Argument and Citation of Authority ................................................................................ 1

I.      Plaintiff has failed to plead facts showing that the Committee is liable for
        fiduciary breach. ................................................................................................ 1

        A.   Pleading the Committee's Status as Named Fiduciary Is Not Sufficient to Show a
             Fiduciary Breach or Causation. ...................................................................... 1

        B.   Plaintiff's Arguments Fail to Show a Fiduciary Breach. ................................. 4

        C.   Plaintiff has failed to allege facts that, if proven, would show that the Committee caused
             Plaintiff's alleged loss. ................................................................................. 6

II.     This case should be dismissed or stayed pending completion of the
        administrative process. ....................................................................................... 7

Conclusion ........................................................................................................................ 9

## Table of Authorities

**Cases**

*Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) ................................................................. 3

*Bartnett v. Abbott Laboratories*, 2021 WL 428820 (N.D.Ill. 2021) ............................... 2

*Bartnett v. Abbott Laboratories*, 492 F.Supp.2d 787, 796 (N.D.Ill. 2020) ........................... 2, 3, 5

*Harry N. Abrams, Inc.*, 249 F.3d 130, 133 ..................................................................... 8

*Leventhal v. MandMarelestone Group, LLC*, 2020 WL 2745740 (E.D.Pa.) ................. 3

*Nechis v. Oxford Health Plans, Inc.*, 421 F.3d 96, 100-02 (2nd Cir. 2005) ................... 7

*Pension Benefit Guar. Corp. ex rel. St. Vincent Catholic Med. Ctrs. Ret. Plan v. Morgan Stanley Inv. Mgmt. Inc.*, 712 F.3d 705, 730 (2nd Cir. 2013) ............................................. 1, 2, 6

*Sacerdote v. New York University*, 9 F.4th 95, 107 (2nd Cir. 2021) ............................. 6

*Sullivan-Mestecky v. Verizon Communications, Inc.*, 961 F.3d at 91 (2nd Cir. 2020) ................... 3

**Statutes**

29 U.S.C. § 1133 ............................................................................................................. 8

**Rules**

29 C.F.R. § 2560.503-1 .................................................................................................... 8
Fed.R.Civ.P. 12(b)(6) ..................................................................................................... 1
Fed.R.Civ.P. 8 ................................................................................................................. 3

**<u>Argument and Citation of Authority</u>**

Comes now the Employee Relations Committee of the Colgate-Palmolive Company (the "Committee"), one of the Defendants herein, and submits this Reply Memorandum of Law in support of its Motion to Dismiss Plaintiff's Complaint pursuant to Fed.R.Civ.P. 12(b)(6).

I.    **Plaintiff has failed to plead facts showing that the Committee is liable for fiduciary breach.**

A.   **Pleading the Committee's Status as Named Fiduciary Is Not Sufficient to Show a Fiduciary Breach or Causation.**

The parties agree that to state a claim for breach of fiduciary duty a plaintiff must allege that: (1) the defendant was acting as a fiduciary of the plan, (2) the defendant breached that duty, and (3) the breach caused harm to the plaintiff.  (Plaintiff's Brief, p. 8 (citing *Pension Benefit Guar. Corp. ex rel. St. Vincent Catholic Med. Ctrs. Ret. Plan v. Morgan Stanley Inv. Mgmt. Inc.*, 712 F.3d 705, 730 (2nd Cir. 2013).)  Plaintiff seems to argue that these elements have been adequately pled simply because the Committee is the Plan's named fiduciary.  (Plaintiff's Brief, pp. 10-11.)  However, the fact that the Committee is the named fiduciary satisfies only the first prong of the test (an uncontested point), not the second or third prongs.  Plaintiff cites no authority for the proposition that named fiduciary status and an alleged harm is sufficient to show a fiduciary breach or causation.  Rather, plaintiffs must plead facts that, if proven, would show a violation of ERISA's fiduciary requirements and a causal nexus between such breach and the alleged harm.  *Pension Benefits Guar. Corp.*, 712 F.3d at 730.  Here, Plaintiff fails to allege sufficient facts to establish a breach by the Committee or the requisite causal connection to the alleged harm.

1

Plaintiff's attempt to distinguish the *Bartnett* opinion in this regard is misguided. (Plaintiff's Brief, p. 15.)  In *Bartnett*, the court recognized that: "Marlon Sullivan is the administrator and named fiduciary of the Retirement Plan, so there is no dispute that he had a fiduciary duty to Bartnett.  But the parties disagree whether he breached that duty."  *Bartnett v. Abbott Laboratories*, 492 F.Supp.2d 787, 796 (N.D.Ill. 2020) (internal record cites omitted).  The court then analyzed the factual allegations and noted "the complaint indicates that Alight – not Sullivan or anyone else – operates the website" – similar to the current case.  *Id*.  The court also noted that: "… the complaint does not allege that Sullivan knew about the unauthorized attempts to access Bartnett's account."  *Id*. at 797.  The court then dismissed the fiduciary breach claims as to Sullivan, despite his status as administrator and named fiduciary.  *Id*.; *see also Bartnett v. Abbott Laboratories*, 2021 WL 428820 (N.D.Ill. 2021) (dismissing amended complaint).  Plaintiff cites no authority in support of their vague suggestion that named fiduciary status somehow imputes omniscient knowledge of all events concerning the plan or confers liability therefore without showing the named fiduciary itself engaged in acts or omissions that constitute a fiduciary breach.

Also unpersuasive is Plaintiff's argument that the Committee's "broad" authority to administer the Plan imposes liability for any plan-related loss.  (Plaintiff's Brief, p. 11.)  The applicable legal standard is clear.  Plaintiff must plead facts that, if proven, would show that the Committee breached its fiduciary duties and that such breach caused Plaintiff's loss.  *Pension Benefits Guar. Corp.*, 712 F.3d at 730.  The fact that the Committee is named fiduciary does not relieve Plaintiff of this basic pleading requirement.  Nor can Plaintiff hide behind the familiar argument that she needs discovery in order to plead a claim.  The Supreme Court has been clear

that Fed.R.Civ.P. 8 "does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

The cases cited by Plaintiff do not change this result.  In *Sullivan-Mestecky v. Verizon Communications, Inc*., 961 F.3d at 91 (2nd Cir. 2020), a third-party administrator sent false representations regarding eligibility for a benefit to the participant "on Verizon letter head."  *Id*. at 96.  Further, the participant "received various mailings from Verizon, as plan administrator, that confirmed the existence and coverage amount of the policy."  *Id*.  The court found that Verizon acted in a fiduciary capacity by making these representations, despite the fact that the mailing had been sent by the third-party administrator.  *Id*. at 104.  Here, Plaintiff does not allege any specific act or omission by the Committee that enabled the alleged fraud.  Rather, the key event here is the Plaintiff's allegation that she suffered an actual theft of the letter with the temporary PIN from her mail.

In *Leventhal v. MandMarelestone Group, LLC*, 2020 WL 2745740 (E.D.Pa.), the plan trust agreement, and two other agreements, provided that the named fiduciaries had the responsibility and sole authority "to authorize and approve the merits of each distribution request …."  *Id*. at *2.  Further, the counter-claim at issue specifically alleged that the plaintiffs, including the named fiduciary, enabled the cyber-fraud by allowing an employee, whose email account was eventually hacked, to use her personal email for employment duties.  *Id*. at *5.  Thus, the court denied a motion to dismiss counter-claims against the named fiduciary related to the cyber-fraud incident.  *Id*.  Here, Plaintiff does not allege any specific act or omission by the Committee that enabled the alleged fraud.

### B.  Plaintiff's Arguments Fail to Show a Fiduciary Breach.

Plaintiff's argument that the Plan should have, but did not, contain a 14-day waiting period of distributions is without merit.  The fact that the plan subsequently adopted a 14-day rule does not mean that the absence of such a rule at the time in question was improper or caused her loss.  Absent from Plaintiff's argument is any response to the point that a 14-day delay would not have prevented the alleged fraud in this case.  Plaintiff alleges that she discovered the fraud many months after it occurred, and no facts have been alleged to show that the fraud would have been avoided if the distribution had just been held for 14 days.  (Complaint, ¶¶ 12-13.)  The Court should decline Plaintiff's invitation to announce a judicially created rule that ERISA plans must wait 14-days to process a distribution request.

Similarly, Plaintiff has failed to plead facts sufficient to show a fiduciary breach by alleging that an attempt to steal assets from another retirement plan sponsored by Colgate-Palmolive was unsuccessful.  Notably, Plaintiff does not plead facts showing that both attempts happened near the same time period, or even that the second attempt was ongoing at the time that she notified the Plan of the original theft.  (Complaint, ¶26.)  Thus, the facts pled do not create a reasonable inference that second attack was foiled because of allegedly better practices, rather than because the other plan simply became aware Ms. Disberry's identity had allegedly been compromised when she reported the original theft.

Plaintiff relies heavily on the alleged "red flags" she believes should have provided notice of potentially fraudulent activity.  She describes four red flags she asserts should have prompted further action to confirm the legitimacy of the distribution request:

- The contact information was changed within two months of the distribution request.

4

- The phone number and email were from one country and recently changed mailing address was in a different country.

- The request for distribution despite the 10% penalty without contacting the International Benefits Department.

- Numerous attempts to access Plaintiff's account occurred within a short time and many were unsuccessful.

(Plaintiff's Response, pp. 9-10.)

First, Plaintiff alleges no facts that the Committee was aware, or should have been aware, of these allegations. *Bartnett*, 492 F.Supp.2d at 797 ("… the complaint does not allege that Sullivan knew about the unauthorized attempts to access Bartnett's account.")  The Complaint makes clear that the call center and website were run by Alight.  (Complaint, ¶ 5.)  Plaintiff does not allege or argue that the Committee is obliged to monitor every single transaction.  Nor, even had the Committee been aware of them, are these purported "red flags" necessarily out of the ordinary.  It is to be expected that participants may update contact information prior to or contemporaneous with requesting a distribution.  People who move to another country may update mailing addresses before getting new phone numbers or email addresses because they will still be able to access phone and email from the new country but necessarily lose access to their prior physical mailing address.  Participants with immediate financial needs that justify the 10% penalty are not uncommon, and it is not a fiduciary's role to dissuade a participant from taking an early distribution allowed by the Internal Revenue Code and the plan due to personal tax considerations.  Failed login attempts are also not uncommon.  Thus, the "red flags" Plaintiff relies upon are insufficient to state a claim for fiduciary breach against the Committee.

5

Further, even if the Court were to conclude that the alleged deficiencies pled by Plaintiff did warrant further follow up (had the Committee been aware of them), that would not be sufficient to find a fiduciary breach by the Committee.  Nowhere does Plaintiff argue that the Committee engaged in a flawed decision making process.  *Sacerdote v. New York University*, 9 F.4th 95, 107 (2nd Cir. 2021) (fiduciary standard focuses on a fiduciary's conduct in arriving at a decision, not on its results).  Rather than offering allegations based on the circumstances then prevailing, Plaintiff engages in a post hoc critique of what may have been done better with the benefit of hindsight.  *Cf. Pension Benefit Guar. Corp.*, 712 F.3d at 716 (fiduciary conduct not judged with benefit of hindsight).  The Complaint does not allege facts sufficient to show that the Committee engaged in a flawed decision making process or otherwise engaged in an objectively unreasonable manner.  An unfortunate result is not sufficient to show a fiduciary breach.

### C.  Plaintiff has failed to allege facts that, if proven, would show that the Committee caused Plaintiff's alleged loss.

Plaintiff's arguments about cyber-security procedures are irrelevant here because, by Plaintiff's own admission (Compl., ¶14), the theft was not the result of any electronic hacking, but rather a physical theft of her mail in South Africa.  This fact demonstrates that, despite Plaintiff's arguments, the theft was from Plaintiff, not the Plan.  Plaintiff's loss would not have occurred but for the fact that the perpetrator had access to Plaintiff's personal information, consistent access to her personal physical mail, and used that information to obtain a paper PIN, used that PIN to infiltrate her account and requested a distribution mailed to an address in the U.S.  Then the perpetrator was able to deposit a $600,000 check made payable to Paula Disberry into an account in the name of Paula Disberry at a physical bank in the U.S.  Plaintiff's Complaint does not identify any specific act or omission by the Committee but for which the

alleged fraud would not have occurred.  Accordingly, Plaintiff has failed to state a claim against the Committee that the Committee caused the Plaintiff's loss.

**II.      This case should be dismissed or stayed pending completion of the administrative process.**

Plaintiff does not dispute that she has invoked the Plan's formal administrative claim process and that she remains within the time to appeal the initial claim decision.  She also does not dispute that if an appeal is successful, this case will become moot, or that if an appeal is not successful, she would seek to amend her complaint to assert an additional claim for benefits allegedly due to her under the Plan.  Conspicuously absent from Plaintiff's response are any assertions that she will not exhaust administrative remedies and then seek to amend her Complaint.  In fact, a close reading of this portion of Plaintiff's response shows she is simply arguing that her current Complaint does not include a claim for benefits due under the Plan – an undisputed point – and does not state that she will refrain from seeking to amend her Complaint to make such a claim in the future.  (Plaintiff's Brief, pp. 5-6.)[1]

The Second Circuit has not addressed the question of whether exhaustion is required for fiduciary breach claims, and other circuits are divided.  *Nechis v. Oxford Health Plans, Inc*., 421 F.3d 96, 100-02 (2nd Cir. 2005).  This Court is not bound by speculative dicta in a Second Circuit opinion that explicitly declined to reach the issue.  *Id*.  The Court is also not bound by decisions of other District Courts.  Further, this Court is not now called upon to decide the question of whether exhaustion is required for fiduciary breach claims generally, but only the more narrow

---

[1] Because the Second Circuit may join other circuits in requiring exhaustion of fiduciary claims, and failure to timely exhaust administrative remedies can preclude pursuing judicial remedies, it is extremely unlikely that Plaintiff will fail to timely appeal her claim.

question of whether a claimant should be required to exhaust the administrative process once invoked in order to preclude such claimant from seeking relief for the same injury in two different forums simultaneously.  Because the interests of judicial economy so clearly weigh in favor of a stay, and Plaintiff would not be prejudiced by a stay, the Court should exercise its discretion to issue a stay in the narrow context of this case.[2]

Plaintiff's assumption that an appeal would be denied is unsupported by any factual allegations.  ERISA plans are required to have administrative claim procedures, and the administrative claims process is heavily regulated.  29 U.S.C. § 1133; 29 C.F.R. § 2560.503-1.  The Court should decline Plaintiff's invitation to speculate as to the outcome of an appeal that has not yet been submitted.  The factual elements of her claim are complex.  She has not met the requirement to show that exhaustion would be futile.  *See Davenport v. Harry N. Abrams, Inc.*, 249 F.3d 130, 133 (2nd Cir. 2001) (courts will excuse an ERISA plaintiff's failure to exhaust only upon a clear and positive showing of futility).

Further, any concerns Plaintiff may have about the length of a stay are largely in her power to control.  The first level claim decision was made on April 7, 2022.  Plaintiff has a very long period in which to appeal due to the Covid extensions.  However, she is not required to wait and could file an administrative appeal as soon as she wants.  Once she does, there are time limits on a decision contained in the Plan document and required by regulation.  *See* 29 C.F.R. § 2560.503-1.  The Covid pandemic did not prevent Plaintiff from pursuing a first level claim, or from actively pursuing this litigation.  She need not wait the full length of the Covid extension period to pursue her claim on appeal.  A stay could be relatively brief, and may result in a

---

[2] If the Second Circuit were to require exhaustion on appeal of a final judgment from this Court, that sequence of events would create unnecessary inefficiencies in the progress of the case.

decision that fully resolves this case, or perhaps clarifies factual elements or at least narrows the issues and avoids duplicative scheduling orders, pleadings, discovery periods, dispositive motions, etc.

Finally, Plaintiff's argument that *Range* is not an ERISA case is irrelevant.  The Committee cites this opinion only for the proposition that the Court has inherent authority to stay litigation in its discretion – a point not unique to the ERISA context.  Plaintiff does not appear to dispute this point.  Because of the unique posture of this case – administrative claim process invoked, but not completed – the Court should exercise its discretion to stay the case, even if it determines that exhaustion is not required for fiduciary breach claims generally.

<u>Conclusion</u>

For the foregoing reasons, Plaintiff's Complaint should be dismissed.  In the alternative, this case should be stayed pending the completion of Plaintiff's administrative claim.

This 4th day of October, 2022.

> */s/ Patrick C. DiCarlo*
> Patrick C. DiCarlo (Admitted pro Hac Vice)
> GROOM LAW GROUP, CHARTERED
> 1701 Pennsylvania Ave., N.W.
> Washington, D.C. 20006
> 202-861-0172 (phone)
> 202-659-4503 (fax)
> PDiCarlo@groom.com

**CERTIFICATE OF SERVICE**

I certify that on October 4, 2022, I filed in this action the foregoing **Reply Memorandum of Law in Support of Motion to Dismiss** electronically via the Court's ECF System.  Notice of this filing will be sent in this action by operation of the Court's electronic system to all counsel of record in the ECF System.

Respectfully Submitted,

*/s/ Patrick C. DiCarlo_____*
Patrick C. DiCarlo (Admitted pro Hac Vice)
GROOM LAW GROUP, CHARTERED
1701 Pennsylvania Ave., N.W.
Washington, D.C. 20006
202-861-0172 (phone)
202-659-4503 (fax)
PDiCarlo@groom.com