**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

PAULA DISBERRY

               Plaintiff,

    v.

EMPLOYEE RELATIONS COMMITTEE OF THE COLGATE-PALMOLIVE COMPANY, ALIGHT SOLUTIONS, LLC, AND THE BANK OF NEW YORK MELLON CORPORATION,

               Defendants.

Case No. 22-cv-05778-CM-OTW

---

## THE BANK OF NEW YORK MELLON'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFF'S COMPLAINT

## TABLE OF CONTENTS

**Page**

INTRODUCTION ............................................................................................................... 1

ARGUMENT ..................................................................................................................... 3

I.     Ms. Disberry Does Not Plausibly Allege That BNY Mellon Was A
       Functional Fiduciary With Respect To The Challenged Conduct In This
       Action ................................................................................................................ 3

II.    As Directed Trustee, ERISA Section 403(a), 29 U.S.C. § 1103(a), Applies
       To BNY Mellon's Role With Respect To The Challenged Conduct In This
       Action ................................................................................................................ 8

CONCLUSION ................................................................................................................ 10

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Albert v. Oshkosh Corp.*, 47 F. 4th 570 (7th Cir. 2022)................................................................10

*Bartnett v. Abbott Labs.*, 492 F. Supp. 3d 787 (N.D. Ill. 2020)................................................6, 7

*Beddall v. State St. Bank & Tr. Co.*,
    137 F.3d 12 (1st Cir. 1998)..........................................................................................5, 9

*F.W. Webb Co. v. State Street Bank and Trust Co.*,
    2010 WL 3219284 (S.D.N.Y. Aug. 12, 2010) .........................................................2

*Koch v. Dwyer*,
    1999 WL 528181 (S.D.N.Y. July 22, 1999) .............................................................9

*Leventhal v. MandMarblestone Grp., LLC*,
    2019 WL 1953247 (E.D. Pa. May 2, 2019) ...........................................................6, 7

*Massaro v. Palladino*, 19 F. 4th 197 (2d Cir. 2021) ................................................................2

*Pegram v. Herdrich*, 530 U.S. 211 (2000)................................................................................2, 5

*Rosen v. Prudential Ret. Ins. and Annuity Co.*,
    718 Fed. Appx. 3 (2d Cir. 2017) .............................................................................5

*Varity Corp. v. Howe*, 516 U.S. 489 (1996) ...........................................................................2

*In re Worldcom, Inc. ERISA Litig.*,
    354 F.Supp. 2d 423 (S.D.N.Y. 2005).....................................................................8, 9

## Statutes

29 U.S.C. § 1002(21)(A)................................................................................................................3

29 U.S.C. § 1102(c) ......................................................................................................................2

29 U.S.C. § 1103(a) .............................................................................................................4, 8, 9

29 U.S.C. § 1105(c) ......................................................................................................................2

29 U.S.C. § 1110(a) ....................................................................................................................10

29 U.S.C. § 1132............................................................................................................................1

Defendant The Bank of New York Mellon ("BNY Mellon") (incorrectly named in the Complaint as The Bank of New York Mellon Corporation) respectfully submits the following Reply to Plaintiff Paula Disberry's ("Ms. Disberry") Memorandum of Law in Opposition to BNY Mellon's Motion to Dismiss (ECF No. 62 ("Opp.")).

## INTRODUCTION

Ms. Disberry's Opposition confirms that she cannot identify facts supporting a claim for breach of fiduciary duty against BNY Mellon under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1132, *et seq.* This is not surprising, because BNY Mellon did nothing wrong—as Ms. Disberry's own allegations reflect. According to Ms. Disberry, a fraudster hacked her Colgate-Palmolive Company Employees Savings and Investment Plan ("Plan") account and stole over $600,000 of her retirement savings. All of the alleged missteps that failed to prevent the theft have nothing to do with BNY Mellon or its obligations under the Master Trust Agreement. BNY Mellon is alleged to have done exactly what it was required to do under the terms of its engagement, nothing less, nothing more; it followed Alight's duly-authorized instructions to generate the participant check. This was BNY Mellon's only role in the transaction, and Ms. Disberry alleges no wrongdoing with respect to the generation of the check itself.

In opposing BNY Mellon's Motion to Dismiss, Ms. Disberry largely argues that she has plausibly stated a claim for breach of fiduciary duty against BNY Mellon because: (1) she has alleged that BNY Mellon has exercised some authority relating to the management or disposition of the Plan's assets; and (2) there was an unauthorized distribution from her Plan account. (*See* Opp. at 1, 5.) This misses the mark. BNY Mellon does not dispute that it is a Plan fiduciary *in some* contexts. The problem for Ms. Disberry is that she fails to allege that BNY Mellon was a fiduciary *in connection with any of the alleged wrongdoing* that led to her loss. Ms. Disberry argues

1

that, as long as an entity has some sort of fiduciary responsibility to a plan—regardless of its nexus to the alleged wrongdoing—she can proceed with a fiduciary breach claim against that entity. This argument flies in the face of established Supreme Court and Second Circuit precedent holding that, in every case charging breach of ERISA fiduciary duty, "the threshold question is . . . whether that person was acting as a fiduciary (that is, was performing a fiduciary function) *when taking the action subject to complaint*." (ECF No. 44 ("Br.") at 7 (citing *Massaro v. Palladino*, 19 F. 4th 197, 211 (2d Cir. 2021) (citing *Pegram v. Herdrich*, 530 U.S. 211, 226 (2000)) (emphasis included in opening brief).) As explained in BNY Mellon's opening brief, Ms. Disberry does not—and cannot—connect the alleged wrongful conduct at issue in this Action to BNY Mellon's fiduciary functions, and thus cannot state a claim for breach of fiduciary duty against it.

The Supreme Court's holding in *Pegram* that requires plaintiffs to connect a defendant's alleged fiduciary actions to the challenged conduct in a lawsuit reflects a commonsense approach. If every service provider engaged by an employee benefit plan could be liable for other parties' conduct beyond the scope of its own express responsibilities, it would have a chilling effect on the plan administration structure that Congress contemplated, which involves assistance from third party service providers. *See* ERISA §§ 402(c), 405(c); 29 U.S.C. §§ 1102(c), 1105(c) (setting forth statutory framework for fiduciary outsourcing arrangements); *see also Varity Corp. v. Howe*, 516 U.S. 489, 497 (1996) (recognizing that courts may have to take account of competing congressional purposes when interpreting ERISA's fiduciary duties, one of which is "its desire not to create a system that is so complex that administrative costs, or litigation expenses, unduly discourage employers from offering welfare benefit plans in the first place."); *F.W. Webb Co. v. State Street Bank and Trust Co.*, 2010 WL 3219284, at *10 (S.D.N.Y. Aug. 12, 2010) ("[A]n ERISA provider does not have a fiduciary obligation to provide a service it specifically contracted

Case 1:22-cv-05778-CM   Document 68   Filed 10/04/22   Page 6 of 14

not to provide. If plaintiffs could base claims on such counter-contractual obligations, then it would become effectively impossible for ERISA providers to contract to render merely administrative, non-fiduciary services.").

Put simply, a bad outcome by itself, while unfortunate, does not give rise to a breach of fiduciary duty claim under ERISA. Ms. Disberry must present factual allegations connecting BNY Mellon's alleged fiduciary actions to the alleged conduct she is challenging, and Ms. Disberry's allegations do nothing of the sort. The Court should therefore dismiss her claim against BNY Mellon.

## **ARGUMENT**

**I.      Ms. Disberry Does Not Plausibly Allege That BNY Mellon Was A Functional Fiduciary With Respect To The Challenged Conduct In This Action.**

In her Opposition, Ms. Disberry claims that BNY Mellon "only challenges" her assertion that BNY Mellon was a fiduciary and that, as such, "it does not dispute that, if the Court finds Plaintiff adequately pled its fiduciary status, Plaintiff has plausibly alleged that BNY Mellon breached its fiduciary duties and caused a loss to the Plan." (*See* Opp. at 4.) This is wrong. BNY Mellon does not dispute its limited fiduciary status in connection with the services it contracted to provide under the Master Trust Agreement. Rather, BNY Mellon argues that Ms. Disberry fails to plausibly allege that BNY Mellon was acting as a fiduciary, and carrying out fiduciary duties, *in its alleged connection to the acts underlying the Complaint*. (*See* ECF No. 44 ("Br.") at 8–9.)

Fiduciary status is not an "all or nothing" proposition. *See* 29 U.S.C. § 1002(21)(A) (ERISA defining fiduciary status in functional terms, whereby an entity is considered a fiduciary only "*to the extent* [it] exercises any discretionary authority or discretionary control respecting management of [the] plan or exercises any authority or control respecting management or disposition of its assets . . . .") (emphasis added). Thus, the fact that BNY Mellon is a fiduciary for

some functions does not mean it is a fiduciary for every loss suffered by a participant, especially where its actions are not connected to the challenged conduct.

Here, BNY Mellon's argument is straightforward: the conduct that Ms. Disberry is challenging—the fraudster's unauthorized tampering of her personal information and the unauthorized distribution of her pension benefits to the fraudster—has nothing to do with BNY Mellon's limited role as the Plan's directed trustee.[1] In fact, Ms. Disberry acknowledges that Alight, *not BNY Mellon*, was responsible for facilitating, directing, and processing the allegedly fraudulent distribution that forms the basis for her lawsuit. (*See* ECF No. 61 at 1 (arguing she has adequately stated a breach of fiduciary duty claim against Alight because, among other things, its role in "*facilitating, directing and processing distributions from participants' accounts*" rendered it a "functional fiduciary"); *see also id.* at 13 ("Plaintiff has alleged that Alight breached its fiduciary duty *by causing the Plan assets allocated to her account to be distributed to fraudsters*.") (emphasis added).) Moreover, the Master Trust Agreement makes clear that these functions are not BNY Mellon's responsibility and that BNY Mellon may rely on Alight to verify the authenticity of a participant's distribution request. (*See* Br. at 2–3.)

Ms. Disberry's Opposition argues unavailingly that her Complaint includes factual allegations connecting BNY Mellon's alleged conduct as a "functional fiduciary" to the alleged wrongdoing because she alleges: (1) BNY Mellon cut the check from the Plan's assets; and (2) BNY Mellon was responsible for maintaining a comprehensive information security program to

---

[1] ERISA § 403 requires that one or more trustees must hold the assets of the plan in trust. 29 U.S.C. § 1103(a). The authority of the trustee with regard to the management of the plan's assets can be structured in different ways. A discretionary trustee may have full discretion to manage the plan's assets, or a directed trustee may instead have only the authority to manage the plan's assets according to the directions of a named plan fiduciary or a section 3(38) investment manager. *See id.*

protect against unauthorized access to Plan assets and data. (*See* Opp. at 5, 8.) Neither of these arguments satisfies the *Pegram* test.

First, by law, BNY Mellon's mere issuance of the check from the Plan's assets, pursuant to Alight's directions, does not amount to a fiduciary action. *See Rosen v. Prudential Ret. Ins. and Annuity Co.*, 718 Fed. Appx. 3, 5–6 (2d Cir. 2017) (finding that a directed trustee "does not exercise or possess discretionary authority when it makes or changes investments" pursuant to another party's instructions, and that a directed trustee's "legal title to Trust assets or its managerial ownership of them [does not] create the independent discretion that is the touchstone of an ERISA fiduciary analysis.") (citing *Beddall v. State St. Bank & Tr. Co.*, 137 F. 3d 12, 18 (1st Cir. 1998) ("mere exercise of physical control generally . . . is insufficient to confer fiduciary status")). Ms. Disberry does not—and cannot—dispute that Alight directed BNY Mellon to issue the check. (*See* ECF No. 61 at 1, 13; *see also* ECF No. 43-1 at 14, Master Trust Agreement at § 2.8 ("Benefit payment distribution services shall include the creation and furnishing of checks . . . for participant benefit distributions as instructed by the Plan's recordkeeper(s)").) Thus, the act of cutting a check from Plan assets alone does not amount to a fiduciary action.

Second, Ms. Disberry's allegations about BNY Mellon's information security program are a red herring. Section 1.13 of the Master Trust Agreement, to which Ms. Disberry refers, states that BNY Mellon "will implement and maintain a comprehensive information security program with written policies and procedures designed to protect the confidentiality and integrity of Plans' sensitive information . . . ." (ECF No. 43-1 at 10.) BNY Mellon's information security program is irrelevant because it does not maintain any participant personal account information in the first place. Ms. Disberry does not allege BNY Mellon has any involvement in maintaining participants' personal account information, to which the fraudster allegedly gained access. (*See* Br. at 2.)

Further, the Master Trust Agreement confirms that BNY Mellon is not responsible for Plan participants' personal account information. (ECF No. 43-1 at 24, Master Trust Agreement at § 7.6 ("The Master Trustee shall not be responsible . . . to establish or maintain a record or account in the name of any individual participant . . . .").) In addition, the mere fact that BNY Mellon possesses certain account information (though *not* participant data) and agreed to properly safeguard that data does not open it up to liability for unrelated losses. Indeed, implementing adequate information security safeguards is a standard practice and an expectation of every company that deals with confidential information. Ms. Disberry fails to explain how reassurances to protect confidential information constitutes discretion over or management of benefit plan assets, which is required to be a fiduciary. *See Bartnett v. Abbott Labs.*, 492 F. Supp. 3d 787, 796 (N.D. Ill. 2020) (rejecting plaintiff's argument that defendants were functional fiduciaries "because [they] failed to take necessary steps to protect plan assets," and explaining that "alleging what all defendants failed to do does not establish whether any individual defendant is a fiduciary under the statute.").

For all of these reasons—legal and factual—Ms. Disberry's arguments fail to implicate BNY Mellon as a fiduciary in connection with the alleged conduct she complains of.

Finally, Ms. Disberry's reliance on *Leventhal v. MandMarblestone Grp., LLC*, 2019 WL 1953247 (E.D. Pa. May 2, 2019), and *Bartnett*, 492 F.Supp. 3d 787, is misplaced. In *Leventhal*, plaintiffs sued two entities—the plan administrator/named fiduciary and the plan's "custodian"— for breach of fiduciary duty following an alleged wrongful distribution of plan assets to a fraudster. *Id.* at *1–2.[2] The court allowed the breach of fiduciary duty claims to proceed against both defendants, but the court *did not* hold that merely serving as the plan's custodian (and thus having

---

[2] One of the plaintiffs was designated as the trustee and the decision does not mention that the plan used the services of a directed trustee. *Id.*

control over plan assets) was enough to plausibly allege a breach of fiduciary duty claim. *See id.* at \*5. Rather, the court explained that the plaintiffs' claim could proceed against the specific custodian there because that entity "had control of the Plan accounts so as to distribute the Plan funds, *and was provided with the authority to 'take all other acts necessary for the proper administration of the Account*.'" *Id.* (emphasis added). Here, BNY Mellon has no administrative responsibilities or powers. (*See* ECF No. 43-1 at 35, Master Trust Agreement at B-1 ("In its role as a directed trustee, [BNY Mellon] does not have discretionary investment management authority, render investment advice for a fee or have discretionary authority or responsibility in the administration of the covered plan(s).").) Thus, *Leventhal* does not provide support to allow Ms. Disberry's claim against BNY Mellon to proceed.

Ms. Disberry's contention that *Bartnett* supports a finding that she adequately alleges a breach of fiduciary duty claim against BNY Mellon is also off the mark. (*See* Opp. at 6.) She argues that *Bartnett*—a case involving a similar fact pattern to Ms. Disberry's allegations in which the court dismissed all entities except Alight—is distinguishable from this Action because Alight "was the entity that distributed the plan assets." (*Id.*) But, in *Bartnett*, the plaintiff alleged Alight had a number of responsibilities beyond just distributing plan assets, like operating the customer service call center and website and authorizing the transfer of funds through direct deposit. *See Bartnett*, 492 F. Supp. 3d at 793–94. And, although the court stated that Alight "disburs[ed]" the plan assets, the court cited to paragraph 40 of the complaint, which alleges Alight *authorized* the transfer of assets. *See* Ex. A (attaching copy of *Bartnett* complaint). The *Bartnett* complaint contains no allegations about what entity or individual served as custodian of the plan's assets or directed trustee. *See id.* Thus, Ms. Disberry is wrong to argue *Bartnett* supports a finding that her Complaint should be able to proceed against BNY Mellon. As explained in BNY Mellon's opening

brief, *Barnett* provides persuasive authority supporting BNY Mellon's argument that it should be dismissed from this Action because it was not responsible for the alleged misconduct that forms the basis for Ms. Disberry's claim.

Because Ms. Disberry has failed to plausibly allege a breach of fiduciary duty claim against BNY Mellon, the Court should dismiss BNY Mellon from this Action.

## II.     As Directed Trustee, ERISA Section 403(a), 29 U.S.C. § 1103(a), Applies To BNY Mellon's Role With Respect To The Challenged Conduct In This Action.

Ms. Disberry acknowledges that directed trustees have limited fiduciary responsibilities in connection with their limited role servicing employee benefit plans. (*See* Opp. at 9.) But, at the same time, she claims ERISA § 403(a) is "inapplicable" to BNY Mellon. (*See id.* at 8–9 (arguing Section 403(a) requires directions must come from a *named* fiduciary, and because the directions to cut the check came from Alight rather than the named fiduciary, Section 403(a) does not apply) (emphasis in original).) Ms. Disberry's argument is contrary to the language in the Master Trust Agreement and case law within this District rejecting such a reading of the statute.

The Master Trust Agreement states in no uncertain terms that the named fiduciary directs BNY Mellon in connection with its benefit payment distribution services: "The Named Fiduciary directs the Master Trustee and the Master Trustee shall . . . provide benefit payment disbursement services for the Company's Plans" and "[b]enefit payment disbursement services shall include the creation and furnishing of checks . . . as instructed by the Plan's recordkeeper(s)." (ECF No. 43-1 at 14, Master Trust Agreement at § 2.8); *see also In re Worldcom, Inc. ERISA Litig.*, 354 F. Supp. 2d 423, 442 (S.D.N.Y.2005) ("*Worldcom II*") (rejecting plaintiffs' argument that ERISA § 403(a) did not apply because directions about how to allocate participants' investments came from participants instead of the named fiduciary). Therefore, BNY Mellon is bound by the terms of the Master Trust Agreement to follow the directions of the Named Fiduciary, which directs it to furnish

checks at Alight's direction (ECF No. 43-1 at 14, Master Trust Agreement at § 2.8), and BNY

Mellon is a "directed trustee" as contemplated by ERISA § 403(a). *See Beddall*, 137 F. 3d at 19–

21 (finding a directed trustee relationship when the plan vested authority in a named fiduciary to

direct the trustee); *Worldcom II*, 354 F. Supp. 2d at 441–43 (same); *Koch v. Dwyer*, 1999 WL

528181, at *6–10 (S.D.N.Y. July 22, 1999) (same).

Moreover, as stated at the outset, BNY Mellon does not maintain that it has no fiduciary

responsibilities in connection with the services it provides to the Plan. As directed trustee, it has

some limited fiduciary responsibilities. But Ms. Disberry does not challenge any of BNY Mellon's

limited fiduciary responsibilities—nor could she—as she does not allege that BNY Mellon was

aware of any of the alleged "red flags" that form the basis for her lawsuit. As explained in BNY

Mellon's opening brief—and left unrebutted by Ms. Disberry in her Opposition—whatever the

merits of the "red flags" identified by Ms. Disberry in her Complaint, they are irrelevant to BNY

Mellon, which does not, and is not alleged to, operate the customer service center, interact with

Plan participants (much less track how often participants contact customer service), maintain or

modify participants' account information, initiate distributions, or advise participants about tax

implications of disbursements. (*See* Br. at 10.)

Ms. Disberry sidesteps this point and instead maintains: "Though the prudence standard

does not impose on a directed trustee a duty of inquiry under all circumstances, here, the

circumstance of an instruction from Alight to pay out a very large taxable distribution, coupled

with BNY Mellon's agreement to establish security protocols to protect against theft of Plan assets,

is sufficient to allege a violation of the duty of prudence." (Opp. at 9.) First, Ms. Disberry did not

raise this theory of liability in her Complaint and therefore this argument should be disregarded.

Second, it is conclusory and devoid of any details on why an instruction "to pay out a very large

taxable distribution" suggests that somehow BNY Mellon acted imprudently when lump-sum taxable distributions are common occurrence in defined contribution plans. (*See* ECF No. 43-1 at 14, Master Trust Agreement at § 2.8 (BNY Mellon is responsible for creating and furnishing IRS Forms 1099-R and 1042-S, as appropriate, associated with participant benefit distributions).) If accepted, Ms. Disberry's theory would impose on directed trustees a requirement to question the motivation and wisdom of participant decisions—whether it be to take a distribution, change investment allocations, or request a loan from their account balance.  This is beyond the duties of a directed trustee and would lead to an absurd result that is inconsistent with ERISA's statutory purpose. *See Albert v. Oshkosh Corp.*, 47 F.4th 570, 586-87 (7th Cir. 2022) (rejecting an argument that adversely impact the ability for plans to contract with third party services providers and explaining "[e]mployee benefit plans would no longer be able to outsource tasks like recordkeeping, investment management, or investment advising, which in all likelihood would result in lower returns for employees and higher costs for plan administration.").[3]

## CONCLUSION

For the reasons stated in BNY Mellon's opening brief and this Reply, the Court should dismiss Ms. Disberry's claim against BNY Mellon.

---

[3] Ms. Disberry also cursorily argues that BNY Mellon cannot rely on the Master Trust Agreement because "ERISA makes exculpatory language in a contract void as a matter of law." (*See* Opp. at 2 (citing ERISA § 410(a), 29 U.S.C. § 1110(a)).) But ERISA § 410(a) states, subject to noted exceptions, "any provision in an agreement or instrument which purports to relieve a fiduciary from responsibility or liability for any responsibility, obligation, or duty under this part shall be void as against public policy." 29 U.S.C. § 1110(a). The Master Trust Agreement does not purport to relieve BNY Mellon from its fiduciary responsibilities. Rather, it sets forth BNY Mellon's responsibilities in connection with the Plan and confirms that BNY Mellon is not a fiduciary with respect to the alleged wrongful conduct Ms. Disberry is challenging.

Dated: New York, New York
       October 4, 2022

                                    _/s/Anjanique M. Watt_____
                                    Anjanique M. Watt
                                    MAYER BROWN LLP
                                    1221 Avenue of the Americas
                                    New York, New York 10020
                                    (212) 506-2500

                                    Nancy Ross*
                                    Megan Troy*
                                    MAYER BROWN LLP
                                    71 S. Wacker Drive
                                    Chicago, Illinois 60606
                                    (312) 782-0600
                                    * pro hac vice application pending

                                    Counsel for Defendant The Bank of New
                                    York Mellon

11