UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| PAULA DISBERRY,<br><br>      Plaintiff,<br><br>    v.<br><br>EMPLOYEE RELATIONS COMMITTEE OF THE COLGATE-PALMOLIVE COMPANY, ALIGHT SOLUTIONS, LLC, AND THE BANK OF NEW YORK MELLON CORPORATION,<br><br>      Defendants. | Case No. 22 Civ. 5778 (CM)<br><br>**AMENDED COMPLAINT FOR VIOLATIONS OF 29 U.S.C. § 1001 *ET SEQ.* (ERISA) AND THE LAW OF NEGLIGENCE OF NEW YORK AND ILLINOIS** |

**PREFATORY NOTE**

By order dated December 19, 2022 ("Order"), the Court granted the motion to dismiss filed by Defendant The Bank of New York Mellon Corporation and denied the motions to dismiss filed by Defendants Employee Relations Committee of the Colgate-Palmolive Company and Alight Solutions, LLC. ECF No. 73. In its Order the Court also gave Plaintiff leave to amend. *Id.* at 28.

For purposes of preserving her right to seek review of the Court's dismissal of the ERISA claim against The Bank of New York Mellon Corporation on appeal, Plaintiff has retained this party and the ERISA claim against it in this Amended Complaint. Plaintiff has indicated in this Amended Complaint that the ERISA claim (Claim One) has been dismissed as against The Bank of New York Mellon Corporation.

## JURISDICTION

1.      This Court has subject matter jurisdiction over Plaintiff's ERISA claim pursuant to 28 U.S.C. § 1131 and the specific jurisdictional statute for claims brought pursuant to the Employee Retirement Income Security Act of 1974 ("ERISA"), ERISA § 502(e) and (f), 29 U.S.C. § 1132(e) and (f). With respect to the state law claims, this Court has supplemental subject matter jurisdiction pursuant to 28 U.S.C. § 1367(a) because the state law claims form part of the same case or controversy.

## VENUE

2.      Venue lies in the Southern District of New York pursuant to ERISA § 502(e)(2), 29 U.S.C. § 1132(e)(2), because the Colgate-Palmolive Company Employees Savings and Investment Plan (the "Plan") is administered in part in this District, some of the alleged breaches took place in this District, and Defendants Employee Relations Committee of the Colgate-Palmolive Company and The Bank of New York Mellon Corporation may be found in this District. Venue is also proper in this District under 28 U.S.C. § 1391(b) and (c) because a substantial part of the events or omissions giving rise to the claims occurred in this District, and one or more of the Defendants resides in this District.

## PARTIES

3.      At all relevant times, Plaintiff Paula Disberry has been a participant, as defined by ERISA § 3(7), 29 U.S.C. § 1002(7), in the Plan. Ms. Disberry resides in Camps Bay, South Africa.

4.      Defendant Employee Relations Committee of the Colgate-Palmolive Company (the "Employee Relations Committee") is the Plan Administrator of the Plan within the meaning

of ERISA § 3(16)(a)(i), 29 U.S.C. § 1002(16)(a)(i). At all relevant times, the Employee Relations Committee was the named fiduciary of the Plan by reason of being the Plan Administrator. The Committee is located in New York, New York.

5. Defendant Alight Solutions, LLC ("Alight") is an Illinois limited liability company with its principal place of business in Illinois. At all relevant times, Alight provided contract administration, record-keeping, and information management services to the Plan. At all relevant times, Alight was a fiduciary of the Plan within the meaning of ERISA § 3(21), 29 U.S.C. § 1002(21), in that it exercised authority or control respecting management or disposition of the Plan's assets, it exercised discretionary authority or discretionary control respecting management of the Plan, and/or it had discretionary authority or discretionary responsibility in the administration of the Plan. Specifically, Alight operated a telephone customer service center, referred to as the "Benefits Information Center" or the "Customer Care Center," and a website at www.colgatebenefits.com, both of which provide Plan participants with the ability to manage their Plan accounts, including requesting distributions of benefits. Alight exercised control over Plan assets by facilitating, directing and processing distributions from participants' accounts, including the unauthorized distributions in this case. Alight has been compensated for its services by direct payment from the Plan.

6. Defendant The Bank of New York Mellon Corporation ("BNY Mellon") is a Delaware corporation with its principal place of business in New York, New York. At all relevant times, BNY Mellon served as a Plan Trustee, provided investment management services to the Plan, served as custodian of Plan's assets, and made Plan payments from the Plan's trust fund. As stated in the Plan's Master Trust Agreement, BNY Mellon agreed to implement and

maintain a comprehensive information security program designed to protect the Plan's sensitive information and to protect against threats or hazards and unauthorized access to or use of such information that could result in harm to Plan participants. Pursuant to the Master Trust Agreement, BNY Mellon also agreed to discharge its duties with the care and skill required under ERISA and to otherwise exercise the standard of care of a professional custodian. BNY Mellon was compensated for its services by investment management fees paid directly from the Plan. As such, BNY Mellon was a fiduciary of the Plan within the meaning of ERISA § 3(21), 29 U.S.C. § 1002(21), in that it exercised authority or control respecting management or disposition of the Plan's assets, it exercised discretionary authority or discretionary control respecting management of the Plan, it had discretionary authority or discretionary responsibility in the administration of the Plan, and/or it provided investment advice for a fee or other compensation from the Plan. BNY Mellon maintains an office in New York, New York.

7. The Plan is an employee pension benefit plan as defined by ERISA § 3(2), 29 U.S.C. § 1002(2), sponsored by the Colgate-Palmolive Company. The Plan is a combination of several "programs," including defined contribution, profit sharing, and employee stock ownership plan features. The Plan is an "individual account" pension plan as defined in ERISA § 3(34), 29 U.S.C. § 1002(34). According to the Plan's 2020 IRS Form 5500, as of December 31, 2020, the Plan had 7,264 participants with account balances, and $3,304,005,459 in assets.

## FACTS

Ms. Disberry's Employment with Colgate-Palmolive and Participation in the Plan.

8. Ms. Disberry worked for Colgate-Palmolive from December 1993 to March 2004,

in England, Mexico and the United States. For the last three years of her employment with Colgate-Palmolive, she served as the Global Director – Customer Marketing, and was based in New York. Ms. Disberry left Colgate-Palmolive in March 2004, to return to England.

9. Ms. Disberry became eligible to participate in the Plan beginning in 1998. She was diligent about saving for retirement. Throughout her time at Colgate-Palmolive, she regularly made employee contributions to the Plan, and Colgate-Palmolive regularly made employer contributions. As of March 17, 2020, her account balance under the Plan was just over $750,000.

10. Ms. Disberry has lived in South Africa at all times since 2008. Upon moving there, she updated her contact information with the Plan. In June 2016, she again submitted to the Plan an update of her contact information, which consisted of her (1) physical mailing address, (2) email address, and (3) cell phone number. Her contact information has remained the same since that time.

The Plan's Unauthorized Distribution of Ms. Disberry's Plan Account Balance.

11. As of early 2020, Ms. Disberry was 52 years of age. Ms. Disberry's Plan account represented a significant portion of her retirement savings. She periodically reviewed her Plan balance, but her intention was and always has been to leave her Plan account alone until she was ready to retire at approximately age 65. She has never requested or received any distribution from her Plan account.

12. In or around August 2020, Ms. Disberry attempted to access her Plan account online to review her Plan balance. However, her attempts to access her account were blocked, and the website said she was entering the incorrect username ID and password. She then

contacted Colgate-Palmolive and the Benefits Information Center to request access and information about her Plan account.

13. On September 14, 2020, Ms. Disberry was informed that the entire balance of her Plan account, totaling $751,430.53, had been distributed from the Plan in a single taxable lump sum, even though at no point had she authorized or received any such distribution.

14. Ms. Disberry later learned that her Plan account was distributed to an individual with an address and bank account in Las Vegas, Nevada (the "fraudster") in March 2020. According to information from Alight, the fraudster first contacted the Benefits Information Center by telephone on January 29, 2020. She falsely identified herself as Ms. Disberry, and requested to update Ms. Disberry's contact information that was on file with the Plan. Alight sent a temporary personal identification number (PIN) by mail to Ms. Disberry's South Africa address. The fraudster, and/or others working in conjunction with her, intercepted Ms. Disberry's mail and stole the temporary PIN. Alight did not contact Ms. Disberry at the phone number or email address that she had previously provided to the Plan to notify her of the request or of the mailing of the temporary PIN, or to confirm that she had authorized the requested PIN.

15. On February 24, 2020, the fraudster again contacted the Benefits Information Center. The fraudster used the temporary PIN and then created a new permanent PIN. The fraudster then requested that Ms. Disberry's phone number be changed to +27 65 5611 0169, and that her email address be changed to pdisberry@webmail.co.za. While both of these appear to be of South African origin, neither belong to Ms. Disberry. Alight never contacted Ms. Disberry's previously-provided phone number and/or email address to notify her of the new PIN or updated phone number and email address, or to confirm that she had in fact authorized these changes.

16.     In late February 2020, the fraudster also requested information on how to reset Ms. Disberry's online user ID and password, so that she could access Ms. Disberry's Plan account information using the Colgate-Palmolive Benefits website operated by Alight. The Alight representative provided directions for doing so, and shortly thereafter the fraudster changed Ms. Disberry's online user ID and password to access her Plan account.

17.     On March 9, 2020, the fraudster accessed Ms. Disberry's Plan account online and added information for direct deposit for a Bank of America branch with a Las Vegas address.

18.     On March 17, 2020, the fraudster accessed Ms. Disberry's Plan account using the Colgate-Palmolive Benefits website, and requested a distribution of Ms. Disberry's entire Plan account via direct deposit to the Bank of America account in Las Vegas, which had been added the prior week. The fraudster also changed Ms. Disberry's address online from the address in South Africa, which had been the address on file for multiple years, to an address in Las Vegas, Nevada.

19.     On March 17, 2020, the fraudster then called the Benefits Information Center and said she had requested a total distribution from the Plan via direct deposit. The benefits representative told the fraudster that the Plan did not offer distributions by direct deposit. The fraudster then told the benefits representative that she wanted a total distribution by check, to be sent to the Las Vegas address that the fraudster had added to the account earlier that same day. During that phone call the benefits representative conducted the distribution transaction online.

20.     On March 20, 2020, the distribution was processed for $751,430.53 gross

($601,144.42 net of mandatory tax withholdings),[1] and a BNY Mellon check for $601,144.42 was sent to the fraudster at the Las Vegas, Nevada address that had been added to Ms. Disberry's account a mere three days before. The fraudster cashed or deposited the check at a bank in Las Vegas, Nevada on March 27, 2020.

21. On March 17, 2020, a confirmation of payment notice was sent by mail to the Las Vegas, Nevada address that had only been added to Ms. Disberry's Plan account that same day, as well as to the newly added email address. Neither of these belong to Ms. Disberry, and so she never received any such notices. Upon information and belief, the notices were mailed and emailed by Alight.

22. According to a report of a fraud investigation conducted by Alight in September 2020 after Ms. Disberry alerted them to the theft of Plan assets, at least seven additional phone calls to the Benefits Information Center and at least eleven additional website log-in attempts were made by the fraudster (and/or others acting in concert with the fraudster) during the first half of 2020, during which the individual attempted to access Ms. Disberry's account information, but was unable to authenticate the call or was unable to provide the PIN, address, phone number or email address on file for the account.

23. On September 14, 2020, immediately upon discovery of the fraud, Ms. Disberry contacted Colgate-Palmolive. Alight placed a freeze on Ms. Disberry's account (even though there were no longer any funds in it), reviewed the activity associated with the account, and based on this review, determined that Ms. Disberry appeared to have been the victim of identity

---

[1] According to a February 23, 2022 Claim Summary prepared by Colgate-Palmolive, the $150,286.33 of income tax withholding was subsequently unwound by Alight and redeposited with the Plan pending resolution of Ms. Disberry's claim.

theft and theft of Plan funds.

24.     Ms. Disberry has never requested or authorized any distribution from the Plan. She never lived in Las Vegas or anywhere else in Nevada, and she has never had an account with Bank of America or with any other bank in Las Vegas. At all times since 2008 she has lived in South Africa.

25.     In and around September 2020, Ms. Disberry also reported the fraud to multiple authorities, and since then she has participated in investigations by the South African Police Service and the U.S. Secret Service office in Pretoria, South Africa. She also placed a fraud alert on her credit file with Equifax, and she appointed the private firm of ENSafrica Forensics to conduct an investigation into the fraud. However, none of these efforts have resulted in the recovery of her Plan funds.

Other Attempts by the Fraudster to Misappropriate Ms. Disberry's Retirement Benefits.

26.     The fraudster also attempted to access Ms. Disberry's funds under Colgate-Palmolive's defined benefit pension plan, which is not at issue in this case. The fraudster was able to gain access to her defined benefit account sufficiently to alter certain personal information, including changing the address on file to a Salt Lake City, Utah address, another South African email address, and another South African mobile number. However, the fraudster's attempts to obtain a lump sum distribution of Ms. Disberry's funds under that plan was unsuccessful because of the security measures implemented by that plan, including but not limited to requiring proof of identification (*e.g.* driver's license or passport) prior to distribution of funds. Alight was not involved with administration of that plan. The Plan at issue in this case did not require proof of photo identification prior to distribution of funds.

27. In addition, the fraudster attempted to access Ms. Disberry's account under a pension plan sponsored by another former employer, called the Momentum Gibraltar Pension Plan. The fraudster was able to gain access to that account sufficient to alter certain personal information. However, the fraudster's attempts to access funds from that plan were unsuccessful because of the security measures implemented by that plan, including a telephone and email notification of the requested change of personal details to the phone number and email address previously provided to that plan, and calling Ms. Disberry's financial advisor (who had previously contacted the plan on Ms. Disberry's behalf). Alight was not involved with administration of that plan. The Plan at issue in this case did not provide a telephone or email notification of the requested change of personal details to the phone number and email address previously provided to the Plan, and it did not contact Ms. Disberry's financial advisor (who had previously contacted the Plan at issue in this case on Ms. Disberry's behalf as well).

Relevant Plan Provisions.

28. When a Plan participant's employment with Colgate-Palmolive ends, he/she has the option of leaving his/her vested balance in the Plan and deferring payment until a future time.

29. A participant may request a final distribution online at colgatebenefits.com or by calling the Benefits Information Center, both of which are operated by Alight. The distribution may be rolled over to an Individual Retirement Account (IRA) or to another employer's qualified plan (such as a 401(k) or profit-sharing plan). Alternatively, a participant may take the distribution in cash, but the amount will be subject to federal tax, plus an additional 10% penalty tax if the individual is under age 59 ½.

30. The Plan provides that the Employee Relations Committee or its designee shall

issue directions to the Trustee concerning all benefits which are to be paid from the Trust Fund pursuant to the provisions of the Plan, and warrants that all such directions are in accordance with the Plan.

31. Pursuant to the Plan's Summary Plan Description, if a request for a distribution is received by 4:00 p.m. Eastern time on a regular business day, the election is generally processed that day. However, "[i]f you have changed your address or the address of a financial institution to which you would like payment to be mailed within the last 14 days, any payment request cannot be mailed to such address."

32. The Summary Plan Description in effect in 2020 advises that "[c]omplicated tax issues may arise for certain participants who reside outside of the U.S. at the time of distribution from the [Plan]. Therefore, it is strongly recommended that you contact the International Benefits Department prior to requesting a final distribution so that the appropriate paperwork can be completed in advance of the transaction."

<u>Ms. Disberry's Correspondence with Defendants Since September 2020.</u>

33. Between September 2020 and October 2021, Ms. Disberry was in contact with Colgate-Palmolive representatives on multiple occasions. At their request, she regularly updated them on her efforts with the criminal investigations.

34. On October 6, 2021, Ms. Disberry submitted a claim for benefits under the Plan. In her claim letter she explained that she had not requested or authorized any distribution from the Plan, and she requested confirmation that the fraud did not impair or reduce her benefit under the Plan, or in the alternative, that Colgate-Palmolive restore to her Plan account the amount of the fraudulently obtained distribution. In response, on April 7, 2022, the Plan's Claims

Administrator denied her claim, asserting that "[w]hile it is unfortunate that your information and Plan benefit may have been stolen from you," "the Plan had in place reasonable procedures with respect to Plan distribution, [] these procedures were followed,…[and] your Plan benefit was paid in accordance with all Plan terms and requirements."[2]

35. However, the Plan did not have reasonable procedures in place, and the procedures it did have were not in fact followed by Defendants. The fact that within the span of less than two months, a person claiming to be a Plan participant changed the participant's phone number, email address, mailing address, and bank account information, and then requested an immediate cash distribution of the participant's entire $750,000 Plan account, should have been red flags that triggered further action to confirm that the requested distribution had come from the Plan participant. The fact that a person claiming to be a Plan participant changed the participant's contact information such that the phone number and email address were from one country and the mailing address was in a different country should have been a red flag that triggered some further action to confirm the legitimacy of the request. The fact that a person claiming to be a Plan participant requested an immediate cash distribution instead of a tax-protected roll-over distribution; that they were doing so prior to age 59 ½, subjecting them to an additional 10% tax penalty; and that they failed to contact the International Benefits Department prior to requesting a distribution while residing in a foreign country, despite the Summary Plan Description's strong recommendation to do so, all should have been red flags that triggered further action to confirm the legitimacy of the distribution request. The fact that a flurry of

---

[2] The claim brought in this lawsuit is a claim for breach of fiduciary duty, and not a claim for benefits under the terms of the Plan. Therefore, no exhaustion of administrative remedies is required to proceed in court.

attempts to access a Plan account via telephone and online occurred within a short time span, many of which were unsuccessful, should have been a red flag prompting further action. However, Defendants failed to heed or even notice any of these suspicious actions, thereby leading to the loss of Plan assets.

36.     Furthermore, the South African postal service has been in turmoil for several years, and is known for its lack of security, delays, corruption and mismanagement. Providing a temporary PIN via mail to a foreign address, especially where the security of the mail has not been established, without also notifying the participant of the PIN request via the phone number and/or email address on file, and without also notifying the participant of the request for disbursement of funds via phone and/or email, is not reasonable.

37.     In addition, Defendants failed to follow their own procedures, including but not limited to failing to wait for 14 days after Ms. Disberry's address was changed before processing and distributing Plan assets.

38.     Instead, Defendants ignored numerous significant red flags, failed to follow their own procedures, and failed to implement reasonable procedures to detect and prevent fraud and theft of Plan assets.

### FIRST CLAIM FOR RELIEF

**Claim to Restore Plan Losses
Pursuant to ERISA §§ 409 and 502(a)(2), 29 U.S.C. §§ 1109 and 1132(a)(2)
Against All Defendants
[Dismissed only as to BNY Mellon by Dec. 19, 2022 Order]**

39.     Ms. Disberry incorporates paragraphs 1-38, above, as though fully set forth herein.

40.     ERISA § 404(a), 29 U.S.C. § 1104(a), requires that a fiduciary discharge its

duties with respect to a plan solely in the interest of the participants and beneficiaries; for the exclusive purpose of providing benefits to participants and their beneficiaries and defraying reasonable expenses of administering the plan; and with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims.

41. ERISA § 409, 29 U.S.C. § 1109, provides that any person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by ERISA Title I shall be personally liable to make good to such plan any losses to the plan resulting from each such breach, and shall be subject to such other equitable or remedial relief as the court may deem appropriate.

42. ERISA § 502(a)(2), 29 U.S.C. § 1132(a)(2), authorizes a plan participant to bring an action for appropriate relief under ERISA § 409.

43. Defendants, and each of them, breached their fiduciary duties of loyalty and prudence by causing or allowing the Plan to make unauthorized distributions of Plan assets; failing to identify and investigate suspicious activities and red flags; failing to identify and halt suspicious distribution requests; failing to confirm authorization for distributions with the Plan participant before making distributions; failing to provide timely notice of a request for distributions to the Plan participant by telephone or email; failing to establish distribution processes to safeguard Plan assets against unauthorized withdrawals; failing to monitor other fiduciaries' distribution processes, protocols, and activities; and related acts and omissions.

44. As a result of Defendants' breaches, the Plan has suffered losses, including at

least $601,144.42³ and investment earnings thereon from Ms. Disberry's Plan account.

## SECOND CLAIM FOR RELIEF

### Claim for Negligence Against Defendant Alight
### Under New York Law
### *In the Alternative to the First Claim for Relief*

45. Ms. Disberry incorporates paragraphs 1-38, above, as though fully set forth herein.

46. Under New York law, a cause of action for negligence lies where (1) the defendant owes a duty of care to the plaintiff, (2) the defendant breached that duty, and (3) the plaintiff suffered damages as a proximate result of the breach.

47. In the absence of contractual privity between a plaintiff and defendant, a duty of care under New York law exists where the parties are in a relationship "so close as to approach that of privity," or where a benefit to the individual(s) not party to the contract was the "end and aim of the transaction" contemplated by the contract. A plaintiff can establish such a relationship by demonstrating (1) the defendant was aware that its work was to be used for a particular purpose; (2) reliance by one or more individuals known to the defendant in furtherance of that purpose; and (3) conduct by the defendant linking it to said individual(s) evincing the defendant's understanding of their reliance on the defendant's conduct.

48. Defendant Alight contracted to provide administration, record-keeping, and information management services to the Plan. At all relevant times Alight performed such

---

³ As discussed in fn 1 above, according to Defendants, the $150,286.33 of income tax withholding allegedly was unwound and redeposited with the Plan, but on information and belief has not been re-allocated to Ms. Disberry's account. Plaintiff has no confirmation that these restored assets will be allocated to her account.

services, including but not limited to operating a telephone customer service center referred to as the "Benefits Information Center" or the "Customer Care Center," and a website at www.colgatebenefits.com. Both the customer service center and the website provide Plan participants with the ability to manage their Plan accounts, including requesting distributions of benefits. Every Plan participant was known to Alight because Alight was responsible for, inter alia, maintaining individualized records of each participant's Plan account, participant contact information, investment directions, beneficiary designations, and similar information, and for providing individualized reports and other services to participants regarding their Plan accounts.

49. Defendant Alight owes a duty of care to Plaintiff because the "end and aim" of the service contract is for Alight to provide these services for the benefit of Plaintiff and other Plan participants, *i.e.* Plan participants are intended third-party beneficiaries of the service agreement. Alight is aware that the telephone customer care center and website that it operates is used by and for the benefit of Plan participants and that Plan participants including Ms. Disberry would rely on Alight for such services, and Ms. Disberry did rely on Alight for such services.

50. The duty of care owed by Alight to Plaintiff – and to other Plan participants – is the duty to exercise the skill and care that a reasonable person or entity performing similar pension plan administration services would exercise in similar circumstances.

51. Alight breached its duty of care to Plaintiff by causing or allowing the Plan to make unauthorized distributions of Plan assets allocated to Plaintiff's Plan account; failing to identify and investigate suspicious activities and red flags; failing to identify and halt suspicious distribution requests; failing to confirm authorization for distributions with the Plan participant before making or authorizing distributions; failing to provide timely notice of a request for

distributions to the Plan participant by telephone or email; failing to provide timely notice of requests to update participant contact information or new website log-in credentials to the Plan participant by telephone or email; failing to establish distribution processes to safeguard Plan assets against unauthorized withdrawals; and related acts and omissions.

52.     As a result of Alight's negligence, Plaintiff has suffered losses, including at least $601,144.42 and investment earnings thereon from her Plan account.

### THIRD CLAIM FOR RELIEF

**Claim for Negligence Against Defendant Alight
Under Illinois Law**
*In the Alternative to the First and Second Claims for Relief*

53.     Ms. Disberry incorporates paragraphs 1-38, above, as though fully set forth herein.

54.     A cause of action for negligence under Illinois law lies where (1) the defendant owes a duty of care to the plaintiff, (2) the defendant breached that duty, and (3) the plaintiff suffered an injury proximately caused by defendant's breach.

55.     Under Illinois law, every person owes a duty of ordinary care to others to guard against injuries which naturally flow as a reasonably probable and foreseeable consequence of an act or failure to act. In addition, a person or entity that begins a service for another must exercise reasonable care in performing the service to avoid injury to the beneficiary of the undertaking.

56.     Defendant Alight owes a duty of ordinary care to Plaintiff under Illinois law to guard against injuries which would naturally flow as a reasonably probable and foreseeable consequence of Alight's inadequate operation of a telephone customer service center and website, which provide Plan participants with the ability to manage their Plan accounts,

including requesting Plan distributions. In addition, by providing telephone customer service center and website services to Plan participants, including the ability to manage their Plan accounts and request distributions, Alight must exercise reasonable care in performing said services to avoid injury to Plaintiff and other Plan participants.

57.     In addition, under Illinois law, where at issue is the services of a professional, the professional owes a duty to a third party not in privity of contract for the performance of those services if the primary or direct purpose of the services is to benefit the third party. Here, Alight contracted to provide professional plan administration services to the Plan, and Alight owes a duty of care to Plaintiff and other Plan participants because the primary or direct purpose of Alight's provision of these services, including operation of the telephone customer service center and website, is to benefit Plan participants, including Plaintiff. This duty of care owed by Alight is the duty to exercise the skill and care that a reasonable person or entity performing similar pension plan administration services would exercise in similar circumstances.

58.     Alight breached its duty of care to Plaintiff by causing or allowing the Plan to make unauthorized distributions of Plan assets allocated to Plaintiff's Plan account; failing to identify and investigate suspicious activities and red flags; failing to identify and halt suspicious distribution requests; failing to confirm authorization for distributions with the Plan participant before making or authorizing distributions; failing to provide timely notice of a request for distributions to the Plan participant by telephone or email; failing to provide timely notice of requests to update participant contact information or new website log-in credentials to the Plan participant by telephone or email; failing to establish distribution processes to safeguard Plan assets against unauthorized withdrawals; and related acts and omissions.

59. As a result of Alight's negligence, Plaintiff has suffered losses, including at least $601,144.42 and investment earnings thereon from her Plan account.

## PRAYER FOR RELIEF

WHEREFORE, Ms. Disberry prays that the Court grant the following relief:

**As to the First Claim for Relief:**

    A.    Declare that Defendants, and each of them, have breached their fiduciary duties of loyalty and prudence;

    B.    Order that Defendants, and each of them, restore to Ms. Disberry's Plan account the improperly distributed funds of at least $751,430.53 plus investment earnings thereon from the distribution date to the date of judgment herein;

    C.    Award Ms. Disberry reasonable attorneys' fees and costs of suit incurred herein pursuant to ERISA § 502(g), 29 U.S.C. § 1132(g); and

    D.    Provide such other equitable and remedial relief as the Court deems appropriate.

**As to the Second Claim for Relief *[In the Alternative to the First Claim]*:**

    A.    Award Plaintiff damages against Defendant Alight for the harm suffered by Plaintiff due to its negligence;

    B.    Award such other and further relief as the Court deems equitable and just.

**As to the Third Claim for Relief *[In the Alternative to the First and Second Claims]*:**

    A.    Award Plaintiff damages against Defendant Alight for the harm suffered by Plaintiff due to its negligence;

B.      Award such other and further relief as the Court deems equitable and just.

## DEMAND FOR JURY TRIAL

Plaintiff demands a jury trial as to her Second and Third Claims for Relief.

Respectfully submitted,

Dated: New York, New York
January 6, 2023                        __/s/ Kirsten Scott_____

Kirsten G. Scott, *admitted pro hac vice*
Teresa S. Renaker, *admitted pro hac vice*
RENAKER SCOTT LLP
505 Montgomery Street, Suite 1125
San Francisco, CA 94111
Tel.: (415) 653-1733
Fax: (415) 752-5079
kirsten@renakerscott.com
teresa@renakerscott.com

Evan Brustein, Esq.
Brustein Law PLLC
299 Broadway, 17th Floor
New York, New York 10007
(212) 233-3900
evan@brusteinlaw.com

*Attorneys for Plaintiff*